IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROWENA DZIUBLA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No. 1:18-cv-4542 |
| | ) |
| J.C. ANDERSON, INC. and | ) |
| PETER ERLING JACOBSEN | ) |
| | ) |
| Defendant. | ) JURY DEMANDED |

## DEFENDANT PETER ERLING JACOBSEN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

Defendant Peter Erling Jacobsen, for his Memorandum of Law in support of his Motion for Summary Judgment, hereby states as follows:

### INTRODUCTION

Plaintiff Rowena Dziubla filed a Civil Complaint against her former employer, J.C. Anderson, Inc. ("JCA") claiming violations of Title VII of the Civil Rights Act of 1964. (ECF 1, ¶4). Ms. Dziubla also filed a claim for a civil battery under Illinois state law against Defendant Peter Jacobsen. (*Id.*). Ms. Dziubla claims that during the course of receiving golf instruction, Mr. Jacobsen harmfully and offensively touched her. *(Id.)*. Mr. Jacobsen has filed an Answer denying all material allegations set forth in plaintiff's Complaint. (ECF 1, ¶22). For the reasons stated herein, Defendant Jacobsen is entitled to summary judgment as matter of law under Rule 56 of the Federal Rules of Civil Procedure.

1

## FACTUAL BACKGROUND

On September 18, 2017, Defendant J.C. Anderson, Inc. ("JCA") sponsored a golf outing in memory of Kevin Radoha, a former officer of JCA. (*See* Statement of Undisputed Facts ("SMF") at ¶5). The annual event, known as "The Kev" benefits the family of Kevin Radoha and cancer research. (SMF ¶5). In 2017, the event was held at River Forest Country Club in Elmhurst, Illinois. (SMF ¶5).

Each year, a celebrity guest attends the event to increase sponsorship and attendance. (SMF ¶6). In 2017, the celebrity guest who attended the event was Defendant Jacobsen, a professional golfer and television commentator. (SMF ¶5). Mr. Jacobsen's role as the celebrity guest was to greet guests at the outing and drive from hole to hole to provide pointers on how to play golf. (SMF ¶5).

Chad Crane, a professional golfer, worked to organize and run the event in 2017. (SMF ¶8). James Schumacher is the chairman and co-owner of JCA, and accompanied Mr. Jacobsen during the event. (SMF ¶9). Mr. Crane and Abigail Radoha, Kevin Radoha's daughter, accompanied Mr. Jacobsen most of the time he was at the event. (SMF ¶¶7, 10). Ms. Radoha was the photographer for the day and she took pictures of Mr. Jacobsen with the guests. (SMF ¶7).

Once the event began, Mr. Jacobsen went from hole to hole to meet the guests and provide golf instruction. (SMF ¶11). Mr. Crane described Mr. Jacobsen as quick-witted and funny, and he was able to use humor to put people at ease. (SMF ¶11). While on the course, Mr. Jacobsen frequently made golf jokes or would joke around with the guests, particularly when someone hit a bad shot. (SMF ¶11).

The golf outing is considered a voluntary event for JCA employees, and they are not required to attend. (SMF ¶12). Plaintiff Rowena Dziubla decided to attend the outing at the last minute, donating $50 to drive a cart around the course and socialize but not play golf. (SMF ¶12). Ms. Dziubla arrived at the event, ate lunch, and then got in a golf cart in order to drive around on the course and take pictures of the various groups of people playing golf. (SMF ¶12).

Mr. Schumacher escorted Mr. Jacobsen in a golf cart to each hole to allow him to meet the guests and provide golf instruction. (SMF ¶14). At one point, Mr. Schumacher and Mr. Jacobsen drove to the second hole, where a group of golfers was approaching the green. (SMF ¶14). The group included Tim Le, Kacper Stojowski, and Adam Scheitel. (SMF ¶14). Mr. Jacobsen got out of the golf cart, met the golfers, and offered to show them how to hit a chip shot, which is when a player hits a ball that is off the green onto the green. (SMF ¶14). Mr. Schumacher parked the golf cart and got out to join them. (SMF ¶14).

