IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROWENA DZIUBLA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:18-cv-4542 |
| J.C. ANDERSON, INC. and PETER ERLING JACOBSEN, | ) ) ) ) |
| Defendants. | ) |

### DECLARATION OF TIMOTHY LE

Pursuant to 28 U.S.C. § 1746, I, Timothy Le, hereby declare as follows:

1. I have personal knowledge of the matters set forth herein and I am competent to testify as to those matters.

2. On September 18, 2017, I attended "The "Kev" golf outing, which is a golf fundraiser sponsored by J.C. Anderson, Inc. ("JCA") in memory of former JCA Chief Financial Officer Kevin Radoha. "The Kev" was held at River Forest Country Club located in Elmhurst, Illinois, and it benefitted the family of Kevin Radoha and cancer research. At the time, I was a JCA employee. I have since left the Company and found other employment.

3. During the golf outing, I was with a group of people on the second hole when Peter Jacobsen drove up in a golf cart with Jim Schumacher, the Chairman and Co-Owner of JCA. Mr. Jacobsen is a professional golfer and commentator, and he was the celebrity guest at "The Kev" that year. Mr. Jacobsen was driving around with Mr. Schumacher to meet the guests and provide golf instruction. Then-JCA employee Rowena Dziubla was with the group at that time. I did not understand Ms. Dziubla to be playing golf that day; rather, she appeared to be driving around in a golf cart visiting with people on the course. Ms. Dziubla was with our group when Mr. Jacobsen approached and offered to show us how to hit a chip shot.

1



4. Even though she was not playing golf that day, Ms. Dziubla agreed to receive instruction from Mr. Jacobsen on how to hit a chip shot. I was standing approximately 10 to 15 feet away from Ms. Dziubla and Mr. Jacobsen when Mr. Jacobsen provided the instruction. There was nothing obstructing my view of Ms. Dziubla and Mr. Jacobsen.

5. Based on my observations, Mr. Jacobsen provided Ms. Dziubla with typical golf instruction. I never saw Mr. Jacobsen harmfully or offensively touch Ms. Dziubla. I never saw Mr. Jacobsen touch Ms. Dziubla's hips, waist or buttocks. Based on my observations, there is no question in my mind that Mr. Jacobsen acted appropriately throughout his time with Ms. Dziubla and with the group as a whole that day.

6. During the time that Mr. Jacobsen was with our group, he told a golf joke. I do not recall the joke, but it did not strike me as inappropriate or sexual in nature at the time. I recall that Ms. Dziubla laughed at Mr. Jacobsen's joke, and I believe the joke was directed at the group as a whole and not specifically at Ms. Dziubla.

7. It was not until later in the evening that Ms. Dziubla told me that she was upset with the joke that Mr. Jacobsen told on the golf course. Ms. Dziubla kept asking me if I thought the joke was inappropriate, and I told her no. Ms. Dziubla did not say that Mr. Jacobsen harmfully or offensively touched her. Rather, Ms. Dziubla appeared to be more upset about the joke than any physical contact between herself and Mr. Jacobsen. This struck me as odd because Ms. Dziubla has made vulgar comments in the past and I did not understand her to be someone who is easily offended.

8. I was surprised that Ms. Dziubla made the allegation against Mr. Jacobsen because, based on my observations, there was nothing that he did or said that day that should have caused her to be upset. I was shocked that Ms. Dziubla was upset with Mr. Jacobsen because I witnessed no inappropriate conduct between Ms. Dziubla and Mr. Jacobsen.

JCA 001941

9. I worked in the cubicle next to Ms. Dziubla at JCA and frequently interacted with her at work. In the months leading up to the golf outing, Ms. Dziubla frequently complained about work and it was my impression that she was not happy working at JCA.

10. I declare under penalty of perjury, that the foregoing is true and correct.

Executed on this 20th day of June, 2019.

_____
Timothy Le

JCA 001942