**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHER DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROWENA DZIUBLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Case No. 1:18-cv-4542** |
| v. | ) | |
| | ) | **Judge Rebecca R. Pallmeyer** |
| J. C. ANDERSON, INC., and PETER | ) | |
| ERLING JACOBSEN, | ) | **Magistrate Judge M. David Weisman** |
| | ) | |
| Defendants. | ) | **JURY DEMANDED** |

**PLAINTIFF'S L.R. 56.1(b)(3)(B) RESPONSE TO**
**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

NOW COMES the Plaintiff, ROWENA DZIUBLA, by and through her attorneys, the Law Offices of GOLDMAN & EHRLICH, CHTD., and as her L.R. 56.1(b)(3)(B) Response to Defendant Peter Jacobsen's L.R. 56.1(a)(3) Statement of Undisputed Material Facts states as follows:

*I.     The Parties, Venue, and The Court's Jurisdiction*

1.     Plaintiff, Rowena Dziubla, is a resident of Illinois. [ECF 1, ¶4].

**RESPONSE: Admit.**

2.     Defendant, Peter Erling Jacobsen, is a resident of Florida, not Oregon.
[ECF 22, ¶6].

**RESPONSE:  Admit.**

3.     Defendant, J.C. Anderson, Inc. ("JCA") was Plaintiff's employer on the
date of the incident. [ECF 25, ¶7].

**RESPONSE:  Admit.**

4.     Venue is proper in the Northern District of Illinois, Eastern Division, as the alleged
acts occurred herein. [ECF 25, ¶2, ECF 22, ¶2]

**RESPONSE: Admit.**

LAW OFFICES
**GOLDMAN & EHRLICH**
20 SOUTH CLARK STREET
SUITE 500
CHICAGO, ILLINOIS 60603
(312)332-6733

ARDC No. 6317657

1

*II.   "The Kev" Golf Outing*

**RESPONSE: To the extent that a response to Defendants' heading is required, Plaintiff denies it, as it does not reference any evidence.**

5.   On September 18, 2017, Defendant, J.C. Anderson, Inc. (JCA) sponsored a golf outing in memory of Kevin Radoha, a former officer of JCA. [Declaration of Chad Crane attached hereto as Exhibit 1, ¶2, JCA 001948 - 001953]. The annual event, known as the "The Kev," benefits the family of Kevin Radoha and cancer research. *[Id.]*. In 2017, the event was held at River Forest Country Club located in Elmhurst, Illinois. [*Id*.].

**RESPONSE: Admit.**

6.   Each year, a celebrity guest attends the event to increase sponsorship and attendance. [*Id*., ¶12]. In 2017, the celebrity guest who attended the event was Defendant Jacobsen, a professional golfer and television commentator. [*Id*.]. Mr. Jacobsen's role as the celebrity guest was to greet guests at the outing and drive from hole to hole to provide pointers on how to play golf. [*Id*.].

**RESPONSE:   Admit.**

7.   Ms. Abigail Radoha, Kevin Radoha's daughter, attended the golf outing on September 18, 2017 at the River Forest Country Club located in Elmhurst, Illinois. [Declaration of Abigail Radoha attached hereto as Exhibit 2, ¶2, JCA 0011943 - 001945]. Ms. Radoha's family and Ms. Radoha met Mr. Jacobsen for the first time at the Country Club on the morning of the event. [*Id*., ¶4]. Ms. Radoha was the photographer for the day, and she accompanied Mr. Jacobsen to different holes and took pictures of Mr. Jacobsen with the guests. [*Id*., ¶5].

**RESPONSE: Admit, but some of the facts stated herein are not material.**

LAW OFFICES
**GOLDMAN & EHRLICH**
20 SOUTH CLARK STREET
SUITE 500
CHICAGO, ILLINOIS  60603
(312)332-6733

ARDC No. 6317657

8.      Mr. Chad Crane, a professional golfer, worked to organize and run the charity golf outing at the River Forest Country Club on September 18, 2017, which he has done for the past five years prior to this date. [Ex. 2, ¶12].

**RESPONSE: Admit, but some of the facts stated herein are not material.**

9.      Mr. James Schumacher is the Chairman and Co-Owner of JCA. [Declaration of James Schumacher attached hereto as Exhibit 3, ¶1, JCA 001937 - 001939]. Mr. Schumacher attended the golf outing at the River Forest Country Club on September 18, 2017. [Id., ¶2].