Plaintiff drove her golf cart up to the second hole to meet up with this group of golfers. (SMF ¶15). Mr. Schumacher flagged Ms. Dziubla down and invited her to meet Mr. Jacobsen and receive instruction on how to hit a chip shot. (SMF ¶15). Ms. Dziubla agreed to receive instruction from Mr. Jacobsen. (SMF ¶15). Mr. Jacobsen begun by giving verbal instruction to the group then gave individual verbal pointers. (SMF ¶15). Tim Le went up to receive individual help from Mr. Jacobsen before Ms. Dziubla. (SMF ¶15). Ms. Dziubla informed everyone prior to receiving instruction from Mr. Jacobsen that she was not skilled at golf. (SMF ¶15).

Mr. Jacobsen provided Ms. Dziubla verbal instruction on how to hit a chip shot like he did the other players. (SMF ¶16). Ms. Dziubla tried to mimic how Mr. Jacobsen hit the ball. (SMF ¶16). After she was not able to successfully hit the ball in the hole, Mr. Jacobsen told Ms. Dziubla in front of everyone that she was going to need a little bit more guidance. (SMF ¶16). Ms. Dziubla agreed that Mr. Jacobsen was encouraging her to try to get involved and try to do it. (SMF ¶16). Mr. Jacobsen stated to everyone that she would need some physical instruction. (SMF ¶16). Mr. Jacobsen came around behind Ms. Dziubla to physically hold her arms in order to help her swing the golf club. (SMF ¶16). Ms. Dziubla admitted that she had no objection to Mr. Jacobsen coming around and placing his arms around her to help her swing. (SMF ¶16).

Ms. Dziubla claims that while providing this instruction, Mr. Jacobsen told a lewd joke that included the word "woods," which she believed was meant as a sexual innuendo. (SMF ¶18). Ms. Dziubla admitted during her deposition that she did not know that certain golf clubs are known as "woods." (SMF ¶30). In addition, she demonstrated her extremely limited knowledge about golf and other golf terms. (SMF ¶13). For instance, when Ms. Dziubla was asked whether she knew the types of golf clubs in a golf bag, Ms. Dziubla responded, "I know there's a thing called a putter, because that is in mini golf. I know that there's something that's a big golf club that allows you to get your drive for distance. That's about it." (SMF ¶13). Ms. Dziubla did not know other common golf terms such as the "green," "tee box," "fairway," "sand trap," and "par." (SMF ¶13). After having the joke fully explained to her, Ms. Dziubla testified that there can be a non-sexual meaning to the joke. (SMF ¶31).

**SUMMARY OF ARGUMENT**

Mr. Jacobsen should be granted summary judgment because the evidence is uncontroverted that Ms. Dziubla consented to his physical contact as an announced part of an informal lesson in how to hit a chip shot. Mr. Jacobsen's contact was not harmful or offensive because it was consistent with typical golf instruction. Ms. Dziubla considered Mr. Jacobsen's contact to be offensive only because she felt uncomfortable that his body was in close proximity to hers, and because he told a joke that she misinterpreted as lewd because she misunderstood the term "woods" as a vulgar reference to the male anatomy.

As the expert witnesses in this case have opined, it is impossible to show a person how to hit a chip shot without having some physical contact with the person. Mr. Jacobsen's was in the context of showing Ms. Dziubla how to hit the shot and was entirely consistent with that context; there was nothing about his contact that was harmful or offensive, especially since the joke he told cannot reasonably be considered off-color. Mr. Jacobsen's innocuous contact with Ms. Dziubla cannot be considered a battery and Mr. Jacobsen should be granted summary judgment.

**STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law if the non-movant fails to make a sufficient showing of an element of its case with respect to which it has the burden of proof. *Celotex v. Catrett*, 477 U.S. 317,

325 (1986). Once the moving party shows that there is no genuine issue of material fact, the burden of proof shifts to the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Id.* at 323.