**RESPONSE: Admit.**

10.     Mr. Jacobsen arrived at the Country Club with Jim Schumacher around 11 or 11:30 a.m. [Ex. 1, ¶4]. After he arrived, Mr. Jacobsen spent about one hour signing golf flags to pass out to the guests. [*Id.*]. Mr. Schumacher and Mr. Crane stayed with Mr. Jacobsen while he signed the golf flags and spoke to him about his charity work and golf. [*Id.*]. Mr. Crane's impression of Mr. Jacobsen was that he was very professional, and he wanted to be there to support the cause. [*Id.*]. Mr. Crane was with Mr. Jacobsen most of the time that he was at the event. [*Id.*, ¶5].

**RESPONSE:    Deny as to "Mr. Crane's impression of Mr. Jacobsen was that he was very professional, and he wanted to be there to support the cause", as it is an expression of an opinion, not a material fact. Otherwise, admit.**

11.     Once the event began, Mr. Jacobsen went from hole to hole to meet the guests and provide golf instruction with Mr. Crane. [*Id.*]. Mr. Crane described Mr. Jacobsen as quick witted and funny, and he was able to use humor to put people at ease. [*Id.*]. While on the course, Mr. Jacobsen frequently made golf jokes or would joke around with the guests, particularly when someone hit a bad shot. [*Id.*].

LAW OFFICES
**GOLDMAN & EHRLICH**
20 SOUTH CLARK STREET
SUITE 500
CHICAGO, ILLINOIS 60603
(312)332-6733

ARDC No. 6317657

3

**RESPONSE: Deny** as to "Mr. Crane described Mr. Jacobsen as quick witted and funny, and he was able to use humor to put people at ease", as it is an expression of an opinion, not a material fact. **Otherwise, admit.**

II.    *Plaintiff's Interaction with Mr. Jacobsen*

**RESPONSE: To the extent that a response to Defendants' heading is required, Plaintiff denies it, as it does not reference any evidence.**

12.    The golf outing is an event that is considered a voluntary event for employees, not one in which they are required to attend. [Deposition of Plaintiff, Rowena Dziubla attached hereto as Exhibit 4, 95:24-96:5]. Plaintiff, Rowena Dziubla, decided to attend the outing at the last-minute donating $50 to drive a cart around the course and socialize but not play golf. [*Id*., 95:7-23, 96:6-15, 308:1-7]. Dziubla arrived at the event, ate lunch, and then got in a golf cart in order to drive around on the course and take pictures of the various groups of people playing golf. [*Id*., 100:2-102:8].

**RESPONSE: Admit.**

13.    Ms. Dziubla has extremely limited knowledge regarding golf. [*Id*., 233:11-12]. During her deposition, Ms. Dziubla was asked whether she knew the types of golf clubs in a golf bag. [*Id*., 235:22-236:3]. Ms. Dziubla responded, "I know there's a thing called a putter, because that is in mini golf. I know that there's something that's a big golf club that allows you to get your drive for distance. That's about it." [*Id*., 235:22-236:3]. Ms. Dziubla did not know other common golf terms such as the "green," "tee box," "fairway," "sand trap," and "par." [*Id*., 235:22-237:17].

**RESPONSE: Deny** as to "Ms. Dziubla has extremely limited knowledge regarding golf", as it is an expression of an opinion, not a material fact. **Also deny that the**

LAW OFFICES
**GOLDMAN & EHRLICH**
20 SOUTH CLARK STREET
SUITE 500
CHICAGO, ILLINOIS 60603
(312)332-6733

ARDC No. 6317657

**enumerated terms are "common golf terms." Otherwise, admit.**

14.     Mr. Schumacher escorted Mr. Jacobsen in a golf cart to each hole to allow him to meet the guests and provide golf instruction. [Ex. 3, ¶3]. At one point, Mr. Schumacher and Mr. Jacobsen drove to the second hole where a group of golfers was approaching the green. [*Id*.]. The group included Tim Le, Kacper Stojowski, and Adam Scheitel. [Declaration of Tim Le attached hereto as Exhibit 5, JCA 001940 - 001942; Declaration of Kacper Stojowski attached hereto as Exhibit 6, JCA 001935 - 001936]. Mr. Jacobsen got out of the golf cart, met the golfers, and offered to show them how to hit a chip shot. [Ex. 3, ¶3]. Mr. Schumacher parked the golf cart and got out to join them. [*Id*.].