In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). However, a mere existence of a scintilla of evidence in support of plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). If the evidence is "merely colorable," or not significantly probative, summary judgment may be granted. *Id*. at 249. The proper inquiry, therefore, is whether the evidence is such that a reasonable jury could return a verdict for plaintiff. *Id*. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cites Service Co*., 391 U.S. 253, 289 (1968)).

## **ARGUMENT**

Illinois civil law defines a battery as "the unauthorized touching of another person." *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 622 (7th Cir. 1989) (*citing Gaskin v. Goldwasserr*, 166 Ill. App. 3d 996, 520 N.E.2d 1085, 1094 (1988)); *Parrish v. Donahue*, 110 Ill. App. 3d 1081, 443 N.E.2d 786, 788 (1982). In order to be liable for a battery, the defendant must have done some affirmative act intended to cause an unpermitted contact. *Id*. (*quoting Mink v. Univ. of Chicago*, 460 F. Supp. 713, 717 (N.D. Ill. 1978)). An unconsented contact is not a battery unless it is of a harmful or

offensive nature. *Id*. (*citing Welch v. Ro-Mark, Inc*., 79 Ill. App. 3d 652, 398 N.E. 2d 901, 905 (1979)).

    **A)**     <u>**Defendant Should Be Granted Summary Judgment Because Plaintiff Consented to the Contact**</u>.

Defendant should be granted summary judgment because plaintiff's admitted consent to this contact precludes her from maintaining a cause of action for a battery. "'Liability for a battery emphasizes the plaintiff's lack of consent to the touching.'" *Sneed v. City of Harvey*, 6 F. Supp. 3d 817, 843 (N.D. Ill. 2013) (*quoting Cohen v. Smith*, 269 Ill. App. 3d 1087, 648 N.E.2d 329, 332 (1995)). Plaintiff has the burden of proving lack of consent to the touching. *Id*.

Summary judgment was proper in *Sneed*, where the plaintiff was a police officer with the City of Harvey who got into a dispute with his colleagues at work. *Id*. at 843. Plaintiff sued the City for battery, claiming that another City employee closed a door and struck his hand. *Id*. But the evidence showed that plaintiff deliberately moved forward, causing the door to strike him. *Id*. The court granted summary judgment to the City, finding that because the plaintiff "deliberately caused whatever physical contact occurred," he could not prove that he did not consent to the contact. *Id*.

Similarly, a failure to show lack of consent called for summary judgment in *Schroeder*. *Schroeder*, 875 F.2d at 622. The *Schroeder* plaintiff was a passenger on a flight operated by the defendant airline when a person on the ground falsely reported to authorities that the plaintiff's luggage contained a bomb. *Id*. at 615. Because she was alarmed, the pilot asked that plaintiff remain in the cockpit. *Id*. A flight engineer fastened four seat belts over plaintiff in an empty seat in the cockpit. *Id*. Plaintiff alleged that

7

defendant's personnel committed a battery against her by physically removing her from her seat and restraining her in a seat in the cockpit. *Id*. at 622.

The court granted the defendant's motion for summary judgment, finding there to be no evidence that the plaintiff was physically removed from her seat. *Id*. More importantly, however, the court found that the plaintiff could not prove a lack of consent; even if a flight attendant had taken the plaintiff by her arm, as the plaintiff claimed, this contact could not be considered harmful or offensive because the plaintiff voluntarily went with the flight attendant. *Id*. The court also found that even though the flight engineer fastened Schroeder's seat belts, this could not be considered harmful or offensive because the contact was innocuous. *Id*. In affirming the summary judgment, the Seventh Circuit underscored the need for a harmful or offensive contact: "If we were to construe either of the innocuous contacts of which Schroeder complains of as harmful or offensive, we would essentially be excising this requirement from the tort of battery." *Id*. at 623.