**RESPONSE: Admit.**

15.     Plaintiff drove her golf cart up to the second hole to meet up with this group of golfers. [Ex. 4, 243:18-244:3]. Mr. Schumacher flagged Ms. Dziubla down and invited her to meet Mr. Jacobsen and receive instruction on how to hit a chip shot. [*Id*., 257:16-20, 265:24-266:7, 267:17-22]. Mr. Dziubla agreed to receive instruction from Mr. Jacobsen. [*Id*.]. Mr. Jacobsen begun by giving verbal instruction to the group then gave individual verbal pointers. [*Id*., 266:8-16, 266:17-267:3]. Tim Le went up to receive individual help from Mr. Jacobsen before Ms. Dziubla. [*Id.,* 266:11-16]. Ms. Dziubla informed everyone prior to receiving instruction from Mr. Jacobsen that she was not skilled at golf. [*Id*., 268:17-20].

**RESPONSE: Admit.**

16.     Mr. Jacobsen provided Ms. Dziubla verbal instruction on how to hit a chip shot like he did the other players. [*Id*., 266:8-16]. Ms. Dziubla tried to mimic how Mr. Jacobsen hit the ball. [*Id*., 270:21-23]. After she was not able to successfully hit the ball in the hole, Mr. Jacobsen told Ms. Dziubla in front of everyone that she was going to need a little bit more guidance. [*Id*.,

LAW OFFICES
**GOLDMAN & EHRLICH**
20 SOUTH CLARK STREET
SUITE 500
CHICAGO, ILLINOIS  60603
(312)332-6733

ARDC No. 6317657

270:24-271:16]. Ms. Dziubla agreed that Mr. Jacobsen was encouraging her to try to get involved and try to do it. [*Id*., 272:1-3]. Mr. Jacobsen stated to everyone that she would need some physical instruction. [*Id*., 274:18-22]. Mr. Jacobsen came around behind Ms. Dziubla to physically hold her arms in order to help her swing the golf club. [*Id*., 294:7-19]. Ms. Dziubla admitted that she had no objection to Mr. Jacobsen coming around and placing his arms around her to help her swing. [*Id*.].

**RESPONSE: Deny that Jacobsen provided instructions to Plaintiff "like he did the other players." Plaintiff has specifically testified that Jacobsen made offensive physical contact with Plaintiff and made a sexually suggestive comment while instructing Plaintiff. Also, Plaintiff said that she had no objection to Jacobsen demonstrating the shot to her *if Jacobsen had done the demonstration the way another ex-golfer, Clint Hickman, had done* at another JCA golf outing. 109:3-15; 276:10-17; 294:7-12.**

17.     Ms. Dziubla felt that Mr. Jacobsen was too close to her when he showed her how to swing the club. [*Id*., 276:18-24]. Ms. Dziubla did not think that there was anything unusual about Mr. Jacobsen's movement other than being close. [*Id*., 278:14-17]. Ms. Dziubla testified that she did not know what portion of Mr. Jacobsen's body was touching her body. [*Id*., 279:11-13].

**RESPONSE: Admit.**

18.     Ms. Dziubla claims to have been offended by Mr. Jacobsen's physical contact because as he provided instruction to her, Mr. Jacobsen told a joke that included the word "wood." [*Id*., 275:4-16].

LAW OFFICES
**GOLDMAN & EHRLICH**
20 SOUTH CLARK STREET
SUITE 500
CHICAGO, ILLINOIS 60603
(312)332-6733

ARDC No. 6317657

**RESPONSE: Admit, but Ms. Dziubla was more specific. She testified that as Jacobsen showed her how to hit the shot, he said "and that's when I take my wood out." 279:14-280:6.**

*III. No Witnesses Observed any Harmful or Offensive Contact*

**RESPONSE: To the extent that a response to Defendant's heading is required, Plaintiff denies it, as it does not reference any evidence.**

19.     Mr. Crane watched Mr. Jacobsen interact with plaintiff on how to hit a chip shot. [Ex. 1, ¶6]. In the photograph attached as Exhibit A to Mr. Crane's declaration, which is a Google Maps picture of the second hole at River Forest Country Club, Mr. Jacobsen and Ms. Dziubla were located in the area circled with a number 1. [*Id.*, ¶7], Mr. Crane was standing in the area circled with the number 2. [*Id.*]. Mr. Crane was approximately 30 feet away from Mr. Jacobsen and Ms. Dziubla as he provided her with instruction. [*Id.*].