Plaintiff admitted that Mr. Jacobsen announced to everyone that she was going to need some physical instruction. (SMF ¶16). Plaintiff consented to Mr. Jacobsen physically showing her how to hit a chip shot by coming behind her and grasping her arms around her to help her to swing. (SMF ¶16). Plaintiff felt that Mr. Jacobsen was too close to her when he showed her how to swing the club. (SMF ¶17). Ms. Dziubla did not think that there was anything unusual about Mr. Jacobsen's movement other than being close. (SMF ¶17).

The individuals who witnessed Mr. Jacobsen's interaction with Ms. Dziubla included Abigail Radoha, Chad Crane, Jim Schumacher, Tim Le, and Kacper Stojowski.

(SMF ¶¶ 19-27). These witnesses have submitted declarations in this case. (SMF ¶¶ 19-27). The witnesses were in close proximity to Mr. Jacobsen when he showed Ms. Dziubla how to hit a chip shot. (SMF ¶¶ 19-27). The witnesses unanimously agree that Mr. Jacobsen did not harmfully or offensively touch Ms. Dziubla when he showed her how to hit a chip shot. (SMF ¶¶ 19-27). The witnesses did not see Mr. Jacobsen touch plaintiff's hips, waist, or buttocks, nor did the witnesses see Mr. Jacobsen touch plaintiff in a sexual manner. (SMF ¶¶ 19-27).

Ms. Dziubla's consent to receive physical instruction from Mr. Jacobsen was witnessed by five individuals all who agree that Mr. Jacobsen did not harmfully or offensively touch plaintiff. (SMF ¶¶ 19-27). Mr. Jacobsen sought verbal consent from plaintiff before he came behind her to help her swing the club properly. (SMF ¶16). Plaintiff admittedly acquiesced to this contact. (SMF ¶16). Mr. Jacobsen should be granted summary judgment like the defendants in *Schroeder* and *Sneed* because plaintiff similarly consented to and had no objection to the announced physical contact. *Id*. Defendant should also be granted summary judgment because the physical contact that occurred with Mr. Jacobsen was innocuous.

### B. Defendant Should Be Granted Summary Judgment Because the Contact Was Not Harmful or Offensive.

Summary judgment is also proper because the contact was not harmful or offensive. The minor contact between plaintiff and Mr. Jacobsen as he showed her how to hit a chip shot was innocuous in context; indeed, plaintiff confessed to being uncomfortable not with the contact but with his mere proximity. Moreover, she attributed her discomfort to a joke he told that included the word "woods"—a term she

misinterpreted as a lewd synonym for the male anatomy, unaware of its meaning in the context of golf.

1. **Defendant Should Be Granted Summary Judgment Because Physical Contact is a Necessary Part of Receiving Golf Instruction.**

Mr. Jacobsen's contact with Ms. Dziubla was consistent with how golf professionals typically instruct a player on how to hit a chip shot. Mr. Crane, who is certified by the Professional Golfers' Association, has received extensive training on how to teach golf. (SMF ¶37). Throughout his career, Mr. Crane has taught many students including men, women, and children show to play golf. (SMF ¶38). Based upon his education and 10 years of professional golf experience, Mr. Crane believes that the way Mr. Jacobsen instructed Ms. Dziubla on how to hit a chip shot is consistent with how a golf instructor should provide golf instruction to a student. (SMF ¶39). In his opinion, Mr. Jacobsen's golf instruction was professional, competent and consistent with industry standards. (SMF ¶39).

Defendant retained renowned professional golfer, Ms. Nancy Lopez, as his expert witness. (SMF ¶40). Ms. Lopez's accolades and achievements in the Ladies' Professional Golfers' Association ("LPGA") are unmatched. (SMF ¶40). Mr. Lopez has been a professional golfer for nearly 30 years and still makes a living as a professional golfer at corporate, charity, and teaching events. (SMF ¶40). Ms. Lopez has won 48 LPGA tournaments throughout her career. (SMF ¶40). In 1987, she was inducted in the World

Golf Hall of Fame. (SMF ¶40). Ms. Lopez is a member of the Teaching and Club Professionals. (SMF ¶40). She owns her own company, called Nancy Lopez Golf Adventures, and takes groups all over the world to learn how to play golf. (SMF ¶40).