**RESPONSE: Admit.**

20.     Mr. Crane had a direct view facing Mr. Jacobsen and Ms. Dziubla. [*Id.*]. Mr. Crane never observed Mr. Jacobsen harmfully or offensively touch Ms. Dziubla at any time. [*Id.*, ¶8]. Based upon Mr. Crane's observations, Mr. Jacobsen never touched any portion of Ms. Dziubla's waist or buttocks, and he acted appropriately throughout the time that he interacted with Ms. Dziubla. [*Id.*].

**RESPONSE: Deny as to the statement "[b]ased upon Mr. Crane's observations, Mr. Jacobsen … acted appropriately throughout the time that he interacted with Ms. Dziubla", as it is an expression of an opinion, not a material fact. Otherwise, admit.**

LAW OFFICES
**GOLDMAN & EHRLICH**
20 SOUTH CLARK STREET
SUITE 500
CHICAGO, ILLINOIS  60603
(312)332-6733

ARDC No. 6317657

21.     Mr. Crane could see Ms. Dziubla's face when Mr. Jacobsen showed her how to hit a chip shot. Based on Mr. Crane's observations, Ms. Dziubla never appeared upset before, during, or after interacting with Mr. Jacobsen. [*Id.*, ¶7].

**RESPONSE: Deny as to the statement "Ms. Dziubla never appeared upset before, during, or after interacting with Mr. Jacobsen.", as it is an expression of an opinion, not a material fact. Otherwise, admit.**

22.     Ms. Radoha was with Mr. Jacobsen on the second hole while he interacted with the group of golfers, including Rowena Dziubla. [*Id.*, ¶5]. Ms. Radoha was approximately five to 15 feet away from Mr. Jacobsen and Ms. Dziubla when Mr. Jacobsen provided golf instruction to Ms. Dziubla. [*Id.*]. Based upon her observations, Ms. Radoha believes that Mr. Jacobsen did not harmfully or offensively touch Ms. Dziubla, nor did Mr. Jacobsen inappropriately or sexually touch Ms. Dziubla in any way. [*Id.*- ¶6].

**RESPONSE: Deny as to the statement "[b]ased upon her observations, Ms. Radoha believes that Mr. Jacobsen did not harmfully or offensively touch Ms. Dziubla, nor did Mr. Jacobsen inappropriately or sexually touch Ms. Dziubla in any way", as it is an expression of an opinion, not a material fact. Otherwise, admit.**

23.     After the group finished putting, Ms. Radoha took a picture of the group including Ms. Dziubla. [*Id.*, ¶8, Exhibit A to Ms. Dziubla's Declaration.]. Based upon Ms. Radoha's observations, Ms. Dziubla never looked upset while she was with Mr. Jacobsen. [*Id.*]. The members of the group all seemed like they were enjoying Mr. Jacobsen's company. [*Id.*].

**RESPONSE: Deny as to the statement "[b]ased upon Ms. Radoha's observations, Ms. Dziubla never looked upset while she was with Mr. Jacobsen. [*Id.*]. The**

LAW OFFICES
**GOLDMAN & EHRLICH**
20 SOUTH CLARK STREET
SUITE 500
CHICAGO, ILLINOIS  60603
(312)332-6733

ARDC No. 6317657

**members of the group all seemed like they were enjoying Mr. Jacobsen's company"**, **as it is an expression of an opinion, not a material fact. Furthermore, the fact references a photograph that is not included as part of Jacobsen's LR 56.1 Statement. Otherwise, admit.**

24.     Mr. Schumacher was approximately 10 to 15 feet away from Mr. Jacobsen and Ms. Dziubla when he provided the instruction, and Mr. Schumacher was located at a slight right-angle facing Ms. Dziubla. [Ex. 3, ¶4]. Mr. Schumacher was the closest person to Mr. Jacobsen and Ms. Dziubla when he was instructing her on how to hit a chip shot. [*Id*.]. There was nothing obstructing Mr. Schumacher's view of Mr. Jacobsen and Ms. Dziubla. [*Id*.]. Mr. Schumacher never observed Mr. Jacobsen touch Ms. Dziubla in a harmful or offensive manner, nor did he see Mr. Jacobsen touch Ms. Dziubla's buttocks, hips, or waist. [*Id*., ¶5]. Additionally, Mr. Schumacher did not observe Mr. Jacobsen touch Ms. Dziubla in a sexual manner, and never saw Mr. Jacobsen act inappropriately in any way. [*Id*.]. Based upon Mr. Schumacher's observations, Ms. Dziubla did not react negatively or appear upset during or after her interaction with Mr. Jacobsen. [*Id*.].