Based upon her review of the testimony of the witnesses and exhibits to their depositions as well as the witnesses' Declarations, Ms. Lopez holds the opinion that Mr. Jacobsen did not harmfully or offensively touch Ms. Dziubla when he showed her how to hit a chip shot. (SMF ¶42). The way Mr. Jacobsen provided golf instruction to Ms. Dziubla was consistent with how a golf instructor is supposed to provide golf instruction. (SMF ¶42). In her expert report, Ms. Lopez states that it is impossible to provide golf instruction without having physical contact. (SMF ¶41). When showing someone how to hit a chip shot, a golf instructor may touch the student golfer's shoulders, back, hands, and even hips to show the student how to line up to the target. (SMF ¶41). A golf instructor may need to wrap his or her arms around the student, which might mean leaning into the student's buttocks area. (SMF ¶40).

The contact that Mr. Jacobsen had with plaintiff was consistent with the necessary contact that occurs when a professional golfer shows a person how to hit a chip shot. Ms. Dziubla consented to this contact prior to receiving instruction from Mr. Jacobsen. Mr. Jacobsen did not perform an affirmative act with the intent to cause an unpermitted contact. See *Schroeder*, 875 F.2d at 622. Because there was no unpermitted harmful or offensive contact, Defendant should be granted summary judgment.

### 2. **Defendant Should Be Granted Summary Judgment Because Plaintiff Misinterpreted a Simple Golf Joke.**

The joke that apparently made Ms. Dziubla uncomfortable cannot reasonably be considered lewd or offensive. Rather, Mr. Jacobsen told an old golf joke that he

frequently tells on the golf course about beginning golfers who hit their tee shots off the course and "end up in the woods." (SMF ¶28-29).

As Mr. Jacobsen testified during his deposition, the joke turns upon the fact that a certain kind of club and the forested area surrounding a golf course are both called "woods":

> The joke is that beginners start with irons and they end up in the woods being when you start as a beginner, you usually start with a wedge, which is an iron. Then, as you progress up through the bag to the driver or three wood, you get to the woods. Because woods require a longer more fuller swing, it's harder to control. The ball can end up adjacent to the fairway, off the fairway in the rough where there are trees, a forest or woods.

(SMF ¶28). Mr. Jacobsen has told similar jokes to beginning golfers hundreds of times. (SMF ¶29). Mr. Jacobsen's father was a golf player and loved golf humor. Mr. Jacobsen believes that the joke is from Henny Youngman or Rodney Dangerfield. (SMF ¶29).

Similarly, the other witnesses recall hearing Mr. Jacobsen tell the "irons and woods" joke, and all agree that this joke was simple golf humor that did not strike them as sexual innuendo. (SMF ¶¶ 32-36). They also agree that Mr. Jacobsen did not direct the joke at Ms. Dziubla. (SMF ¶¶ 32-36).

Ms. Dziubla admitted that she did not know of the old golf joke about irons and woods. (SMF ¶30). When asked about the joke during her deposition, Ms. Dziubla responded as follows:

> Q: Do you understand that beginning golfers struggle to hit the ball straight?
> A: Beginning golfers. Yeah, I guess.
> Q: Okay. And they start with the irons, which may be easier to control?
> A: I don't know what that means.
> Q: And that the woods are less easily controlled?
> A: No idea what that relates to.
> Q: And that if you hit a wood, you might end up in the woods?
> A: I don't know what that means.
> Q: Do you know that iron is a club?

| | | |
|---|---|---|
| A: | It's a reference to a type of golf club, yes. | |
| Q: | Okay. And did you know that wood is a type of club? | |
| A: | I'm assuming it's the ones that have wood on it. I don't know. | |
| Q: | Do you know that historically that woods were made out of woods, but now they are still referred to as woods, but they just have the bigger – | |
| A: | No. | |
| Q: | rounder ends to them? | |
| A: | Not until you just told me right now honestly. No idea. | |