**RESPONSE: Deny as to the statement following statement, as it is an expression of an opinion, not a material fact: "Mr. Schumacher never observed Mr. Jacobsen touch Ms. Dziubla in a harmful or offensive manner". Otherwise admit that these were Schumacher's observation, but deny the truth of the matter asserted. In the statement, he states that "[he] never observed Mr. Jacobsen touch Ms. Dziubla in a harmful or offensive manner," and continues to say**

LAW OFFICES
**GOLDMAN & EHRLICH**
20 SOUTH CLARK STREET
SUITE 500
CHICAGO, ILLINOIS 60603
(312)332-6733

ARDC No. 6317657

**"nor did I see Mr. Jacobsen touch Ms. Dziubla's buttocks, hips, or waist."**
**He prefaces his statements in the next sentence with "I did not observe," "I**
**never saw," and "based on my observations".**

25.    After providing golf instruction to the group, Mr. Jacobsen took a photograph with the group, including Ms. Dziubla. [*Id.* ¶6]. Ms. Dziubla did not say anything to Mr. Schumacher during the golf outing about Ms. Dziubla's interaction with Mr. Jacobsen. [*Id.*].

**RESPONSE: Admit.**

26.    Mr. Le was standing approximately 10 to 15 feet away from Dziubla and Mr. Jacobsen when Mr. Jacobsen provided the instruction. [Ex. 5, ¶4]. There was nothing obstructing Mr. Le's view of Ms. Dziubla and Mr. Jacobsen. [*Id.*]. Based upon Mr. Le's observations, Mr. Jacobsen provided Ms. Dziubla with typical golf instruction. [*Id.*, ¶5]. Mr. Le never saw Mr. Jacobsen harmfully or offensively touch Ms. Dziubla nor did he see Mr. Jacobsen touch Ms. Dziubla's hips, waist, or buttocks. [*Id.*]. Based upon Mr. Le's observations, there is no question in his mind that Mr. Jacobsen acted appropriately throughout his time with Ms. Dziubla and with the group as a whole that day. [*Id.*].

**RESPONSE: Deny as to the statement below, as it is an expression of an opinion, not a**

**material fact:**

**Based upon Mr. Le's observations, Mr. Jacobsen provided Ms. Dziubla with**
**typical golf instruction. [*Id.*, ¶5]. Mr. Le never saw Mr. Jacobsen harmfully**
**or offensively touch Ms. Dziubla nor did he see Mr. Jacobsen touch Ms.**
**Dziubla's hips, waist, or buttocks. [*Id.*]. Based upon Mr. Le's observations,**
**there is no question in his mind that Mr. Jacobsen acted appropriately**
**throughout his time with Ms. Dziubla and with the group as a whole that day.**
**[*Id.*].**

LAW OFFICES
**GOLDMAN & EHRLICH**
20 SOUTH CLARK STREET
SUITE 500
CHICAGO, ILLINOIS 60603
(312)332-6733

ARDC No. 6317657

**Furthermore, he qualifies his statements with the preface "based on my observations." He further states that "*[he] never saw* Mr. Jacobsen touch Ms. Dziubla's hips, waist or buttocks" (emphasis added).**

27.    Mr. Stojowski was standing approximately 15 to 20 feet away from the location where Mr. Jacobsen showed Ms. Dziubla how to hit a chip shot. [Ex. 6, ¶4]. Mr. Stojowski was located to the left of the green. [*Id.*]. There was nothing obstructing Mr. Stojowski's view of Ms. Dziubla and Mr. Jacobsen during the golf instruction. [*Id.*]. Based upon Mr. Stojowski's observations, at no point in time did Mr. Jacobsen touch Ms. Dziubla's hips, waist, or buttocks. [*Id.*].