(SMF ¶30). After having the joke explained to her, Ms. Dziubla admitted that there could be a non-sexual meaning to the joke:

> Q: Now having the joke explained to you and the full joke, not a portion of the joke, and realizing that you didn't know the irons, you didn't know woods, and you didn't know there were areas on the course called woods, you realize that there can be a non-sexual, just a golf humor to the joke; can we agree on that?
> A: Sure.

(SMF ¶31).

Mr. Jacobsen should be granted summary judgment because plaintiff's claim that he offensively touched her was based upon her misunderstanding of a golf joke that referred to "woods." After having the joke explained to her, Ms. Dziubla understood that "woods" meant a certain kind of club, and that the joke played off the fact that the area off the fairway may be forested, or "woods." (SMF ¶30). Ms. Dziubla agreed that the joke can be simple golf humor, not a joke containing a sexual innuendo; indeed, as properly understood, the joke is not even off-color, let alone lewd or sexual in nature. (SMF ¶31).

Mr. Jacobsen did not engage in any unconsented contact with Ms. Dziubla, and his joke contained nothing to make his otherwise innocuous contact offensive. Because Ms. Dziubla cannot satisfy the elements of a battery claim, Mr. Jacobsen should be granted summary judgment.

## **CONCLUSION**

WHEREFORE, the Defendant, PETER ERLING JACOBSEN, respectfully requests and order granting his Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

                                                Respectfully Submitted,

                                                PRETZEL & STOUFFER, CHARTERED

                                                By:*/s/ Mary H. Cronin*
                                                  **Mary H. Cronin ARDC # 6285991**

Edward B. Ruff, III
Matthew J. Egan
Michael P. Turiello
Mary H. Cronin
PRETZEL & STOUFFER, CHARTERED
One S Wacker Drive
Suite 2500
Chicago IL 60606
312-578-7450
312-578-7432
312-578-7507
312-578-7458
312-346-8242 (Fax)
eruff@pretzelstouffer.com
megan@pretzelstouffer.com
mturiello@pretzelstouffer.com
mcronin@pretzelstouffer.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that **DEFENDANT PETER ERLING JACOBSEN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT** was filed electronically this **10th** day of **January 2020**. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties that have not filed their appearances will receive this notice via regular e-mail. Parties may access this filing through the Court's electronic system.

| | |
|---|---|
| *Counsel for Plaintiff* | *Counsel for J.C. Anderson, Inc.* |
| Arthur R. Ehrlich | Eugene A. Boyle |
| Samm Sedaei | Michelle T. Olson |
| Law Offices of Goldman & Ehrlich, Chtd. | Vedder Price, P.C. |
| 20 S. Clark Street, Suite 500 | 222 N. LaSalle Street, Suite 2600 |
| Chicago, IL 60603 | Chicago IL 60601 |
| (312)332-6733 | (312)609-7500 |
| Arthur@GoldmanEhrlich.com | eboyle@vedderprice.com |
| Sam@GoldmanEhrlich.com | molson@vedderprice.com |

*Counsel for Peter Erling Jacobsen*
James C. Pullos
Shannon M. McNulty
Clifford Law Offices
120 N. LaSalle, 31st Floor
Chicago, IL 60602
(312)977-4511
jcp@cliffordlaw.com
smm@cliffordlaw.com

                                                 s/ Edward B. Ruff
                                                Edward B. Ruff (IL Bar No. 6181332)
                                                Pretzel & Stouffer, Chartered
                                                One South Wacker Drive - Suite 2500
                                                Chicago, Illinois 60606
                                                Telephone:    (312) 578-7450
                                                Fax:             (312) 346-8242
                                                E-Mail: eruff@pretzel-stouffer.com
                                                              *Attorney for Peter Erling Jacobsen*