**RESPONSE:    Admit these were Stojowski's observations, but deny the truth of the matter asserted. He qualifies with the events with the preface "based on my observations."**

*IV.    Mr. Jacobsen Did Not Tell an Inappropriate Golf Joke on the Golf Course*

**RESPONSE:    To the extent that a response to Defendant's heading is required, Plaintiff denies it, as it does not reference any evidence, and it is a matter of opinion, not a material fact.**

28.    The joke that Mr. Jacobsen told on the golf course, which contained the word "woods," was not a sexual innuendo, but rather a golf joke that referred to the club "wood" and the area on the golf course known as the "woods." [Deposition Testimony of Peter Jacobsen attached hereto as Exhibit 7, 74:22-75:9]. As Mr. Jacobsen testified during his deposition, the joke turns upon the fact that a certain kind of club and the forested area surrounding the golf course are both called "woods":

> The joke is that beginners start with irons and they end up in the woods being when you start as a beginner, you usually start with a wedge, which is an iron. Then, as you progress

LAW OFFICES
**GOLDMAN & EHRLICH**
20 SOUTH CLARK STREET
SUITE 500
CHICAGO, ILLINOIS  60603
(312)332-6733

ARDC No. 6317657

up through the bag to the driver or three wood, you get to the woods. Because woods require a longer more fuller swing, it's harder to control. The ball can end up adjacent to the fairway, off the fairway in the rough where there are trees, a forest or woods. [*Id*.].

**RESPONSE: Deny. The explanation Jacobsen provided at his deposition is only evidence of his knowledge regarding a joke that contained the word "wood," not that this is the joke he told Plaintiff. In fact, Jacobsen does not recall even meeting Plaintiff or giving her or anyone else golf instructions during the Kev, much less any joke he may have told to anyone he was instructing. See Pl.'s L.R. 56.1(b)(3)(C) Stat. of Additional Facts ("SOAF") ¶ 7.**

29.    Mr. Jacobsen has told similar jokes to beginning players hundreds of times. [*Id*., 75:10-13]. Mr. Jacobsen's father was a golf player and loved golf humor. [*Id*., 75:14-19]. Mr. Jacobsen believes that the joke is from Henny Youngman or Rodney Dangerfield. [*Id*.].

**RESPONSE: Admit.**

30.    Ms. Dziubla admitted that she did not know of the old golf joke about irons and woods. [Ex. 4, 281:19-21]. When asked about the joke during her deposition, Ms. Dziubla responded as follows:

| | |
|---|---|
| Q: | Do you understand that beginning golfers struggle to hit the ball straight? |
| A: | Beginning golfers. Yeah, I guess. |
| Q: | Okay. And they start with the irons, which may be easier to control? |
| A: | I don't know what that means. |
| Q: | And that the woods are less easily controlled? |
| A: | No idea what that relates to. |
| Q: | And that if you hit a wood, you might end up in the woods? |
| A: | I don't know what that means. |
| Q: | Do you know that iron is a club? |
| A: | It's a reference to a type of golf club, yes. |
| Q: | Okay. And did you know that wood is a type of club? |
| A: | I'm assuming it's the ones that have wood on it. I don't know. |
| Q: | Do you know that historically that woods were made out of woods, but now they are still referred to as woods, but they just have the bigger - |
| A: | No. |
| Q: | rounder ends to them? |
| A: | Not until you just told me right now honestly. No idea. |

LAW OFFICES
**GOLDMAN & EHRLICH**
20 SOUTH CLARK STREET
SUITE 500
CHICAGO, ILLINOIS 60603
(312)332-6733

ARDC No. 6317657

*[Id,* 283:13-284:15].

**RESPONSE: Admit.**

31.     After having the joke explained to her, Ms. Dziubla admitted that there could be a non-sexual meaning to the joke:

Q:     Now having the joke explained to you and the full joke, not a portion of the joke, and realizing that you didn't know the irons, you didn't know woods, and you didn't know there were areas on the course called woods, you realize that there can be a non-sexual, just a golf humor to the joke; can we agree on that?

A:     Sure.

[*Id*, 293:2-10].

**RESPONSE: Admit.**

32.     Ms. Radoha recalls that while the group was at the second hole, Mr. Jacobsen told a joke that referenced the word "woods." [Ex. 2, ¶7]. Ms. Radoha did not recall the full joke, but she did not consider it to be inappropriate or sexual in nature. [*Id*]. Ms. Radoha understood the joke to be a golf joke and did not recall Mr. Jacobsen directing the joke to anyone in particular. [*Id*.].

**RESPONSE:   Deny to the extent that "Ms. Radoha … did not consider [the comment] to be inappropriate or sexual in nature", as it is an expression of an opinion, not a material fact. Otherwise, admit.**

33.     From Mr. Crane's observations, Mr. Jacobsen's conduct was completely professional throughout the event and he never heard Mr. Jacobsen make an inappropriate joke or one that could be construed as sexual in nature. [Ex. 1, ¶5].

**RESPONSE: Deny, as the entire statement is a matter of opinion, not a material fact.**

34.     Mr. Schumacher heard Mr. Jacobsen tell a golf joke while they were with the group on the second hole, which referenced iron and wood golf clubs. [Ex. 3, ¶6]. Mr. Jacobsen

LAW OFFICES
**GOLDMAN & EHRLICH**
20 SOUTH CLARK STREET
SUITE 500
CHICAGO, ILLINOIS  60603
(312)332-6733

ARDC No. 6317657

did not direct the joke at Ms. Dziubla. *[Id*.].

**RESPONSE: Deny as to the statement "Mr. Jacobsen did not direct the joke at Ms. Dziubla", as it is an expression of an opinion, not a material fact. Otherwise, admit. Furthermore, Schumacher does not state what the joke was, or provide any details pertaining to it.**

35.     Mr. Le heard Mr. Jacobsen tell a golf joke while he was with the group. [Ex. 5, ¶6]. Mr. Le does not specifically recall the joke, but it did not strike him as inappropriate or sexual in nature at the time. [*Id*.]. Mr. Le recalls Ms. Dziubla laughing at Mr. Jacobsen's joke, which Mr. Le believes was directed at the group as a whole and not specifically at Ms. Dziubla. [*Id*.].

**RESPONSE: Deny as to the statements "it did not strike him as inappropriate or sexual in nature at the time" and "was directed at the group as a whole and not specifically at Ms. Dziubla", as they are expressions of opinion, not a material fact. Otherwise, admit.**

36.     Mr. Stojowski heard Mr. Jacobsen tell part of a golf joke that included a reference to the word "woods." [Ex. 6, ¶5]. Mr. Stojowski did not hear the full joke, but he did not consider it to be offensive or inappropriate at the time. [*Id*.]. Later that day, Ms. Dziubla told Mr. Stojowski that she was upset with what Mr. Jacobsen told on the golf course. [*Id*.]. Mr. Stojowski told Ms. Dziubla that he disagreed with what Ms. Dziubla heard of Mr. Jacobsen's joke. [*Id*.]. Mr. Stojowski specifically remembers telling Ms. Dziubla, "'that's not what I heard.'" [*Id*.]. Ms. Dziubla never told Mr. Stojowski that Mr. Jacobsen touched her in a harmful or offensive manner. [*Id*.].

**RESPONSE: Admit.**

LAW OFFICES
**GOLDMAN & EHRLICH**
20 SOUTH CLARK STREET
SUITE 500
CHICAGO, ILLINOIS  60603
(312)332-6733

ARDC No. 6317657

*V.* *Mr. Jacobsen Provided Golf Instruction to Ms. Dziubla in an Appropriate Manner*

**RESPONSE: To the extent that a response to Defendant's heading is required, Plaintiff denies it, as it does not reference any evidence, and it is an expression of opinion, not a material fact.**

37. Mr. Crane started playing golf when he was six or seven years old. [Ex. 1, ¶9]. Mr. Crane has played golf throughout his career and on the golf team at Purdue University. [Id.] Mr. Crane graduated from Purdue University in 1998. [Id.]. In 2004, the Professional Golfers' Association ("PGA") certified Mr. Crane as a golf instructor. [Id.]. As a member of the PGA, Mr. Crane received extensive training on how to teach golf, and Mr. Crane worked as a golf pro or golf instructor from 2008 until 2018.

**RESPONSE: Admit, but the facts stated herein are not material.**

38. During his career as a golf instructor, Mr. Crane taught many students, including men, women, and juniors how to play golf. [*Id.*, ¶10]. Mr. Crane taught at various clubs and organizations throughout the Midwest, including but not limited to the Woodwind Country Club in Indiana, where Mr. Crane worked for two years. [*Id.*]. While working as a golf instructor at Woodwind, Mr. Crane provided approximately 50 hours of golf instruction a week. [*Id.*]. Mr. Crane also conducted ladies' clinics on how to hit a chip shot. [*Id.*].

**RESPONSE: Admit, but the facts stated herein are not material.**

39. Based upon his education and 10 years of professional golf experience, Mr. Crane believes that the way Mr. Jacobsen instructed Ms. Dziubla on how to hit a chip shot is consistent with how a golf instructor should provide golf instruction to a student. [*Id.*, ¶11]. In Mr. Crane's opinion, Mr. Jacobsen's golf instruction was professional, competent and consistent with industry standards. [*Id.*].

LAW OFFICES
**GOLDMAN & EHRLICH**
20 SOUTH CLARK STREET
SUITE 500
CHICAGO, ILLINOIS 60603
(312)332-6733

ARDC No. 6317657

**RESPONSE: Deny, as the entire statement is a matter of opinion, not a material fact.**

40.    Defendant disclosed professional golfer Nancy Lopez as his expert witness regarding the proper manner to provide golf instruction. [Expert Disclosure of Nancy Lopez attached hereto as Exhibit 8]. Ms. Lopez has played golf since she was eight years old. [*Id*.]. Ms. Lopez has been a professional golfer for nearly 30 years and still makes a living as a professional golfer at corporate, charity, and teaching events [*Id*.]. Ms. Lopez has won 48 Ladies Professional Golf Association tournaments throughout her extensive career. [*Id*.]. Ms. Lopez won the Women's Professional Golf Association Championship three times. [*Id*.]. In 1987, she was inducted in World Golf Hall of Fame. [*Id*.]. Ms. Lopez is a member of the Teaching and Club Professionals. [*Id*.]. She owns her own company called Nancy Lopez Golf Adventures where she teaches with two other members of the Teaching and Club Professionals and takes groups all over the world to teach them how to play golf. [*Id*.].

**RESPONSE: Admit, but some of the facts stated herein are not material.**

41.    In her expert report, Ms. Lopez opines regarding the proper manner in which a golf instructor provides instruction to a golfer. [*Id*.]. Ms. Lopez states that it is impossible to provide golf instruction without having physical contact. [*Id*.]. When showing someone how to hit a chip shot, a golf instructor may touch the student golfer's shoulder, backs, hands, and even hips to show the student how to line up the target. [*Id*.]. A golf instructor may need to wrap his or her arms around the student, which might mean leaning into the student's buttocks area. [*Id*.]. Ms. Lopez makes physical contact with golfers when instructing them in order to show them the correct stance, hand position, and directional position of their hips and shoulders. [*Id*.]. Ms. Lopez will show golfers how to make a small swing by touching their arms and complete body because you wrap your arms around the golfer. [*Id*.].

LAW OFFICES
**GOLDMAN & EHRLICH**
20 SOUTH CLARK STREET
SUITE 500
CHICAGO, ILLINOIS 60603
(312)332-6733

ARDC No. 6317657

**RESPONSE: Admit that these are Lopez's opinions, but deny the truth of the matter asserted.**

42.     Based upon her review of the testimony of the witnesses and exhibits to their depositions as well as the witnesses' Declarations, Ms. Lopez opines that Mr. Jacobsen did not harmfully or offensively touch Ms. Dziubla when he showed her how to hit a chip shot. [*Id.*]. The manner in which Mr. Jacobsen provided golf instruction to Dziubla was consistent with how golf instructor is supposed to provide golf instruction. [*Id.*].

**RESPONSE: Admit that these are Lopez's opinions, but deny the truth of the matter asserted.**

43.     Ms. Lopez is also familiar with the golf joke that Mr. Jacobsen told on the golf course. [*Id.*]. Ms. Lopez stated that this joke is not a sexual innuendo. [*Id.*].

**RESPONSE: Deny. See SOAF ¶ 21.**

*Respectfully Submitted,*

Dated: February 20, 2020

*/s/ Sam Sedaei*
Sam Sedaei of the Law Offices of   Goldman & Ehrlich, CHTD., as Attorney for Plaintiff, ROWENA DZIUBLA

Arthur R. Ehrlich
Sam Sedaei
Law Offices of Goldman & Ehrlich, Chtd.
20 S. Clark Street, Suite 500
Chicago, IL 60603
(312) 332-6733
arthur@goldmanehrlich.com
sam@goldmanehrlich.com

LAW OFFICES
**GOLDMAN & EHRLICH**
20 SOUTH CLARK STREET
SUITE 500
CHICAGO, ILLINOIS  60603
(312)332-6733

ARDC No. 6317657