Nancy Lopez Russell - 10/9/2019
Case: 1:18-cv-04542 Document #: 53-6 Filed: 02/20/20 Page 1 of 28 PageID #:633
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

```
 1             IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                     EASTERN DIVISION

 3               CASE NO. 1:18-cv-4542

 4
    ROWENA DZIUBLA,
 5
               Plaintiff,
 6
      vs.
 7
    J.C. ANDERSON, INC., and
 8  PETER ERLING JACOBSEN,

 9             Defendants.
    _____/
10

11

12

                        ------------
13
               DEPOSITION OF NANCY LOPEZ RUSSELL
14
                         A WITNESS
15
                  TAKEN BY THE PLAINTIFF
16
                        ------------
17

18

19

20

21

22  DATE: OCTOBER 9, 2019

23  TIME: 2:05 P.M. - 3:25 P.M.

24

25
```



Nancy Lopez Russell          10/9/2019
Case: 1:18-cv-04542 Document #: 53-6 Filed: 02/20/20 Page 2 of 28 PageID #:634
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

```
 1                    I  N  D  E  X

 2   WITNESS                                        PAGE

 3   NANCY LOPEZ

 4    Direct Examination By Mr. Sedaei               4

 5    Cross-Examination By Ms. Cronin                46

 6

 7

 8
                     E  X  H  I  B  I  T  S
 9

10    EXHIBIT              DESCRIPTION              PAGE

11   Plaintiff's 1   The Expert Report of Nancy Lopez   16

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case: 1:18-cv-04542 Document #: 53-6 Filed: 02/20/20 Page 3 of 28 PageID #:635
Nancy Lopez Russell — 10/9/2019
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

```
1              The deposition of NANCY LOPEZ RUSSELL, in the

2    above-entitled and numbered cause was taken before me

3    Angela Connolly, Registered Professional Reporter,

4    Certified Realtime Reporter, Notary Public for the State

5    of Florida at large, taken at 2153 SE Ocean Boulevard,

6    Stuart, Martin County, Florida, on the 9th day of

7    October, 2019, pursuant to Notice in said cause for the

8    taking of said deposition on behalf of the Plaintiff.

9          APPEARING VIA ZOOM ON BEHALF OF PLAINTIFF:

10         GOLDMAN & EHRLICH
           BY: SAM SEDAEI, ESQUIRE
11         20 SOUTH CLARK STREET, SUITE 500
           CHICAGO, IL 60603
12         (312) 332-6733

13         APPEARING VIA ZOOM ON BEHALF OF J.C. ANDERSON, INC.

14         VEDDER, PRICE
           BY: MICHELLE OLSON, ESQUIRE
15         222 N. LASALLE STREET
           CHICAGO, IL 60601
16         (312) 609-7569

17         APPEARING ON BEHALF OF PETER ERLING JACOBSEN

18         PRETZEL & STOUFFER, CHTD.
           BY: MARY H. CRONIN, ESQUIRE
19         BY: EDWARD B. RUFF, III, ESQUIRE - VIA ZOOM
           1 S. WACKER DRIVE, SUITE 2500
20         CHICAGO, IL 60606
           (312) 578-7458
21

22         CLIFFORD LAW OFFICES
           BY: JAMES C. PULLOS, ESQUIRE - VIA ZOOM
23         120 N. LASALLE STREET, 31ST FLOOR
           CHICAGO, IL 60602
24         (312) 625-6192

25
```



Case: 1:18-cv-04542 Document #: 53-8 Filed: 02/20/20 Page 4 of 28 PageID #:636
Nancy Lopez Russell 10/9/2019
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

1  - - - - - - - - - - - - - - - -

2  Thereupon:

3  NANCY LOPEZ RUSSELL,

4  Having been first duly sworn by me, was

5  examined and testified as follows:

6  DIRECT EXAMINATION

7  BY MR. SEDAEI:

8  Q  Hi, Ms. Lopez.

9  A  Hi. How are you?

10  Q  Good. Thank you. How are you?

11  A  Great. Thank you.

12  Q  My name is Sam Sedaei, and I'm an attorney for

13  the plaintiff in this case, Ms. Dziubla. Would you

14  please state your full name for the record.

15  A  My name is Nancy Lopez Russell.

16  Q  Thank you. Do you understand that your

17  testimony today will be under oath?

18  A  Yes, sir.

19  Q  I'm going to go over some basic ground rules

20  that I'd like to ask you to keep in mind.

21  A  Okay.

22  Q  First, it would be helpful for me to know:

23  Have you ever been deposed before?

24  A  No, sir.

25  Q  Okay. So a deposition is much like a

Page 4

1  ask me and I will repeat or rephrase; but if you do

2  answer a question, I will assume that you understood the

3  question.

4  A  Okay.

5  Q  Have you consumed any medicine or alcohol in

6  the past 12 hours?

7  A  No, sir.

8  Q  Is there any reason, such as being under

9  unusual stress, a physical or mental condition, or being

10  under the influence of any substances, that would

11  prevent or limit your ability to give truthful

12  answers to my questions?

13  A  No, sir.

14  Q  And what did you do to prepare for today's

15  deposition?

16  A  Nothing for today. I just woke up this

17  morning, and I travel a lot, so I was just trying to get

18  ready for the day.

19  Q  Okay. Did you consult with anyone prior to

20  today's deposition?

21  A  I just met with Mary for about 30 minutes to

22  45 minutes, that's it.

23  Q  Okay. Did you look at any documents for

24  today?

25  A  I just went over what -- my expert witness

Page 6

1  conversation, but there is some differences, so I want

2  to cover those. For one, we have a court reporter,

3  Angela, at your location today who's attempting to

4  transcribe the conversation.

5  A  Okay.

6  Q  So we can't interrupt each other, so please

7  wait until I have finished asking the question before

8  answering, and I will try to wait until you have

9  responded to a question before speaking.

10  A  Okay.

11  Q  Also, when answering questions, please try to

12  use full answers, yes's and no's, versus uh-huhs and

13  uh-uhs.

14  A  Okay.

15  Q  Again, for Angela's sake.

16  A  Okay.

17  Q  And also please make sure that all your

18  answers are verbal rather than head nods or head shakes.

19  A  Okay.

20  Q  If you need to take a break, please let me

21  know, but please only ask for a break after you've

22  answered the question but before I pose a new question.

23  Okay?

24  A  Okay.

25  Q  If you don't hear or understand a question,

Page 5

1  papers that I had sent her months ago now it seems like.

2  I'm not sure how long it's been.

3  Q  Okay. Did you talk to anyone other than Mary

4  prior to today in preparation for today?

5  A  No, sir. No one knows what I'm doing today.

6  Q  Okay. Would you tell me the residence that

7  you reside in?

8  A  I live in Palm City, Florida.

9  Q  I'm going to ask you a few questions about

10  your education. Would you please tell me the most

11  advanced educational degree that you have.

12  A  I went to Tulsa University for two years

13  hoping to get a degree in engineering but ended up being

14  a professional golfer instead.

15  Q  You didn't get a degree?

16  A  No. I just went two years, played on the

17  girl's golf team, and then turned professional.

18  Q  I see. That would have been an undergraduate

19  degree if you had finished the program?

20  A  Yes, sir.

21  Q  Okay. And where did you go to high school?

22  A  I went to Goddard High School in Roswell, New

23  Mexico.

24  Q  Okay. Are you currently employed?

25  A  I'm self-employed. I still do a lot of things

Page 7

Nancy Lopez Russell                    10/9/2019
Case: 1:18-cv-04542 Document #: 53-8 Filed: 02/20/20 Page 5 of 28 PageID #:637
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

1 for golf and the LPGA and teaching. I have my own
2 company called Nancy Lopez Golf Adventures where I teach
3 people to learn the game and I travel with them and
4 entertain them.
5    Q    Okay. And I will ask you more specific
6 questions about the organizations you're involved with
7 in just a moment.
8    A    Okay.
9    Q    Actually, I can get to it now. So let's start
10 with the Nancy Lopez Golf Adventures. That's the one
11 you're currently involved in, correct? And I guess I'll
12 go ahead and ask that. You're involved with Nancy Lopez
13 Golf Adventures currently; is that correct?
14    A    Yes, sir.
15    Q    Okay. And do you have other people who also
16 work at this organization?
17    A    I have two LPGA teaching professionals that
18 work for me, Teresa Zamboni and Sue Powers. They're
19 both top 50 team division teachers on the LPGA teaching
20 division.
21    Q    Okay. And can you kind of -- you were
22 starting to generally describe what you did at the
23 organization. Can you elaborate on that, exactly what
24 you do?
25    A    Yes. We plan trips for people, men and women,

Page 8

1 years. And then when I started Nancy Lopez Golf
2 Adventures, I kind of learned how to teach
3 professionally from these ladies.
4    Q    Are you still involved with T&CP?
5    A    Yes. Whenever they need me to do anything for
6 charities or any events or even tournaments, I can
7 participate in those, and I try and do that sometimes.
8    Q    Are you currently involved with any other
9 organizations that you can think of in any kind of a
10 professional capacity?
11    A    With the LPGA, whenever the commissioner of
12 the LPGA needs me to go to meet with sponsors to maybe
13 hopefully get tournaments in other cities, I do stuff
14 for the LPGA in that way.
15    And then I do a lot of corporate outings,
16 things like that where I go and participate in most --
17 mostly the corporate entities are charity events, so I
18 help people at those golf tournaments by playing a par-3
19 with them or giving them some instruction, just whatever
20 they need for me to do.
21    Q    You mentioned corporate outings. Would those
22 outings be events that are somewhat similar to the event
23 that was at issue in this case involving Mr. Jacobsen?
24    A    Yes, sir.
25    Q    Have you ever done any corporate events with

Page 10

1 to either join us here in the United States or we travel
2 overseas. And we usually take trips for about six to
3 seven, maybe eight days, and every day we play golf with
4 them, take them to dinner, entertain them, teach them
5 the game, which we've got a lot of people that do come
6 to our events. My company's been a company for -- this
7 is our fifth year.
8    Q    That was established about five years ago?
9    A    Yes, sir.
10    Q    Do you charge hourly?
11    A    No. We charge for the whole trip.
12    Q    Okay. What is T&CP?
13    A    Teaching and professional -- it's always
14 confusing. Teaching and -- Teaching and Club
15 Professionals.
16    Q    Okay. What is this organization?
17    A    They're all teachers that wanted to play in
18 the LPGA tour. They didn't make it, so they became
19 teachers for the LPGA, and they're -- they have jobs
20 probably all over the country, and they teach the game
21 of golf.
22    Q    Okay. And what is your relationship with this
23 organization?
24    A    I'm just a member. I'm not -- I'm not a
25 full-time teacher because I played on the tour almost 30

Page 9

1 J.C.A.?
2    A    With who? With who?
3    Q    J.C.A. This would be J.C.A., the company that
4 hosted Mr. Jacobsen.
5    A    Oh, no, sir. No, sir.
6    Q    Can you think of any other organizations that
7 you're involved in -- with?
8    A    Are there any other ones?
9    Q    Yes.
10    A    No. I pretty much -- that's what I stay
11 involved in. I do a lot of charity work, too, so.... I
12 do the same type thing though, Pro-Ams to raise money
13 for them, so it's pretty similar.
14    Q    Okay. Have you ever served as an expert in
15 any other case before?
16    A    No, sir.
17    Q    Have you ever been sued for any reason?
18    A    No, sir.
19    Q    Have you ever sued anyone for any reason?
20    A    No, sir.
21    Q    Has anyone ever alleged, either formally or
22 informally, that you harassed them in any way?
23    A    No way. Sorry, it's just a weird question.
24    Q    That's fine. And these are questions that I
25 have to ask, so I hope you don't consider them to be --

Page 11

Nancy Lopez Russell    10/9/2019
Case: 1:18-cv-04542 Document #: 53-8 Filed: 02/20/20 Page 6 of 28 PageID #:638
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

1    A   No, that's fine.  No, sir.  I understand.
2        THE COURT REPORTER:  Wait.  I'm sorry, I
3    didn't catch the last part.  She was talking over
4    you.
5        THE WITNESS:  Sorry.
6   BY MR. SEDAEI:
7    Q   I was just saying that these are standard
8    questions that we normally ask and please don't take any
9    of it personal.
10   A   Right.
11   Q   Are you married?
12   A   Yes, sir.
13   Q   And what's your husband's name?
14   A   Edward Joseph Russell.
15   Q   And is this the only marriage you have?
16   A   No.  I was married two other times before him.
17   Q   Do you have any children?
18   A   Excuse me?
19   Q   Do you have any children?
20   A   I do.
21   Q   How many children do you have and how old are
22   they?
23   A   I have three daughters.  Ashley's my oldest,
24   she's 35.  Erinn's my middle daughter, she's 32 --
25   sorry, 33.  And Torri is 27.  Torri is my youngest.

Page 12

1    A   I'm sorry, I didn't understand that.
2    Q   I asked did you financially contribute to that
3    event?
4    A   No, I don't believe so.
5    Q   So what was your role at the charity?
6    A   It was to -- when you do charity events like
7    that, and you go to the event, that brings more people
8    into the gate to watch the event, so that's how we raise
9    money for the charity.
10   Q   Do you remember when you met Mr. Jacobsen for
11   the first time?
12   A   I don't.
13   Q   But you said that it would be dating back to
14   the late '70s?
15   A   Late '70s, yes.
16   Q   When was the last time you saw him?
17   A   It's been probably -- I'm going to say --
18   well, I'll take that back.  I saw him at the Masters
19   last year.  I was standing on one of the holes watching
20   the golfers come up to a par-3, Peter was walking by and
21   he said, "Hi, Nancy, how are you?"  And I said, "I'm
22   great.  How are you?"  I hugged him, my husband shook
23   hands with him, and he was on his way because he was
24   doing television at that time.  So he just stopped,
25   tapped me on the shoulder, and said hi.

Page 14

1    Q   Do you know anyone personally who, to your
2    knowledge, has been accused of harassing somebody else?
3    A   No, sir.
4    Q   Do you know who Peter Jacobsen is?
5    A   Yes, sir.
6    Q   And how do you know him?
7    A   I've known Peter through golf for many, many
8    years.  Since I was a rookie in 1977, '78.  I believe
9    early on I did a Pro-Am for him for charity.  And even
10   though we're in the same career, I really don't see him
11   very often, but I have been at certain clinics with him
12   through the almost 30 years that I was on tour.
13   Q   Okay.  Can you tell me a little more about the
14   charity event you just referenced that you did with him
15   or for him?  What is that?
16   A   Yeah.  He had one -- I believe it was in
17   California, it's been a while, but he was raising money
18   for his charity, and I couldn't tell you what the name
19   of it was.  And it was me and Arnold Palmer and some --
20   I don't think Jack Nicklaus was there, but some top
21   golfers, celebrities also.  We were playing in matches
22   there to raise money for his charity.
23   Q   And you attended that event?
24   A   Yes, sir.
25   Q   Did you also financially contribute to it?

Page 13

1    Q   So thinking back to around the time when you
2    met him the first time, late '70s to now, it's a general
3    question that spans over maybe 40 years, but can you
4    tell me generally how often you have seen Mr. Jacobsen
5    throughout these years?
6    A   Gosh.  Since 1977, when I got on the tour to
7    now -- even though we were in the same sport, you just
8    don't -- you know, the men were in one part of the
9    country, the LPGA tour was in the other part of the
10   country, and I would say in those 30 years of being on
11   the tour, I might have seen him ten times.
12   Q   Would you say you're friends with him?
13   A   Through golf, definitely friends with him.  I
14   don't go to dinner and hang out at his house or anything
15   like that, but I've known him through golf
16   professionally.
17   Q   Has he ever been your teacher or have you ever
18   been his teacher at any point in golf?
19   A   No.  He came to one of my charity events a few
20   years ago and did a clinic for the people that were
21   playing in my Pro-Am.  So I guess I could say I got some
22   tips from him in that clinic, but nothing personally.
23   Q   Okay.  And do you know Ms. Dziubla, the
24   plaintiff in this case?
25   A   No, sir.

Page 15



Nancy Lopez Russell   10/9/2019
Case: 1:18-cv-04542 Document #: 53-6 Filed: 02/20/20 Page 7 of 28 PageID #:639
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

1    Q   I'm going to ask you some questions about the
2    expert report that we received with your name on it.
3        MR. SEDAEI:  Angela, do you have copies of
4    that report in front of you?
5        THE COURT REPORTER:  Yes, I do.
6        MR. SEDAEI:  Would you please mark that as
7    Exhibit 1 and give a copy to Ms. Lopez and a copy
8    to Ms. Cronin.
9        THE COURT REPORTER:  Okay.
10       (Thereupon, Plaintiff's Exhibit 1 was marked
11   for identification.)
12   BY MR. SEDAEI:
13   Q    Do you have a copy?
14   A    Yes, sir.
15   Q    I'm showing you what's marked as Exhibit 1.
16   Have you seen this document before?
17   A    Yes, sir.
18   Q    Would you tell me what it is?
19   A    It's my expert report, what I did a few months
20   ago.
21   Q    Okay.  Can you tell me who drafted this
22   document?
23   A    I did.
24   Q    Did you say you drafted it a few months ago?
25   A    Well, whenever that -- I don't even know what

Page 16

1    day that was.  It's been a while when we spoke, but I
2    couldn't give you the date.
3    Q    Okay.  Is this report your opinions
4    surrounding the events that took place at the event
5    called "The Kev" on September 18, 2017?
6    A    I'm not understanding what you're asking.
7    Q    I'm just trying to understand, you know, if
8    this report is, you know -- what is the date of the
9    events that are the subject matter of this report?  Do
10   you understand that to be the charity event involving
11   J.C.A. and Mr. Jacobsen on September 18, 2017?
12   A    Yes, sir, I do.
13   Q    Before we go through the details of the
14   report, I just want to get some things out of the way.
15       Do you have any knowledge regarding the
16   circumstances surrounding Ms. Dziubla's termination from
17   J.C.A.?
18   A    No.  No, sir.
19   Q    Are you claiming to be an expert on the
20   circumstances surrounding Ms. Dziubla's termination from
21   J.C.A.?
22   A    No.  No, sir.
23   Q    Has anyone helped you with the drafting of
24   this report?
25   A    The only thing Mary helped me with is

Page 17

1    punctuation and making sure that I was clear on the way
2    I made my statement.
3    Q    Okay.  Did anyone other than Mary Cronin help
4    you with the drafting of this report?
5    A    No, sir.
6    Q    Just tell me generally what you know about the
7    events that took place on September 18, 2017.  Speak in
8    general terms, and if I need any details, I'll ask you
9    about it.
10   A    Okay.  Just what I read, what was given to me
11   to read from the people that were there, the explanation
12   of them saying -- not them, but the lady -- the lady
13   that you're representing said that he touched her
14   inappropriately while giving her a lesson or a tip when
15   they were out there on the golf course with all the
16   other people that were in the event.  And that's pretty
17   much, you know, what I read and what I know.
18   Q    Okay.  What's your understanding regarding who
19   was in attendance at the event?
20   A    That they were watching him give her a tip,
21   and that they were watching them and didn't see anything
22   inappropriate.  And I'm sure they were just trying to
23   get a good tip from him as he was showing her how to hit
24   the chip shot.
25   Q    Okay.  And I'm sorry if my question wasn't

Page 18

1    clear.  My question was more -- let me see.  To your
2    knowledge, who was present at the event, at the charity
3    event?  And I'm not asking about names, but just in
4    general terms, who was in attendance?
5    A    The other participants that were in that group
6    as they were watching him give her a tip.
7    Q    And do you know who those participants were in
8    terms of positions or names or anything like that?
9    A    I don't know anybody that was there.  I just
10   know one made a statement that he was about ten feet
11   away, I believe, if I can remember that.  It was not
12   very far.
13       MS. CRONIN:  Sam, if you have a document or
14   something that you want to refer to -- I think that
15   these questions -- this line of questioning seems
16   somewhat like a memory test, so if you could be
17   more specific, please, in your questions.  And if
18   you have something you want to refer to, can you
19   please do so to refresh any recollection, please?
20       MR. SEDAEI:  Okay.  If I see it necessary,
21   I'll do that.
22   BY MR. SEDAEI:
23   Q    Ms. Lopez, what is your understanding of what
24   Mr. Jacobsen's role was going to be at the event?
25   A    Same thing I do when I'm at an event.  I like

Page 19

Nancy Lopez Russell   10/9/2019
Case: 1:18-cv-04542 Document #: 53-8 Filed: 02/20/20 Page 8 of 28 PageID #:640
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

1  to entertain.  If someone needs a tip, I want to teach
2  them how to hit a certain shot, give them my
3  professional advice because I'm the professional golfer
4  there and most of the time when the participants are
5  there, they always want to learn a little bit more about
6  golf.
7      And knowing Peter Jacobsen, when he's taught
8  before in charity events and I've watched him give
9  clinics, he's doing the same thing I do.  You're there
10  to entertain because you want these people to come back
11  every year.  So if they have a good time when you're
12  teaching them and playing golf with them or hitting a
13  shot with them, our job is to bring more people back if
14  we can.  So we definitely want to be friendly, have a
15  good time, you know, give them good tips, make them
16  laugh, just do a lot of fun things so that they remember
17  that and say, "I want to go back to that event next
18  year."
19      Q   Okay.  If you look at the Exhibit that I have
20  handed you through Angela, if you look at the first
21  line, towards the end it reads:  "I believe that Peter
22  Jacobsen was doing his job as the professional guest and
23  was entertaining and showing Ms. Dziubla the correct way
24  to chip a shot to the green."  Did I read that
25  correctly?

1      A   Yes, sir.
2      Q   Just to confirm, were you present at "The Kev"
3  on September 18, 2017?
4      A   No, sir.
5      Q   Okay.  So in light of that, how do you know
6  this statement that I just read to be true?
7      A   Because --
8      MR. RUFF:  This is Ed Ruff.  You read part of
9  a statement, which is the second part of that line.
10  If you read the first line, it explains your
11  question.  So I just object on just reading part of
12  it because the first line explains everything.
13      MR. SEDAEI:  Okay.  Ed, I'm going to ask you
14  to make an objection but refrain from coaching the
15  witness or answering the question for her.
16      I will be instructing Ms. Lopez -- Ms. Lopez,
17  when I ask you a question about this document, you
18  can feel free to look at other parts of the
19  document if it will help you -- it will help to
20  refresh your memory on the answer.  So don't feel
21  like you don't have to look at any other parts of
22  this document.  If you think it's helpful, please
23  review it.
24      THE WITNESS:  Okay.
25      MR. RUFF:  So just so we're clear for the

1  record, my comment had nothing to do with
2  instruction of Ms. Lopez.  She's more than able and
3  capable to handle herself.
4      My point is directed to you, which is your
5  answer -- the answer to the question is if you
6  simply read the whole -- the whole line, and you
7  asked her three times was she there clearly in an
8  attempt to intimidate her into saying that she
9  doesn't know what was going on.
10      She already stated to you her basis, and if
11  you look at the first clause, it tells where she
12  got the information.  So that's my statement.
13      MR. SEDAEI:  I understand.  There are
14  different parts of these reports, and I have to
15  isolate them and ask you questions about them; but
16  again, Ms. Lopez, you can answer the question any
17  way that you think it's appropriate.
18      THE WITNESS:  Okay.
19      MR. SEDAEI:  And you can read other parts of
20  the document.  This is a conversation that we're
21  having.
22  BY MR. SEDAEI:
23      Q   So you drafted the report, and I have
24  questions that I want to ask you about it, and I'm going
25  to ask you about specific parts of this report.

1      A   Okay.
2      Q   That's what I'm -- that's what I'm going to
3  do.
4      A   Well, making that statement where I believe
5  that Peter Jacobsen was doing his job as a
6  professional -- and, of course, that came from reading
7  the depositions of the other people, but I know Peter
8  Jacobsen in the professional way and have watched him
9  and he is an entertainer.  I've watched him.  He makes
10  people laugh.  He's a great instruction professional.
11  I've seen him at work on the golf course before, so from
12  what the depositions of the people -- what they said, I
13  feel like they would agree with me, and I would agree
14  with them, that he was doing what he's supposed to do at
15  these events.
16      Q   Okay.  So when I asked you "How do you know
17  this statement I just read to be true?" you referenced
18  your experience -- and you can correct me if I'm wrong,
19  but you referenced your experience of having observed
20  Mr. Jacobsen in other events and also looking at
21  depositions and statements from this case?
22      A   Yes, sir.
23      Q   Have you spoken with Mr. Jacobsen about this
24  lawsuit or the incident involved in this lawsuit?
25      A   No, sir.



Case: 1:18-cv-04542 Document #: 53-8 Filed: 02/20/20 Page 9 of 28 PageID #:641
Nancy Lopez Russell    10/9/2019
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

1    Q    If you didn't know Mr. Jacobsen -- so take out
2    your knowledge about what you know about Mr. Jacobsen
3    and what you've seen him do in other events -- would you
4    have the same conclusion if you only looked at the
5    deposition transcripts or statements of individuals from
6    this case by themselves?
7       A    The reason I can answer that question is
8    because I do the same thing.  When you're teaching -- if
9    I didn't know Mr. Jacobsen, when you're teaching
10   people -- which is a shame that we have to think about
11   how we touch people when we're teaching them because I'm
12   going to be very uncomfortable from now on because I've
13   always -- especially chipping, I've always put my arms
14   around people, men and women, touch them usually on the
15   hip side because it's comfortable to do that, and I've
16   never thought I couldn't do it.  And then I put my right
17   hand on the person's right hand or the chipping -- the
18   club, whatever, to bring the club back and help them
19   because if you don't play golf, you don't understand any
20   of that.  So we have to show you by making physical
21   contact, but it's not like, okay, I'm making physical
22   contact.  It's all about it's just natural.
23      I've never ever had to think about how I'm
24   touching somebody.  I just always went in there, wanted
25   to help them, wanted to make them feel comfortable; and

Page 24

1    get comfortable and hit the shot better.  I mean, it's
2    all about hitting that good shot, and if they're not in
3    a good position to hit the shot, then I'm wasting my
4    time trying to teach them and they're not going to have
5    any fun because they're not going to see success.
6       Q    Okay.  So as we discuss your conclusion here
7    that I read, it was based on your knowledge of
8    Mr. Jacobsen and the deposition transcripts and records
9    both from the case but, as you stated, you weren't
10   personally there and you didn't personally observe what
11   happened in this specific instance, so my question is:
12   Do you believe there are limits to -- for you to fully
13   grasp what had occurred on this specific day in this
14   specific incident involving Ms. Dziubla and Mr. Jacobsen
15   due to the fact that you weren't there?
16      MS. CRONIN:  Objection.  Foundation and
17      mischaracterizes prior testimony.
18      MR. SEDAEI:  Still go ahead and answer it.
19      MS. CRONIN:  You can answer the question.
20      THE WITNESS:  Oh.  Now I'm completely -- what
21      did you just ask me again?
22      MR. SEDAEI:  Angela, would you please read the
23      question back?
24      (Thereupon, the previous question was read
25      back.)

Page 26

1    if I touched them, you know, I never thought about that.
2    I was just trying to be helpful and help them enjoy the
3    game of golf and, you know, never ever thought about it
4    before.
5       So, I do that.  My teachers do that.  It's --
6    you know, I think the only time I wouldn't get really
7    close is when they've got a driver in their hand
8    because, as I made in my statement, you don't want to
9    get hit by somebody swinging the club back.  Chipping's
10   way different.  You're going to be very close to
11   somebody when they're chipping.  That's just the natural
12   way to teach them.
13      Q    Can you tell me a little more about what it
14   means to chip?
15      A    Chipping, you're close to the ball.  You know,
16   most people, unless they're just watching you -- and,
17   like I said, most people that don't play the game have
18   no clue how to hold a club, how to kind of take the club
19   back, not take a full swing like you would with a
20   driver.  They don't have any clue how to stand up close
21   to it, feet closed together, how your hips are going to
22   be either angled out or in or closed, which, unless you
23   know golf, you don't know what that means.
24      So I've always -- I've even put my hands on
25   hips of men and women to adjust them so that they can

Page 25

1    THE WITNESS:  Absolutely.  The limit is that I
2    wasn't right there to see it.
3    BY MR. SEDAEI:
4       Q    Can you elaborate on that just a little bit,
5    why you think that this is a limit, the fact that you
6    weren't there to observe the incident?
7       MS. CRONIN:  Objection.  Asked and answered.
8    BY MR. SEDAEI:
9       Q    Go ahead and answer.
10      A    Yeah.  I mean I wasn't there to see it, but I
11   would think that the people that wrote those depositions
12   saw it very clearly, and I'm visualizing what they saw
13   to be something that was not inappropriate.
14      MS. CRONIN:  Sam, can I just insert a question
15      for clarification?
16      MR. SEDAEI:  Can you wait until I'm done with
17      my questioning and then you can Redirect the
18      witness?
19      MS. CRONIN:  Sure.  That's fine.
20   BY MR. SEDAEI:
21      Q    Ms. Lopez, I want to ask you some more
22   specific questions about the report --
23      A    Okay.
24      Q    -- we were discussing that you drafted.  If
25   you look at the fourth line on the second half towards

Page 27

Case: 1:18-cv-04542 Document #: 53-9 Filed: 02/20/20 Page 10 of 28 PageID #:642
Nancy Lopez Russell — 10/9/2019
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

**Page 28**

1 the end, it reads: "You have to be hands-on to help
2 someone that has hardly played golf," and I'm stopping
3 the sentence. But in answering my question again, the
4 other parts of that, my question is: What do you mean
5 by hands-on? Can you elaborate on that?
6     A    You truly -- when you're teaching somebody
7 that's never played golf, you have to touch their hands
8 to put their hands on the golf club. You have to, like
9 I said, adjust their hips sometimes, make sure their
10 legs and their feet and everything is aimed in the same
11 direction. So for me to say that, I don't know how to
12 say that. I've got to show them. I've got to show them
13 how to take the club back, how far not to take it back
14 or how far to take it back, and the only way I can do
15 that is by making personal contact with them in that
16 way. I don't know any other way to teach chipping.
17         That's the way I've always taught, that's the
18 way that I've always been taught, and I don't see any
19 other way to do that. And to verbally tell somebody to
20 do it that's never played golf, they would be totally
21 lost.
22     Q    I understand that when you're trying to teach
23 someone that's never played golf you have to be
24 hands-on, you have to be -- depending on the shot, you
25 have to be behind them and wrap your arms around them

**Page 29**

1 and that could all be, as you say, an appropriate way of
2 touching somebody when you're trying to teach them.
3     A    Yes, sir.
4     Q    But is it also possible, in your opinion, for
5 a golf instructor to touch someone doing instructions in
6 a way that would be inappropriate?
7     A    I don't know how that can happen. I mean I
8 just -- I said to Mary the only way you could touch me
9 inappropriately is if you touch me between the legs and
10 my breasts, otherwise every other thing --
11         Knowing Peter Jacobsen, he's very tall and
12 very big, so for him to teach, he might put his arms
13 around you. Now I wasn't there, so I don't know what he
14 did. He would be the type of person that would have to
15 put his arms around you because he's just huge compared
16 to me. I've got to come in from the side, put my hands
17 pretty much on his hip and lean into them because my
18 arms aren't that long. So I can't --
19         I'm just trying to visually think how do I do
20 that when it's always been natural. I don't even have
21 to think about. I just go up, wrap my arms around them,
22 adjust their hips, hold their hand, and I'm touching
23 them, I'm sure, with the front side of my body. I have
24 to be. There's no way not to because my arms are just
25 not that long.

**Page 30**

1     So I think it's just whatever's comfortable
2 for anybody that's teaching because I've seen a lot of
3 teachers. Whatever's comfortable -- they never walk in
4 there going "Okay. I can't touch this person when I'm
5 giving them a lesson." It's all about just
6 professionalism, going in there, showing them how to
7 hold the club. If you have to touch them, you don't
8 think about those things. It's just the professional
9 way to go in there and help somebody learn golf. It's
10 not a "Oh, I can't wait to touch her." It's nothing
11 like that. It's always been professional that I've ever
12 seen anybody and myself -- because I'm very professional
13 when I teach, and I want somebody to enjoy the game of
14 golf. And if I have to touch their hand or shift them
15 in some way, I have to touch them.
16     Q    When giving instructions to students or to
17 individuals who have never played golf, do you ever stop
18 to think "The kind of contact I'm about to make with
19 this person, this person may not be expecting it"?
20     A    I've never thought about it ever. It's never
21 come into my mind. It is now. Now I'm going to have to
22 change because I sure don't want to offend anybody.
23         And I know Peter Jacobsen is not ever going to
24 do something to offend somebody. That's not his
25 character.

**Page 31**

1     Q    Some of these questions kind of overlap, but I
2 need to ask you these questions so --
3     A    Okay.
4     Q    -- you know, feel free to reiterate anything
5 you said before. But if you look at the last part of
6 the first paragraph in your report, read your last few
7 lines -- I'll read them and then you can tell me if I
8 read it correctly.
9         It reads: "When giving chipping instruction,
10 you might touch the shoulders, back, hands and even hips
11 to show someone how to line their body up to the target.
12 Sometimes you even have to wrap your arms around the
13 person, which will mean that you might be leaning into
14 their buttocks area." Did I read that correctly?
15     A    Yes. Yes, sir.
16     Q    Okay. I understand that you, as a
17 professional golfer, believe this kind of contact to be
18 appropriate, but is it possible that the type of
19 instruction that you're describing here and may
20 otherwise be perfectly appropriate to an expert's eyes,
21 may come across as offensive through the eyes of a
22 nonexpert, who's not a professional golfer, hasn't
23 received professional instruction?
24         MS. CRONIN: Objection. Foundation. Go
25     ahead.

Case: 1:18-cv-04542 Document #: 53-9 Filed: 02/20/20 Page 11 of 28 PageID #:643
Nancy Lopez Russell    10/9/2019
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

**Page 32**

1    BY MR. SEDAEI:
2        Q    Go ahead.
3        A    I think that anybody that is going to take
4    golf lessons when they're first learning, I think that
5    would be natural for them to know that that person's
6    going to have to make contact with them when they're
7    teaching them.
8            I can't imagine they're going to go to a golf
9    lesson when they've never played golf and that person is
10   just going to stand there and look at them and try to
11   instruct them.  I just don't believe that.
12       Q    Okay.  What if the person hasn't really signed
13   up for golf lessons but is kind of at events like the
14   one here where they just have a celebrity golfer who
15   shows up and impromptu gives instructions --
16           MS. CRONIN:  Objection.
17   BY MR. SEDAEI:
18       Q    -- and the person who's taking the
19   instructions hasn't really signed up for a class per se?
20           MS. CRONIN:  Objection.  Foundation as well as
21       mischaracterizes the evidence in the case.  Go
22       ahead.
23   BY MR. SEDAEI:
24       Q    Go ahead.  Answer, please.
25       A    I've had people like that be on the golf

**Page 33**

1    course that weren't really a part of the event.  They're
2    kind of watching and they're there to see you, the
3    person, you know, even just to talk to you.  And then if
4    you all of the sudden -- you know, Peter or me could
5    have said, "Would you like a tip?"  And if you say,
6    "Yes," I think you're opening yourself to letting them
7    kind of show you whatever they have to.  I don't see it
8    any other way because there are a lot of people like
9    that, Mr. Sedaei.
10       Q    Sedaei.
11       A    Sedaei.  Or Sam, can I call you Sam?
12       Q    Yes, you can call me Sam.
13       A    I mean, I've had a lot of people come and
14   watch me just hit shots with the groups that are there
15   and were having a good time.  They'll stay there for the
16   whole time I'm there just watching me.  And if I look
17   over and say, "Would you like a little tip?" and if they
18   say, "Yeah," I mean I think they're just opening
19   themselves up for that.  I don't think they would think
20   anything else.  That if I'm going to show them how to do
21   something to give them a tip, I can't imagine they're
22   walking up to it going "I hope she doesn't touch me."
23       Q    And something that came to mind as you were
24   speaking was the glaring difference here between you and
25   Mr. Jacobsen is that you're a female and he's a male.

**Page 34**

1    So do you believe, as a female golf instructor,
2    sometimes you may be getting some kind of leeway when
3    it comes to giving instructions that a male instructor
4    giving instructions to a female may not get or should
5    not get?
6        A    Well, I mean, I think it can go any way
7    because I'm a female and I've taught a lot of men and,
8    you know, as if men accept touching better than, you
9    know, me touching them -- it's confusing because I just
10   don't --
11           We, as professional athletes and professional
12   teachers and professional golfers, it's not about
13   touching people.  It's about helping them with their
14   golf swing.  And when you touch them, it is so normal
15   and natural.  It's not abnormal.
16           And I mean Peter, I'm sure he teaches a lot of
17   women to play golf.  I don't think he -- you know, I
18   don't think it's just men teaching men.  It's who is the
19   best teacher?  Who's going to teach me the best?  And he
20   was there doing his thing, and she just happened to join
21   them or pop up there and want to get a golf tip or
22   whatever, and I mean it's just -- it's just very natural
23   for someone to help somebody in that way.  Male, female
24   or whatever, you want to figure that out.
25           I mean, I have never thought about how I was

**Page 35**

1    touching someone when I'm teaching them because it's
2    not -- it's not a -- I don't even feel uncomfortable.
3    When I'm hugging somebody and teaching them, I don't
4    even realize I'm doing it because I'm just teaching
5    them.  There's nothing else involved in those
6    situations.
7            And just knowing Peter Jacobsen, he does not
8    have that character at all.  I respect him as a man, and
9    I've been around a lot of PGA players, and I have never
10   felt uncomfortable around him.  And I'm just making
11   those statements because all the times I've been with
12   him, he is very professional, funny, friendly, never
13   gotten in anybody's face.
14           And I watch people -- and especially PGA
15   players, I watch them a lot, and he has always been a
16   top quality person.  I would have never had him at my
17   event if I would have thought he was any different.  And
18   I'm just saying from the times I've been with him, I've
19   never seen him be any other -- inappropriate and has
20   always been appropriate with everybody.
21       Q    Okay.  And I understand that you've seen
22   Mr. Jacobsen at work and in other situations, so our
23   focus is mostly now over the events of this specific
24   incident.
25       A    Yes, sir.

Case: 1:18-cv-04542 Document #: 53-6 Filed: 02/20/20 Page 12 of 28 PageID #:644
Nancy Lopez Russell — 10/9/2019
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

Page 36

1    Q   Now if you look at the report, I want to keep
2  going and ask you a few more questions about it.
3    A   Okay.
4    Q   If you look at the second paragraph, the first
5  sentence reads:  "I am aware and familiar of the joke
6  that Peter Jacobsen told on the golf course."  Did I
7  read that correctly?
8    A   Yes.  Uh-huh.
9    Q   Okay.  And how are you aware of what joke he
10  told?
11    A   Because I've heard it before.  And to me, when
12  you're talking about clubs, if you don't know what golf
13  clubs are besides -- you know, a lot of people know what
14  a putter is because they go to Putt-Putt, but they don't
15  know woods, irons, anything about what's in the golf
16  bag.  So when a joke is made about golf, sometimes if
17  they don't know what -- what golf is all about, they're
18  going to maybe take it offensively when I don't think
19  that they should.
20    Q   Okay.  So let's break that down a little bit.
21  So my question is not whether, you know, what you read
22  from the transcripts to remind you of a joke you know,
23  but because you are saying matter-of-factly that you're
24  aware of what joke Mr. Jacobsen told, I'm trying to
25  understand, how do you know what joke he told?

Page 37

1    MS. CRONIN:  Sam, I'm going to object to that
2  question.  That is entirely misleading and you know
3  that based upon what's in the deposition testimony.
4  So don't say it's not in the deposition testimony;
5  It's clearly in the deposition testimony.  Do not
6  mislead this witness.
7    MR. SEDAEI:  Mary, please keep your objections
8  to nonspeaking objections and then let the witness
9  answer.
10    MS. CRONIN:  Sam, I'll keep my objections the
11  way I want to keep them, but I will instruct you,
12  as an attorney, not to provide misleading testimony
13  or statements to a witness.
14    MR. SEDAEI:  I'm not misleading the witness,
15  I'm asking her a question.
16    MS. CRONIN:  Rephrase your question, Sam.
17    MR. SEDAEI:  The question doesn't need to be
18  rephrased, Mary.  The question is phrased fine.
19  BY MR. SEDAEI:
20    Q   Did you understand the question --
21    A   Yes.
22    Q   -- Ms. Lopez?
23    A   Yes.  You know, that joke has been around for
24  a long, long time, and I don't even remember the last
25  time I heard it, but it's -- it's an old joke.  I know

Page 38

1  I've told jokes, and if you don't understand golf, you
2  probably wouldn't understand the joke.  And there's a
3  lot of golf jokes out there.
4    Q   So going back to the joke that you believe
5  Mr. Jacobsen told, can you explain what that joke is to
6  a nongolfer?
7    A   You know, I'd have to hear it again to really
8  tell you because it's been so long since I've heard the
9  joke, that I would have to hear it again to let you know
10  what I feel about it.
11    Q   Based on the statements that you read from the
12  deposition transcripts and maybe the statements of other
13  individuals who are on the record, is it your
14  understanding that the people who were at the event all
15  agreed on what Mr. Jacobsen actually said or were there
16  different accounts of what he may have said?
17    MS. CRONIN:  Objection.  Vague.  Misleading.
18  Rephrase the question.
19  BY MR. SEDAEI:
20    Q   Please answer if you understand.
21    A   Will you ask the question again?
22    MR. SEDAEI:  Angela, would you please read it
23  back.
24    (Thereupon, the previous question was read
25  back.)

Page 39

1    THE WITNESS:  You know, I can't remember what
2  they felt about that joke.  You would have to read
3  that to me so I can make my statement on that, but
4  I can't remember what I read about what they felt
5  about the joke and if they agreed about the joke
6  for whatever reason.  You know, what their feelings
7  were about it, I can't remember -- I can't remember
8  that.
9  BY MR. SEDAEI:
10    Q   My question isn't how they felt about the
11  joke, my question is were there different accounts of --
12  different accounts of what they believed Mr. Jacobsen
13  actually said?
14    A   I still can't remember what -- what they
15  actually said about that.
16    Q   Okay.  So if there were different accounts of
17  what Mr. Jacobsen said, if there's a disagreement on
18  that, who do you think would have been --
19    A   Confused?
20    Q   -- the best to have heard Mr. Jacobsen?
21    MS. CRONIN:  Objection.  Foundation.
22    THE WITNESS:  Well, I'm thinking that
23  everybody thought it was funny.  This is just my
24  opinion, they thought it was funny and she didn't
25  get the joke, so she probably wasn't laughing.



1    MR. SEDAEI:  Okay.  So Angela, please read the
2    question back and then I'm going to ask Ms. Lopez
3    to try to answer the question.
4        (Thereupon, the previous question was read
5    back.)
6    MS. CRONIN:  Again, that's an objection.
7    Foundation.
8    THE WITNESS:  I would think that the person
9    standing closest to him would know what that joke
10    was all about.  I'm not really sure how to answer
11    that.
12    BY MR. SEDAEI:
13    Q    What's your understanding of who the closest
14    person was to him?
15    A    Just reading it, I think it was a gentleman
16    that was standing closest to him.
17    Q    Was it not the plaintiff, Ms. Dziubla?
18    A    Well, yes, but I thought you said the
19    statement of the people that were there, not from her.
20    Q    Was she not the person who was there?
21    A    Yes, she was there.
22    Q    So is it your understanding that she was the
23    closest person to him?
24    A    Yes.  And she would be, yes.
25    Q    So regardless of what Mr. Jacobsen actually

Page 40

1    what the joke is.  Is this a famous joke?
2    MS. CRONIN:  Sam, again, there are thousands
3    of golf jokes.  Let me just educate you on that.
4    There are a lot of golf jokes out there.  There are
5    many, many jokes, and she read the materials a
6    while ago so if you want to just --
7    MR. SEDAEI:  Mary, what is your objection,
8    please?
9    MS. CRONIN:  Objection.  Refresh her
10    recollection.
11    MR. SEDAEI:  Make your objection and refrain
12    from speaking objections.
13    MS. CRONIN:  Okay.
14    MR. SEDAEI:  I would hate to take this
15    transcript to the judge and have you reproduce the
16    witness.  You don't want to go back to Florida, do
17    you?
18    MS. CRONIN:  Of course not.
19    MR. SEDAEI:  Okay.  So then please just let
20    her answer.  Again, I'm not trying to trip her up,
21    I'm just trying to have a conversation with her.
22    MS. CRONIN:  Okay.  I understand.
23    THE WITNESS:  Yeah.  I mean, it's not like a
24    famous joke.  I've heard it, but it was a long time
25    ago and probably then I probably didn't even get it

Page 42

1    said, can you not even explain to me what the joke is
2    that you think he said or that the joke -- what he said
3    reminded you of a joke -- let me rephrase that.  Just
4    strike that part.
5        I'm a nongolfer and I want to understand what
6    would have been the joke here.  Can you explain that to
7    me, a nongolfer?
8    A    I would have to hear the joke again.
9    Q    Okay.  So it's not a standard joke that you
10    can just say from memory like oh, that's the joke?
11    MS. CRONIN:  Sam, what you're trying to do --
12    if you'd like to refresh the witness's recollection
13    as to what the joke or the alleged joke was that
14    was told on the golf course, you could do that, but
15    you've been asking this question, trying to get a
16    response numerous different ways.  Just tell her
17    what the joke is and she can explain it.
18    BY MR. SEDAEI:
19    Q    Okay.  And the question that I'm asking is not
20    even related necessarily to what is said in this
21    instance, I'm asking you about the joke generally based
22    on your knowledge as a professional golfer, which is why
23    I don't have anything to put in front of you to refresh
24    your memory.  I'm just asking you to use your knowledge
25    as a professional golfer to explain to me what the --

Page 41

1    because I'm not really good at getting jokes.  But
2    if I could hear the joke again, I would be able to
3    explain it to you.
4        But, you know, woods, clubs in your bag,
5    woods, going into the woods, I mean there's a lot
6    of ways that this joke -- I mean if he told it,
7    she's not going to get it.  Some of the guys
8    probably laughed at it, and some of them probably
9    didn't get it.  I don't know.  I just --
10    It's been a long time since I've heard that
11    joke, but it's not a joke that you hear every day
12    on the golf course.  If somebody remembers a joke,
13    he told it.  I remember golf jokes once in a while
14    and I'll tell them, but, you know, just something
15    makes you remember a joke.  I don't just say "I'm
16    going to tell this joke all day long."  I just know
17    somebody might say something and it might spur me
18    on to tell a joke that I remember at that moment,
19    but it's not like a joke that everybody tells every
20    week or anything like that.
21    BY MR. SEDAEI:
22    Q    Okay.  Thanks.  That's fair enough.
23    Is that a joke that you believe a professional
24    golfer may not get or understand?
25    A    No, probably all of them do.  I'm just a

Page 43

1  little naive when jokes are being told so I don't always
2  get them, but I would imagine most of the guys get them.
3      Q    And do you think that's the kind of a joke
4  that a person who's not a professional golfer may not
5  get?
6      A    Maybe not.  I mean especially if you don't
7  know golf, you wouldn't know the reasoning for the joke
8  or why it was told or how it was told.
9      Q    Okay.  I'm going to ask you some questions
10  which, you know -- and this is probably going to be the
11  final few questions.  I don't have a lot of other
12  questions to go on, but I just want to ask you a few
13  questions about your general experience as a
14  professional golfer.
15      A    Okay.
16      Q    Do you recall an instance where you felt that
17  the person who was giving you instructions touched you
18  in a manner that you considered to be offensive or
19  inappropriate throughout your entire career?
20      A    Yeah, I've never felt that, ever.  I just
21  never have remembered anything like that.  I started
22  playing golf when I was eight years old and my dad was
23  my only teacher.  And as I got instruction along the
24  way, I never felt like anybody was doing something that
25  was inappropriate.

Page 44

1      MR. SEDAEI:  Five minutes?  Ten minutes?
2      MS. CRONIN:  Yes, please.
3      MR. SEDAEI:  All right.  Sounds good.
4      MS. CRONIN:  Thank you.
5      (Thereupon, a short break was taken.)
6      MS. CRONIN:  I just have a few follow-up
7  questions if you don't mind.
8      MR. SEDAEI:  Angela, are we back on the
9  record?
10      THE COURT REPORTER:  Yes, we're back on the
11  record.
12          CROSS-EXAMINATION
13  BY MS. CRONIN:
14      Q    Okay.  Ms. Lopez, I just have a few follow-up
15  questions real quick.  You know, you referred to
16  depositions with respect to the witnesses were there.
17  Is it your understanding that several people who were at
18  the golf outing didn't give depositions, they actually
19  gave witness statements, correct?
20      A    Okay.  Yes.
21      Q    Is that your understanding?
22      A    Yes.
23      Q    And your opinions are based upon the
24  deposition transcripts as well as the witness
25  statements, true?

Page 46

1      Q    So as a professional golfer, do you have
2  friends or have professional relationships with other
3  female professional golfers?
4      A    Oh, yes, very many.  I have a lot of
5  professional friends and teachers through all these
6  years of being involved in golf.
7      Q    And can you recall an instance when you
8  learned that a female professional golfer you knew had
9  alleged or stated that a golfer had made inappropriate
10  contact with them while giving them golf instructions?
11      A    I have never ever heard that.  Or at least it
12  hasn't been brought to my attention, but I have never
13  heard that ever.
14      Q    So you don't recall any of your friends coming
15  to you and telling you anything like that, about being
16  offended by another golfer who gave them instructions?
17      A    Not professionally in golf.  No, sir.
18      Q    Okay.  I think I'm done with my questions.
19  Mary may have some follow-ups.  After that, I may have
20  additional questions, but for now, I think I'm done with
21  the questioning.
22      MS. CRONIN:  Sam, if you don't mind, I'd like
23  to take a quick break.
24      MR. SEDAEI:  Okay.
25      MS. CRONIN:  Okay?

Page 45

1      A    Yes.
2      Q    Okay.  I just have a couple other follow-ups.
3      Is it your understanding that Mr. Jacobsen
4  tried to instruct Ms. Dziubla by showing her first and
5  then announcing that he was going to come behind her and
6  instruct her when that failed?  Is that your
7  understanding?
8      A    I'm not understanding.
9      Q    When you reviewed the deposition testimony --
10      A    Yes.
11      Q    -- in your case, is it your understanding that
12  he said, "Well, I have to come around and help her
13  because she wasn't understanding how to hit the chip
14  shot"?  Is that your understanding?
15      A    Yes.
16      Q    Okay.  And that was based upon her own
17  testimony, true?
18      A    Yes.
19      Q    Okay.  And this is what she also reported to
20  what we refer to as the EEOC, Equal Employment
21  Opportunity Commission?
22      A    Yes.
23      Q    Is that your understanding?
24      A    Yes.
25      Q    Okay.  So he announced, "I had to take a more

Page 47



Case: 1:18-cv-04542 Document #: 53-6 Filed: 02/20/20 Page 15 of 28 PageID #:647

Nancy Lopez Russell — 10/9/2019

**Rowena Dziubla vs. J.C. Anderson, Inc., et al.**

1  physical approach because she wasn't getting it,"

2  correct?

3     A    Yes.

4     Q    Okay.  And do you think that's good practice?

5     A    To say what you're going to do?

6     Q    Yes.

7     A    Yes.  I don't do that but, yes, I think it's a

8  great idea.

9     Q    Okay.  And can you explain why that is

10  appropriate and good practice?

11    A    Probably because of the way everybody's

12  responding to things nowadays.  You can't do anything

13  without offending somebody it seems like.

14    Q    Okay.  And is it your understanding that

15  Ms. Dziubla never objected to that announcement by Peter

16  Jacobsen?

17    A    That's what I understand.

18    Q    Okay.  And so I'm going to -- you reviewed the

19  deposition transcripts in this case, correct?

20    A    Yes.

21    Q    And I'm going to read to you a portion of the

22  deposition transcript from Peter Jacobsen's deposition,

23  and it's regarding the joke, okay?

24    A    Okay.

25    Q    Okay.  And the joke is:  "Beginner golfers

1  start with the irons and they end up in the woods; being

2  when you start as a beginner, you usually start with a

3  wedge, which is an iron, then as you progress up through

4  the bag to the driver, to the woods, you get to the

5  woods.  Because the woods require a longer, more fuller

6  swing, it's hard to control.  The ball can end up

7  adjacent to the fairway, off the fairway in the rough

8  where are trees or forests or woods."  Is that your

9  understanding as to the explanation of the joke?

10    A    Yes.

11    Q    Okay.  And would you agree that that joke is

12  appropriate?

13    A    Yes.

14    Q    And it's not offensive, correct?

15    A    No.

16    Q    And do you recall reading plaintiff's

17  deposition testimony where she was explained the full

18  context of the joke?

19    A    Well, I don't really remember that.

20    Q    Okay.  Is it your understanding that she

21  testified that she may not have heard the entire joke?

22    A    Yes, I remember that.

23    Q    And when she was explained the actual joke and

24  the context of the joke with the golf terminology, then

25  she understood that it may not have been offensive?

1     A    Correct.

2     Q    Okay.  And as a golfer, you would agree that

3  referring to "irons" and "woods" is appropriate because

4  those are terminology that's used in golf, correct?

5     A    Correct.

6     Q    Okay.  And so once Ms. Dziubla was explained

7  the context of the joke in her deposition, is it your

8  understanding that she agreed that there's an innocent

9  construction, correct?

10    A    Yes.

11       MS. CRONIN:  Okay.  That's all I have.

12       THE WITNESS:  Okay.

13       MR. SEDAEI:  I don't have anything else.  I

14  want to thank you for your time, Ms. Lopez.

15       THE WITNESS:  Thank you, Sam.

16       MR. SEDAEI:  Have a good day.

17       (Whereupon, the deposition was concluded at

18  3:25 p.m.)

19

20

21

22

23

24

25

Nancy Lopez Russell ~ 10/9/2019
Case: 1:18-cv-04542 Document #: 55-6 Filed: 02/20/20 Page 16 of 28 PageID #:648
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

```
 1                   CERTIFICATE OF OATH

 2

 3   STATE OF FLORIDA )

 4   COUNTY OF MARTIN )

 5

 6             I, ANGELA CONNOLLY, Registered Professional

 7   Reporter, Certified Realtime Reporter, Notary Public,

 8   State of Florida, certify that NANCY LOPEZ RUSSELL

 9   personally appeared before me and was duly sworn on the

10   9th day of October, 2019.

11             Signed this 23rd day of October, 2019.

12

13

14
/s/ Angela Connolly
15                   _____
                     Angela Connolly, RPR, CRR
16                   Notary Public, State of Florida

17

18

19                   Personally known        _____
                     Produced identification FL DL
20

21

22

23

24

25
```



Nancy Lopez Russell 10/9/2019
Case: 1:18-cv-04542 Document #: 53-6 Filed: 02/20/20 Page 17 of 28 PageID #:649
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

```
 1                    CERTIFICATE OF REPORTER

 2

 3    STATE OF FLORIDA )

 4    COUNTY OF MARTIN )

 5

 6             I, ANGELA CONNOLLY, Registered Professional

 7    Reporter, Certified Realtime Reporter, certify that I

 8    was authorized to and did stenographically report the

 9    deposition of NANCY LOPEZ RUSSELL; that a review of the

10    transcript was not requested; and that the foregoing

11    transcript, Pages 1 through 50, is a true record of my

12    stenographic notes.

13             I FURTHER CERTIFY that I am not a relative,

14    employee, or attorney, or counsel of any of the parties,

15    nor am I a relative or employee of any of the parties'

16    attorney or counsel connected with the action, nor am I

17    financially interested in the action.

18             The certification does not apply to any

19    reproduction of the same by any means unless under the

20    direct control and/or direction of the reporter.

21             DATED this 23rd day of October, 2019.

22
   /s/ Angela Connolly
23                   _____

                         Angela Connolly, RPR, CRR
24

25
```



**Nancy Lopez Russell** **10/9/2019**
Case: 1:18-cv-04542 Document #: 55-9 Filed: 02/20/20 Page 18 of 28 PageID #:650
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

## WORD INDEX

**< >**
  51:*1*

**< 1 >**
**1** 1:*1* 2:*1, 1* 3:*1, 1*
4:*1* 5:*1* 6:*1* 7:*1*
8:*1* 9:*1* 10:*1* 11:*1*
12:*1* 13:*1* 14:*1*
15:*1* 16:*1, 1, 1, 1*
17:*1* 18:*1* 19:*1*
20:*1* 21:*1* 22:*1*
23:*1* 24:*1* 25:*1*
26:*1* 27:*1* 28:*1*
29:*1* 30:*1* 31:*1*
32:*1* 33:*1* 34:*1*
35:*1* 36:*1* 37:*1*
38:*1* 39:*1* 40:*1*
41:*1* 42:*1* 43:*1*
44:*1* 45:*1* 46:*1*
47:*1* 48:*1* 49:*1*
50:*1* 51:*1* 52:*1, 1*
**1:18-cv-4542** 1:*1*
**10** 1:*1* 2:*1* 3:*1*
4:*1* 5:*1* 6:*1* 7:*1*
8:*1* 9:*1* 10:*1* 11:*1*
12:*1* 13:*1* 14:*1*
15:*1* 16:*1* 17:*1*
18:*1* 19:*1* 20:*1*
21:*1* 22:*1* 23:*1*
24:*1* 25:*1* 26:*1*
27:*1* 28:*1* 29:*1*
30:*1* 31:*1* 32:*1*
33:*1* 34:*1* 35:*1*
36:*1* 37:*1* 38:*1*
39:*1* 40:*1* 41:*1*
42:*1* 43:*1* 44:*1*
45:*1* 46:*1* 47:*1*
48:*1* 49:*1* 50:*1*
51:*1* 52:*1*
**11** 1:*1* 2:*1* 3:*1*
4:*1* 5:*1* 6:*1* 7:*1*
8:*1* 9:*1* 10:*1* 11:*1*
12:*1* 13:*1* 14:*1*
15:*1* 16:*1* 17:*1*
18:*1* 19:*1* 20:*1*
21:*1* 22:*1* 23:*1*
24:*1* 25:*1* 26:*1*
27:*1* 28:*1* 29:*1*
30:*1* 31:*1* 32:*1*

33:*1* 34:*1* 35:*1*
36:*1* 37:*1* 38:*1*
39:*1* 40:*1* 41:*1*
42:*1* 43:*1* 44:*1*
45:*1* 46:*1* 47:*1*
48:*1* 49:*1* 50:*1*
51:*1* 52:*1*
**12** 1:*1* 2:*1* 3:*1*
4:*1* 5:*1* 6:*1, 1* 7:*1*
8:*1* 9:*1* 10:*1* 11:*1*
12:*1* 13:*1* 14:*1*
15:*1* 16:*1* 17:*1*
18:*1* 19:*1* 20:*1*
21:*1* 22:*1* 23:*1*
24:*1* 25:*1* 26:*1*
27:*1* 28:*1* 29:*1*
30:*1* 31:*1* 32:*1*
33:*1* 34:*1* 35:*1*
36:*1* 37:*1* 38:*1*
39:*1* 40:*1* 41:*1*
42:*1* 43:*1* 44:*1*
45:*1* 46:*1* 47:*1*
48:*1* 49:*1* 50:*1*
51:*1* 52:*1*
**120** 3:*1*
**13** 1:*1* 2:*1* 3:*1*
4:*1* 5:*1* 6:*1* 7:*1*
8:*1* 9:*1* 10:*1* 11:*1*
12:*1* 13:*1* 14:*1*
15:*1* 16:*1* 17:*1*
18:*1* 19:*1* 20:*1*
21:*1* 22:*1* 23:*1*
24:*1* 25:*1* 26:*1*
27:*1* 28:*1* 29:*1*
30:*1* 31:*1* 32:*1*
33:*1* 34:*1* 35:*1*
36:*1* 37:*1* 38:*1*
39:*1* 40:*1* 41:*1*
42:*1* 43:*1* 44:*1*
45:*1* 46:*1* 47:*1*
48:*1* 49:*1* 50:*1*
51:*1* 52:*1*
**14** 1:*1* 2:*1* 3:*1*
4:*1* 5:*1* 6:*1* 7:*1*
8:*1* 9:*1* 10:*1* 11:*1*
12:*1* 13:*1* 14:*1*
15:*1* 16:*1* 17:*1*
18:*1* 19:*1* 20:*1*
21:*1* 22:*1* 23:*1*
24:*1* 25:*1* 26:*1*
27:*1* 28:*1* 29:*1*

30:*1* 31:*1* 32:*1*
33:*1* 34:*1* 35:*1*
36:*1* 37:*1* 38:*1*
39:*1* 40:*1* 41:*1*
42:*1* 43:*1* 44:*1*
45:*1* 46:*1* 47:*1*
48:*1* 49:*1* 50:*1*
51:*1* 52:*1*
**15** 1:*1* 2:*1* 3:*1*
4:*1* 5:*1* 6:*1* 7:*1*
8:*1* 9:*1* 10:*1* 11:*1*
12:*1* 13:*1* 14:*1*
15:*1* 16:*1* 17:*1*
18:*1* 19:*1* 20:*1*
21:*1* 22:*1* 23:*1*
24:*1* 25:*1* 26:*1*
27:*1* 28:*1* 29:*1*
30:*1* 31:*1* 32:*1*
33:*1* 34:*1* 35:*1*
36:*1* 37:*1* 38:*1*
39:*1* 40:*1* 41:*1*
42:*1* 43:*1* 44:*1*
45:*1* 46:*1* 47:*1*
48:*1* 49:*1* 50:*1*
51:*1* 52:*1*
**16** 1:*1* 2:*1, 1* 3:*1*
4:*1* 5:*1* 6:*1* 7:*1*
8:*1* 9:*1* 10:*1* 11:*1*
12:*1* 13:*1* 14:*1*
15:*1* 16:*1* 17:*1*
18:*1* 19:*1* 20:*1*
21:*1* 22:*1* 23:*1*
24:*1* 25:*1* 26:*1*
27:*1* 28:*1* 29:*1*
30:*1* 31:*1* 32:*1*
33:*1* 34:*1* 35:*1*
36:*1* 37:*1* 38:*1*
39:*1* 40:*1* 41:*1*
42:*1* 43:*1* 44:*1*
45:*1* 46:*1* 47:*1*
48:*1* 49:*1* 50:*1*
51:*1* 52:*1*
**17** 1:*1* 2:*1* 3:*1*
4:*1* 5:*1* 6:*1* 7:*1*
8:*1* 9:*1* 10:*1* 11:*1*
12:*1* 13:*1* 14:*1*
15:*1* 16:*1* 17:*1*
18:*1* 19:*1* 20:*1*
21:*1* 22:*1* 23:*1*
24:*1* 25:*1* 26:*1*
27:*1* 28:*1* 29:*1*

30:*1* 31:*1* 32:*1*
33:*1* 34:*1* 35:*1*
36:*1* 37:*1* 38:*1*
39:*1* 40:*1* 41:*1*
42:*1* 43:*1* 44:*1*
45:*1* 46:*1* 47:*1*
48:*1* 49:*1* 50:*1*
51:*1* 52:*1*
**18** 1:*1* 2:*1* 3:*1*
4:*1* 5:*1* 6:*1* 7:*1*
8:*1* 9:*1* 10:*1* 11:*1*
12:*1* 13:*1* 14:*1*
15:*1* 16:*1* 17:*1, 1,*
*1* 18:*1, 1* 19:*1*
20:*1* 21:*1, 1* 22:*1*
23:*1* 24:*1* 25:*1*
26:*1* 27:*1* 28:*1*
29:*1* 30:*1* 31:*1*
32:*1* 33:*1* 34:*1*
35:*1* 36:*1* 37:*1*
38:*1* 39:*1* 40:*1*
41:*1* 42:*1* 43:*1*
44:*1* 45:*1* 46:*1*
47:*1* 48:*1* 49:*1*
50:*1* 51:*1* 52:*1*
**19** 1:*1* 2:*1* 3:*1*
4:*1* 5:*1* 6:*1* 7:*1*
8:*1* 9:*1* 10:*1* 11:*1*
12:*1* 13:*1* 14:*1*
15:*1* 16:*1* 17:*1*
18:*1* 19:*1* 20:*1*
21:*1* 22:*1* 23:*1*
24:*1* 25:*1* 26:*1*
27:*1* 28:*1* 29:*1*
30:*1* 31:*1* 32:*1*
33:*1* 34:*1* 35:*1*
36:*1* 37:*1* 38:*1*
39:*1* 40:*1* 41:*1*
42:*1* 43:*1* 44:*1*
45:*1* 46:*1* 47:*1*
48:*1* 49:*1* 50:*1*
51:*1* 52:*1*
**1977** 13:*1* 15:*1*

**< 2 >**
**2** 1:*1* 2:*1* 3:*1* 4:*1*
5:*1* 6:*1* 7:*1* 8:*1*
9:*1* 10:*1* 11:*1*
12:*1* 13:*1* 14:*1*
15:*1* 16:*1* 17:*1*
18:*1* 19:*1* 20:*1*

Case: 1:18-cv-04542 Document #: 55-9 Filed: 02/20/20 Page 19 of 28 PageID #:651
Nancy Lopez Russell — 10/9/2019
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

21:*1* 22:*1* 23:*1*
24:*1* 25:*1* 26:*1*
27:*1* 28:*1* 29:*1*
30:*1* 31:*1* 32:*1*
33:*1* 34:*1* 35:*1*
36:*1* 37:*1* 38:*1*
39:*1* 40:*1* 41:*1*
42:*1* 43:*1* 44:*1*
45:*1* 46:*1* 47:*1*
48:*1* 49:*1* 50:*1*
51:*1* 52:*1*
**2:05** 1:*1*
**20** 1:*1* 2:*1* 3:*1*, *1*
4:*1* 5:*1* 6:*1* 7:*1*
8:*1* 9:*1* 10:*1* 11:*1*
12:*1* 13:*1* 14:*1*
15:*1* 16:*1* 17:*1*
18:*1* 19:*1* 20:*1*
21:*1* 22:*1* 23:*1*
24:*1* 25:*1* 26:*1*
27:*1* 28:*1* 29:*1*
30:*1* 31:*1* 32:*1*
33:*1* 34:*1* 35:*1*
36:*1* 37:*1* 38:*1*
39:*1* 40:*1* 41:*1*
42:*1* 43:*1* 44:*1*
45:*1* 46:*1* 47:*1*
48:*1* 49:*1* 50:*1*
51:*1* 52:*1*
**2017** 17:*1*, *1* 18:*1*
21:*1*
**2019** 1:*1* 3:*1* 51:*1*,
*1* 52:*1*
**21** 1:*1* 2:*1* 3:*1*
4:*1* 5:*1* 6:*1* 7:*1*
8:*1* 9:*1* 10:*1* 11:*1*
12:*1* 13:*1* 14:*1*
15:*1* 16:*1* 17:*1*
18:*1* 19:*1* 20:*1*
21:*1* 22:*1* 23:*1*
24:*1* 25:*1* 26:*1*
27:*1* 28:*1* 29:*1*
30:*1* 31:*1* 32:*1*
33:*1* 34:*1* 35:*1*
36:*1* 37:*1* 38:*1*
39:*1* 40:*1* 41:*1*
42:*1* 43:*1* 44:*1*
45:*1* 46:*1* 47:*1*
48:*1* 49:*1* 50:*1*
51:*1* 52:*1*
**2153** 3:*1*

**22** 1:*1* 2:*1* 3:*1*
4:*1* 5:*1* 6:*1* 7:*1*
8:*1* 9:*1* 10:*1* 11:*1*
12:*1* 13:*1* 14:*1*
15:*1* 16:*1* 17:*1*
18:*1* 19:*1* 20:*1*
21:*1* 22:*1* 23:*1*
24:*1* 25:*1* 26:*1*
27:*1* 28:*1* 29:*1*
30:*1* 31:*1* 32:*1*
33:*1* 34:*1* 35:*1*
36:*1* 37:*1* 38:*1*
39:*1* 40:*1* 41:*1*
42:*1* 43:*1* 44:*1*
45:*1* 46:*1* 47:*1*
48:*1* 49:*1* 50:*1*
51:*1* 52:*1*
**222** 3:*1*
**23** 1:*1* 2:*1* 3:*1*
4:*1* 5:*1* 6:*1* 7:*1*
8:*1* 9:*1* 10:*1* 11:*1*
12:*1* 13:*1* 14:*1*
15:*1* 16:*1* 17:*1*
18:*1* 19:*1* 20:*1*
21:*1* 22:*1* 23:*1*
24:*1* 25:*1* 26:*1*
27:*1* 28:*1* 29:*1*
30:*1* 31:*1* 32:*1*
33:*1* 34:*1* 35:*1*
36:*1* 37:*1* 38:*1*
39:*1* 40:*1* 41:*1*
42:*1* 43:*1* 44:*1*
45:*1* 46:*1* 47:*1*
48:*1* 49:*1* 50:*1*
51:*1* 52:*1*
**23rd** 51:*1* 52:*1*
**24** 1:*1* 2:*1* 3:*1*
4:*1* 5:*1* 6:*1* 7:*1*
8:*1* 9:*1* 10:*1* 11:*1*
12:*1* 13:*1* 14:*1*
15:*1* 16:*1* 17:*1*
18:*1* 19:*1* 20:*1*
21:*1* 22:*1* 23:*1*
24:*1* 25:*1* 26:*1*
27:*1* 28:*1* 29:*1*
30:*1* 31:*1* 32:*1*
33:*1* 34:*1* 35:*1*
36:*1* 37:*1* 38:*1*
39:*1* 40:*1* 41:*1*
42:*1* 43:*1* 44:*1*
45:*1* 46:*1* 47:*1*

48:*1* 49:*1* 50:*1*
51:*1* 52:*1*
**25** 1:*1* 2:*1* 3:*1*
4:*1* 5:*1* 6:*1* 7:*1*
8:*1* 9:*1* 10:*1* 11:*1*
12:*1* 13:*1* 14:*1*
15:*1* 16:*1* 17:*1*
18:*1* 19:*1* 20:*1*
21:*1* 22:*1* 23:*1*
24:*1* 25:*1* 26:*1*
27:*1* 28:*1* 29:*1*
30:*1* 31:*1* 32:*1*
33:*1* 34:*1* 35:*1*
36:*1* 37:*1* 38:*1*
39:*1* 40:*1* 41:*1*
42:*1* 43:*1* 44:*1*
45:*1* 46:*1* 47:*1*
48:*1* 49:*1* 50:*1*
51:*1* 52:*1*
**2500** 3:*1*
**27** 12:*1*

**< 3 >**
**3** 1:*1* 2:*1* 3:*1* 4:*1*
5:*1* 6:*1* 7:*1* 8:*1*
9:*1* 10:*1* 11:*1*
12:*1* 13:*1* 14:*1*
15:*1* 16:*1* 17:*1*
18:*1* 19:*1* 20:*1*
21:*1* 22:*1* 23:*1*
24:*1* 25:*1* 26:*1*
27:*1* 28:*1* 29:*1*
30:*1* 31:*1* 32:*1*
33:*1* 34:*1* 35:*1*
36:*1* 37:*1* 38:*1*
39:*1* 40:*1* 41:*1*
42:*1* 43:*1* 44:*1*
45:*1* 46:*1* 47:*1*
48:*1* 49:*1* 50:*1*
51:*1* 52:*1*
**3:25** 1:*1* 50:*1*
**30** 6:*1* 9:*1* 13:*1*
15:*1*
**312** 3:*1*, *1*, *1*, *1*
**31ST** 3:*1*
**32** 12:*1*
**33** 12:*1*
**332-6733** 3:*1*
**35** 12:*1*

**< 4 >**

48:*1* 49:*1* 50:*1*
51:*1* 52:*1*
**4** 1:*1* 2:*1*, *1* 3:*1*
4:*1* 5:*1* 6:*1* 7:*1*
8:*1* 9:*1* 10:*1* 11:*1*
12:*1* 13:*1* 14:*1*
15:*1* 16:*1* 17:*1*
18:*1* 19:*1* 20:*1*
21:*1* 22:*1* 23:*1*
24:*1* 25:*1* 26:*1*
27:*1* 28:*1* 29:*1*
30:*1* 31:*1* 32:*1*
33:*1* 34:*1* 35:*1*
36:*1* 37:*1* 38:*1*
39:*1* 40:*1* 41:*1*
42:*1* 43:*1* 44:*1*
45:*1* 46:*1* 47:*1*
48:*1* 49:*1* 50:*1*
51:*1* 52:*1*
**40** 15:*1*
**45** 6:*1*
**46** 2:*1*

**< 5 >**
**5** 1:*1* 2:*1* 3:*1* 4:*1*
5:*1* 6:*1* 7:*1* 8:*1*
9:*1* 10:*1* 11:*1*
12:*1* 13:*1* 14:*1*
15:*1* 16:*1* 17:*1*
18:*1* 19:*1* 20:*1*
21:*1* 22:*1* 23:*1*
24:*1* 25:*1* 26:*1*
27:*1* 28:*1* 29:*1*
30:*1* 31:*1* 32:*1*
33:*1* 34:*1* 35:*1*
36:*1* 37:*1* 38:*1*
39:*1* 40:*1* 41:*1*
42:*1* 43:*1* 44:*1*
45:*1* 46:*1* 47:*1*
48:*1* 49:*1* 50:*1*
51:*1* 52:*1*
**50** 8:*1* 52:*1*
**500** 3:*1*
**578-7458** 3:*1*

**< 6 >**
**6** 1:*1* 2:*1* 3:*1* 4:*1*
5:*1* 6:*1* 7:*1* 8:*1*
9:*1* 10:*1* 11:*1*
12:*1* 13:*1* 14:*1*
15:*1* 16:*1* 17:*1*
18:*1* 19:*1* 20:*1*
21:*1* 22:*1* 23:*1*

Nancy Lopez Russell · 10/9/2019
Case: 1:18-cv-04542 Document #: 55-9 Filed: 02/20/20 Page 20 of 28 PageID #:652
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

24:*1*  25:*1*  26:*1*
27:*1*  28:*1*  29:*1*
30:*1*  31:*1*  32:*1*
33:*1*  34:*1*  35:*1*
36:*1*  37:*1*  38:*1*
39:*1*  40:*1*  41:*1*
42:*1*  43:*1*  44:*1*
45:*1*  46:*1*  47:*1*
48:*1*  49:*1*  50:*1*
51:*1*  52:*1*
**60601**  3:*1*
**60602**  3:*1*
**60603**  3:*1*
**60606**  3:*1*
**609-7569**  3:*1*
**625-6192**  3:*1*

**< 7 >**
**7**  1:*1*  2:*1*  3:*1*  4:*1*
5:*1*  6:*1*  7:*1*  8:*1*
9:*1*  10:*1*  11:*1*
12:*1*  13:*1*  14:*1*
15:*1*  16:*1*  17:*1*
18:*1*  19:*1*  20:*1*
21:*1*  22:*1*  23:*1*
24:*1*  25:*1*  26:*1*
27:*1*  28:*1*  29:*1*
30:*1*  31:*1*  32:*1*
33:*1*  34:*1*  35:*1*
36:*1*  37:*1*  38:*1*
39:*1*  40:*1*  41:*1*
42:*1*  43:*1*  44:*1*
45:*1*  46:*1*  47:*1*
48:*1*  49:*1*  50:*1*
51:*1*  52:*1*
**70s**  14:*1, 1*  15:*1*
**78**  13:*1*

**< 8 >**
**8**  1:*1*  2:*1*  3:*1*  4:*1*
5:*1*  6:*1*  7:*1*  8:*1*
9:*1*  10:*1*  11:*1*
12:*1*  13:*1*  14:*1*
15:*1*  16:*1*  17:*1*
18:*1*  19:*1*  20:*1*
21:*1*  22:*1*  23:*1*
24:*1*  25:*1*  26:*1*
27:*1*  28:*1*  29:*1*
30:*1*  31:*1*  32:*1*
33:*1*  34:*1*  35:*1*
36:*1*  37:*1*  38:*1*

39:*1*  40:*1*  41:*1*
42:*1*  43:*1*  44:*1*
45:*1*  46:*1*  47:*1*
48:*1*  49:*1*  50:*1*
51:*1*  52:*1*

**< 9 >**
**9**  1:*1, 1*  2:*1*  3:*1*
4:*1*  5:*1*  6:*1*  7:*1*
8:*1*  9:*1*  10:*1*  11:*1*
12:*1*  13:*1*  14:*1*
15:*1*  16:*1*  17:*1*
18:*1*  19:*1*  20:*1*
21:*1*  22:*1*  23:*1*
24:*1*  25:*1*  26:*1*
27:*1*  28:*1*  29:*1*
30:*1*  31:*1*  32:*1*
33:*1*  34:*1*  35:*1*
36:*1*  37:*1*  38:*1*
39:*1*  40:*1*  41:*1*
42:*1*  43:*1*  44:*1*
45:*1*  46:*1*  47:*1*
48:*1*  49:*1*  50:*1*
51:*1*  52:*1*
**9th**  3:*1*  51:*1*

**< A >**
**ability**  6:*1*
**able**  22:*1*  43:*1*
**abnormal**  34:*1*
**above-entitled**  3:*1*
**Absolutely**  27:*1*
**accept**  34:*1*
**accounts**  38:*1*  39:*1,
1, 1*
**accused**  13:*1*
**action**  52:*1, 1*
**actual**  49:*1*
**additional**  45:*1*
**adjacent**  49:*1*
**adjust**  25:*1*  28:*1*
29:*1*
**advanced**  7:*1*
**Adventures**  8:*1, 1, 1*
10:*1*
**advice**  20:*1*
**ago**  7:*1*  9:*1*  15:*1*
16:*1, 1*  42:*1, 1*
**agree**  23:*1, 1*  49:*1*
50:*1*

**agreed**  38:*1*  39:*1*
50:*1*
**ahead**  8:*1*  26:*1*
27:*1*  31:*1*  32:*1, 1, 1*
**aimed**  28:*1*
**alcohol**  6:*1*
**alleged**  11:*1*  41:*1*
45:*1*
**ANDERSON**  1:*1*
3:*1*
**Angela**  3:*1*  5:*1*
16:*1*  20:*1*  26:*1*
38:*1*  40:*1*  46:*1*
51:*1, 1, 1*  52:*1, 1, 1*
**Angela's**  5:*1*
**angled**  25:*1*
**announced**  47:*1*
**announcement**  48:*1*
**announcing**  47:*1*
**answer**  6:*1*  21:*1*
22:*1, 1, 1*  24:*1*
26:*1, 1*  27:*1*  32:*1*
37:*1*  38:*1*  40:*1, 1*
42:*1*
**answered**  5:*1*  27:*1*
**answering**  5:*1, 1*
21:*1*  28:*1*
**answers**  5:*1, 1*  6:*1*
**anybody**  19:*1*  30:*1,
1, 1*  32:*1*  44:*1*
**anybody's**  35:*1*
**appeared**  51:*1*
**APPEARING**  3:*1, 1,
1*
**apply**  52:*1*
**approach**  48:*1*
**appropriate**  22:*1*
29:*1*  31:*1, 1*  35:*1*
48:*1*  49:*1*  50:*1*
**area**  31:*1*
**arms**  24:*1*  28:*1*
29:*1, 1, 1, 1, 1*  31:*1*
**Arnold**  13:*1*
**Ashley's**  12:*1*
**asked**  14:*1*  22:*1*
23:*1*  27:*1*
**asking**  5:*1*  17:*1*
19:*1*  37:*1*  41:*1, 1,
1, 1*
**assume**  6:*1*

**athletes**  34:*1*
**attempt**  22:*1*
**attempting**  5:*1*
**attendance**  18:*1*
19:*1*
**attended**  13:*1*
**attention**  45:*1*
**attorney**  4:*1*  37:*1*
52:*1, 1*
**authorized**  52:*1*
**aware**  36:*1, 1, 1*

**< B >**
**back**  14:*1, 1*  15:*1*
20:*1, 1, 1*  24:*1*
25:*1, 1*  26:*1, 1*
28:*1, 1, 1*  31:*1*
38:*1, 1, 1*  40:*1, 1*
42:*1*  46:*1, 1*
**bag**  36:*1*  43:*1*  49:*1*
**ball**  25:*1*  49:*1*
**based**  26:*1*  37:*1*
38:*1*  41:*1*  46:*1*
47:*1*
**basic**  4:*1*
**basis**  22:*1*
**Beginner**  48:*1*  49:*1*
**BEHALF**  3:*1, 1, 1, 1*
**believe**  13:*1, 1*  14:*1*
19:*1*  20:*1*  23:*1*
26:*1*  31:*1*  32:*1*
34:*1*  38:*1*  43:*1*
**believed**  39:*1*
**best**  34:*1, 1*  39:*1*
**better**  26:*1*  34:*1*
**big**  29:*1*
**bit**  20:*1*  27:*1*  36:*1*
**body**  29:*1*  31:*1*
**Boulevard**  3:*1*
**break**  5:*1, 1*  36:*1*
45:*1*  46:*1*
**breasts**  29:*1*
**bring**  20:*1*  24:*1*
**brings**  14:*1*
**brought**  45:*1*
**buttocks**  31:*1*

**< C >**
**California**  13:*1*
**call**  33:*1, 1*

Case: 1:18-cv-04542 Document #: 53-9 Filed: 02/20/20 Page 21 of 28 PageID #:653
Nancy Lopez Russell 10/9/2019
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

**called** 8:*1* 17:*1*
**capable** 22:*1*
**capacity** 10:*1*
**career** 13:*1* 44:*1*
**CASE** 1:*1* 4:*1*
10:*1* 11:*1* 15:*1*
23:*1* 24:*1* 26:*1*
32:*1* 47:*1* 48:*1*
**catch** 12:*1*
**cause** 3:*1, 1*
**celebrities** 13:*1*
**celebrity** 32:*1*
**certain** 13:*1* 20:*1*
**CERTIFICATE**
51:*1* 52:*1*
**certification** 52:*1*
**Certified** 3:*1* 51:*1*
52:*1*
**certify** 51:*1* 52:*1, 1*
**change** 30:*1*
**character** 30:*1* 35:*1*
**charge** 9:*1, 1*
**charities** 10:*1*
**charity** 10:*1* 11:*1*
13:*1, 1, 1, 1* 14:*1, 1,*
*1* 15:*1* 17:*1* 19:*1*
20:*1*
**CHICAGO** 3:*1, 1, 1,*
*1*
**children** 12:*1, 1, 1*
**chip** 18:*1* 20:*1*
25:*1* 47:*1*
**chipping** 24:*1, 1*
25:*1, 1* 28:*1* 31:*1*
**Chipping's** 25:*1*
**CHTD** 3:*1*
**circumstances** 17:*1,*
*1*
**cities** 10:*1*
**City** 7:*1*
**claiming** 17:*1*
**clarification** 27:*1*
**CLARK** 3:*1*
**class** 32:*1*
**clause** 22:*1*
**clear** 18:*1* 19:*1*
21:*1*
**clearly** 22:*1* 27:*1*
37:*1*
**CLIFFORD** 3:*1*

**clinic** 15:*1, 1*
**clinics** 13:*1* 20:*1*
**close** 25:*1, 1, 1, 1*
**closed** 25:*1, 1*
**closest** 40:*1, 1, 1, 1*
**Club** 9:*1* 24:*1, 1*
25:*1, 1, 1* 28:*1, 1*
30:*1*
**clubs** 36:*1, 1* 43:*1*
**clue** 25:*1, 1*
**coaching** 21:*1*
**come** 9:*1* 14:*1*
20:*1* 29:*1* 30:*1*
31:*1* 33:*1* 47:*1, 1*
**comes** 34:*1*
**comfortable** 24:*1, 1*
26:*1* 30:*1, 1*
**coming** 45:*1*
**comment** 22:*1*
**Commission** 47:*1*
**commissioner** 10:*1*
**company** 8:*1* 9:*1*
11:*1*
**company's** 9:*1*
**compared** 29:*1*
**completely** 26:*1*
**concluded** 50:*1*
**conclusion** 24:*1*
26:*1*
**condition** 6:*1*
**confirm** 21:*1*
**Confused** 39:*1*
**confusing** 9:*1* 34:*1*
**connected** 52:*1*
**Connolly** 3:*1* 51:*1,*
*1, 1* 52:*1, 1, 1*
**consider** 11:*1*
**considered** 44:*1*
**construction** 50:*1*
**consult** 6:*1*
**consumed** 6:*1*
**contact** 24:*1, 1*
28:*1* 30:*1* 31:*1*
32:*1* 45:*1*
**context** 49:*1, 1* 50:*1*
**contribute** 13:*1*
14:*1*
**control** 49:*1* 52:*1*
**conversation** 5:*1, 1*
22:*1* 42:*1*

**copies** 16:*1*
**copy** 16:*1, 1, 1*
**corporate** 10:*1, 1, 1,*
*1*
**correct** 8:*1, 1* 20:*1*
23:*1* 46:*1* 48:*1, 1*
49:*1* 50:*1, 1, 1, 1*
**correctly** 20:*1* 31:*1,*
*1* 36:*1*
**counsel** 52:*1, 1*
**country** 9:*1* 15:*1, 1*
**County** 3:*1* 51:*1*
52:*1*
**couple** 47:*1*
**course** 18:*1* 23:*1, 1*
33:*1* 36:*1* 41:*1*
42:*1* 43:*1*
**COURT** 1:*1* 5:*1*
12:*1* 16:*1, 1* 46:*1*
**cover** 5:*1*
**CP** 9:*1* 10:*1*
**Cronin** 2:*1* 3:*1*
16:*1* 18:*1* 19:*1*
26:*1, 1* 27:*1, 1, 1*
31:*1* 32:*1, 1* 37:*1,*
*1, 1* 38:*1* 39:*1*
40:*1* 41:*1* 42:*1, 1,*
*1, 1, 1* 45:*1, 1* 46:*1,*
*1, 1, 1* 50:*1*
**Cross-Examination**
2:*1* 46:*1*
**CRR** 51:*1* 52:*1*
**currently** 7:*1* 8:*1, 1*
10:*1*

**< D >**
**dad** 44:*1*
**DATE** 1:*1* 17:*1, 1*
**DATED** 52:*1*
**dating** 14:*1*
**daughter** 12:*1*
**daughters** 12:*1*
**day** 3:*1* 6:*1* 9:*1*
17:*1* 26:*1* 43:*1, 1*
50:*1* 51:*1, 1* 52:*1*
**days** 9:*1*
**Defendants** 1:*1*
**definitely** 15:*1* 20:*1*
**degree** 7:*1, 1, 1, 1*
**depending** 28:*1*
**deposed** 4:*1*

**DEPOSITION** 1:*1*
3:*1, 1* 4:*1* 6:*1, 1*
24:*1* 26:*1* 37:*1, 1,*
*1* 38:*1* 46:*1* 47:*1*
48:*1, 1, 1* 49:*1*
50:*1, 1* 52:*1*
**depositions** 23:*1, 1,*
*1* 27:*1* 46:*1, 1*
**describe** 8:*1*
**describing** 31:*1*
**DESCRIPTION** 2:*1*
**details** 17:*1* 18:*1*
**difference** 33:*1*
**differences** 5:*1*
**different** 22:*1* 25:*1*
35:*1* 38:*1* 39:*1, 1,*
*1* 41:*1*
**dinner** 9:*1* 15:*1*
**Direct** 2:*1* 4:*1* 52:*1*
**directed** 22:*1*
**direction** 28:*1* 52:*1*
**disagreement** 39:*1*
**discuss** 26:*1*
**discussing** 27:*1*
**DISTRICT** 1:*1, 1*
**DIVISION** 1:*1* 8:*1,*
*1*
**DL** 51:*1*
**document** 16:*1, 1*
19:*1* 21:*1, 1, 1* 22:*1*
**documents** 6:*1*
**doing** 7:*1* 14:*1*
20:*1, 1* 23:*1, 1*
29:*1* 34:*1* 35:*1*
44:*1*
**drafted** 16:*1, 1*
22:*1* 27:*1*
**drafting** 17:*1* 18:*1*
**DRIVE** 3:*1*
**driver** 25:*1, 1* 49:*1*
**due** 26:*1*
**duly** 4:*1* 51:*1*
**DZIUBLA** 1:*1* 4:*1*
15:*1* 20:*1* 26:*1*
40:*1* 47:*1* 48:*1*
50:*1*
**Dziubla's** 17:*1, 1*

**< E >**
**early** 13:*1*



Nancy Lopez Russell 10/9/2019
Case: 1:18-cv-04542 Document #: 55-6 Filed: 02/20/20 Page 22 of 28 PageID #:654
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

**EASTERN** 1:*1*
**Ed** 21:*1, 1*
**educate** 42:*1*
**education** 7:*1*
**educational** 7:*1*
**EDWARD** 3:*1* 12:*1*
**EEOC** 47:*1*
**EHRLICH** 3:*1*
**eight** 9:*1* 44:*1*
**either** 9:*1* 11:*1*
 25:*1*
**elaborate** 8:*1* 27:*1*
 28:*1*
**employed** 7:*1*
**employee** 52:*1, 1*
**Employment** 47:*1*
**ended** 7:*1*
**engineering** 7:*1*
**enjoy** 25:*1* 30:*1*
**entertain** 8:*1* 9:*1*
 20:*1, 1*
**entertainer** 23:*1*
**entertaining** 20:*1*
**entire** 44:*1* 49:*1*
**entirely** 37:*1*
**entities** 10:*1*
**Equal** 47:*1*
**Erinn's** 12:*1*
**ERLING** 1:*1* 3:*1*
**especially** 24:*1*
 35:*1* 44:*1*
**ESQUIRE** 3:*1, 1, 1,
 1, 1*
**established** 9:*1*
**event** 10:*1* 13:*1, 1*
 14:*1, 1, 1* 17:*1, 1*
 18:*1, 1* 19:*1, 1, 1, 1*
 20:*1* 33:*1* 35:*1*
 38:*1*
**events** 9:*1* 10:*1, 1,
 1, 1* 14:*1* 15:*1*
 17:*1, 1* 18:*1* 20:*1*
 23:*1, 1* 24:*1* 32:*1*
 35:*1*
**everybody** 35:*1*
 39:*1* 43:*1*
**everybody's** 48:*1*
**evidence** 32:*1*
**exactly** 8:*1*
**Examination** 2:*1*

 4:*1*
**examined** 4:*1*
**Excuse** 12:*1*
**EXHIBIT** 2:*1* 16:*1,
 1, 1* 20:*1*
**expecting** 30:*1*
**experience** 23:*1, 1*
 44:*1*
**Expert** 2:*1* 6:*1*
 11:*1* 16:*1, 1* 17:*1*
**expert's** 31:*1*
**explain** 38:*1* 41:*1,
 1, 1, 1* 43:*1* 48:*1*
**explained** 49:*1, 1*
 50:*1*
**explains** 21:*1, 1*
**explanation** 18:*1*
 49:*1*
**eyes** 31:*1, 1*


**< F >**
**face** 35:*1*
**fact** 26:*1* 27:*1*
**failed** 47:*1*
**fair** 43:*1*
**fairway** 49:*1, 1*
**familiar** 36:*1*
**famous** 42:*1, 1*
**far** 19:*1* 28:*1, 1*
**feel** 21:*1, 1* 23:*1*
 24:*1* 31:*1* 35:*1*
 38:*1*
**feelings** 39:*1*
**feet** 19:*1* 25:*1* 28:*1*
**felt** 35:*1* 39:*1, 1, 1*
 44:*1, 1, 1*
**female** 33:*1* 34:*1, 1,
 1, 1* 45:*1, 1*
**fifth** 9:*1*
**figure** 34:*1*
**final** 44:*1*
**financially** 13:*1*
 14:*1* 52:*1*
**fine** 11:*1* 12:*1*
 27:*1* 37:*1*
**finished** 5:*1* 7:*1*
**first** 4:*1, 1* 14:*1*
 15:*1* 20:*1* 21:*1, 1*
 22:*1* 31:*1* 32:*1*
 36:*1* 47:*1*

**five** 9:*1* 46:*1*
**FL** 51:*1*
**FLOOR** 3:*1*
**Florida** 3:*1, 1* 7:*1*
 42:*1* 51:*1, 1, 1* 52:*1*
**focus** 35:*1*
**follows** 4:*1*
**follow-up** 46:*1, 1*
**follow-ups** 45:*1*
 47:*1*
**foregoing** 52:*1*
**forests** 49:*1*
**formally** 11:*1*
**Foundation** 26:*1*
 31:*1* 32:*1* 39:*1*
 40:*1*
**fourth** 27:*1*
**free** 21:*1* 31:*1*
**friendly** 20:*1* 35:*1*
**friends** 15:*1, 1* 45:*1,
 1, 1*
**front** 16:*1* 29:*1*
 41:*1*
**full** 4:*1* 5:*1* 25:*1*
 49:*1*
**fuller** 49:*1*
**full-time** 9:*1*
**fully** 26:*1*
**fun** 20:*1* 26:*1*
**funny** 35:*1* 39:*1, 1*
**FURTHER** 52:*1*


**< G >**
**game** 8:*1* 9:*1, 1*
 25:*1, 1* 30:*1*
**gate** 14:*1*
**general** 15:*1* 18:*1*
 19:*1* 44:*1*
**generally** 8:*1* 15:*1*
 18:*1* 41:*1*
**gentleman** 40:*1*
**getting** 34:*1* 43:*1*
 48:*1*
**girl's** 7:*1*
**give** 6:*1* 16:*1* 17:*1*
 18:*1* 19:*1* 20:*1, 1,
 1* 33:*1* 46:*1*
**given** 18:*1*
**gives** 32:*1*

**giving** 10:*1* 18:*1*
 30:*1, 1* 31:*1* 34:*1,
 1* 44:*1* 45:*1*
**glaring** 33:*1*
**go** 4:*1* 7:*1* 8:*1*
 10:*1, 1* 14:*1* 15:*1*
 17:*1* 20:*1* 26:*1*
 27:*1* 29:*1* 30:*1*
 31:*1* 32:*1, 1, 1*
 34:*1* 36:*1* 42:*1*
 44:*1*
**Goddard** 7:*1*
**going** 4:*1* 7:*1* 14:*1*
 16:*1* 19:*1* 21:*1*
 22:*1, 1* 23:*1* 24:*1*
 25:*1, 1* 26:*1, 1*
 30:*1, 1, 1, 1* 32:*1, 1,
 1, 1* 33:*1, 1* 34:*1*
 36:*1, 1* 37:*1* 38:*1*
 40:*1* 43:*1, 1, 1*
 44:*1, 1* 47:*1* 48:*1,
 1, 1*
**GOLDMAN** 3:*1*
**golf** 7:*1* 8:*1, 1, 1, 1*
 9:*1, 1* 10:*1, 1* 13:*1*
 15:*1, 1, 1* 18:*1*
 20:*1, 1* 23:*1* 24:*1*
 25:*1, 1* 28:*1, 1, 1, 1*
 29:*1* 30:*1, 1, 1*
 32:*1, 1, 1, 1, 1* 34:*1,
 1, 1, 1* 36:*1, 1, 1, 1, 1*
 38:*1, 1* 41:*1* 42:*1,
 1* 43:*1, 1* 44:*1, 1*
 45:*1, 1* 46:*1*
 49:*1* 50:*1*
**golf,** 28:*1*
**golfer** 7:*1* 20:*1*
 31:*1, 1* 32:*1* 41:*1,
 1* 43:*1* 44:*1, 1*
 45:*1, 1, 1, 1* 50:*1*
**golfers** 13:*1* 14:*1*
 34:*1* 45:*1* 48:*1*
**Good** 4:*1* 18:*1*
 20:*1, 1, 1* 26:*1, 1*
 33:*1* 43:*1* 46:*1*
 48:*1, 1* 50:*1*
**Gosh** 15:*1*
**gotten** 35:*1*
**grasp** 26:*1*
**Great** 4:*1* 14:*1*

Nancy Lopez Russell    10/9/2019
Case: 1:18-cv-04542 Document #: 55-6 Filed: 02/20/20 Page 23 of 28 PageID #:655
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

23:*1*  48:*1*
**green**  20:*1*
**ground**  4:*1*
**group**  19:*1*
**groups**  33:*1*
**guess**  8:*1*  15:*1*
**guest**  20:*1*
**guys**  43:*1*  44:*1*

**< H >**
**half**  27:*1*
**hand**  24:*1, 1*  25:*1*
29:*1*  30:*1*
**handed**  20:*1*
**handle**  22:*1*
**hands**  14:*1*  25:*1*
28:*1, 1*  29:*1*  31:*1*
**hands-on**  28:*1, 1, 1*
**hang**  15:*1*
**happen**  29:*1*
**happened**  26:*1*  34:*1*
**harassed**  11:*1*
**harassing**  13:*1*
**hard**  49:*1*
**hate**  42:*1*
**head**  5:*1, 1*
**hear**  5:*1*  38:*1, 1*
41:*1*  43:*1, 1*
**heard**  36:*1*  37:*1*
38:*1*  39:*1*  42:*1*
43:*1*  45:*1, 1*  49:*1*
**help**  10:*1*  18:*1*
21:*1, 1*  24:*1, 1*
25:*1*  28:*1*  30:*1*
34:*1*  47:*1*
**helped**  17:*1, 1*
**helpful**  4:*1*  21:*1*
25:*1*
**helping**  34:*1*
**Hi**  4:*1, 1*  14:*1, 1*
**high**  7:*1, 1*
**hip**  24:*1*  29:*1*
**hips**  25:*1, 1*  28:*1*
29:*1*  31:*1*
**hit**  18:*1*  20:*1*  25:*1*
26:*1, 1*  33:*1*  47:*1*
**hitting**  20:*1*  26:*1*
**hold**  25:*1*  29:*1*
30:*1*
**holes**  14:*1*

**hope**  11:*1*  33:*1*
**hopefully**  10:*1*
**hoping**  7:*1*
**hosted**  11:*1*
**hourly**  9:*1*
**hours**  6:*1*
**house**  15:*1*
**huge**  29:*1*
**hugged**  14:*1*
**hugging**  35:*1*
**husband**  14:*1*
**husband's**  12:*1*

**< I >**
**idea**  48:*1*
**identification**  16:*1*
51:*1*
**III**  3:*1*
**IL**  3:*1, 1, 1, 1*
**ILLINOIS**  1:*1*
**imagine**  32:*1*  33:*1*
44:*1*
**impromptu**  32:*1*
**inappropriate**  18:*1*
27:*1*  29:*1*  35:*1*
44:*1, 1*  45:*1*
**inappropriately**
18:*1*  29:*1*
**incident**  23:*1*  26:*1*
27:*1*  35:*1*
**individuals**  24:*1*
30:*1*  38:*1*
**influence**  6:*1*
**informally**  11:*1*
**information**  22:*1*
**innocent**  50:*1*
**insert**  27:*1*
**instance**  26:*1*  41:*1*
44:*1*  45:*1*
**instruct**  32:*1*  37:*1*
47:*1, 1*
**instructing**  21:*1*
**instruction**  10:*1*
22:*1*  23:*1*  31:*1, 1,
1*  44:*1*
**instructions**  29:*1*
30:*1*  32:*1, 1*  34:*1,
1*  44:*1*  45:*1, 1*
**instructor**  29:*1*
34:*1, 1*

**interested**  52:*1*
**interrupt**  5:*1*
**intimidate**  22:*1*
**involved**  8:*1, 1, 1*
10:*1, 1*  11:*1, 1*
23:*1*  35:*1*  45:*1*
**involving**  10:*1*  17:*1*
26:*1*
**iron**  49:*1*
**irons**  36:*1*  49:*1*
50:*1*
**isolate**  22:*1*
**issue**  10:*1*
**it,**  48:*1*

**< J >**
**J.C**  1:*1*  3:*1*
**J.C.A**  11:*1, 1*  17:*1*
**J.C.A.**  11:*1*  17:*1, 1*
**Jack**  13:*1*
**JACOBSEN**  1:*1*
3:*1*  10:*1*  11:*1*
13:*1*  14:*1*  15:*1*
17:*1*  20:*1, 1*  23:*1,
1, 1, 1*  24:*1, 1, 1*
26:*1, 1*  29:*1*  30:*1*
33:*1*  35:*1, 1*  36:*1,
1*  38:*1, 1*  39:*1, 1, 1*
40:*1*  47:*1*  48:*1*
**Jacobsen's**  19:*1*
48:*1*
**JAMES**  3:*1*
**job**  20:*1, 1*  23:*1*
**jobs**  9:*1*
**join**  9:*1*  34:*1*
**joke**  36:*1, 1, 1, 1, 1,
1*  37:*1, 1*  38:*1, 1, 1,
1*  39:*1, 1, 1, 1, 1*
40:*1*  41:*1, 1, 1, 1, 1,
1, 1, 1, 1, 1, 1*  42:*1, 1,
1*  43:*1, 1, 1, 1, 1, 1, 1,
1, 1, 1*  44:*1, 1*  48:*1,
1*  49:*1, 1, 1, 1, 1, 1*
50:*1*
**jokes**  38:*1, 1*  42:*1,
1, 1*  43:*1, 1*  44:*1*
**Joseph**  12:*1*
**judge**  42:*1*

**< K >**

**keep**  4:*1*  36:*1*
37:*1, 1, 1*
**Kev**  17:*1*  21:*1*
**kind**  8:*1*  10:*1, 1*
25:*1*  30:*1*  31:*1, 1*
32:*1*  33:*1, 1*  34:*1*
44:*1*
**knew**  45:*1*
**know**  4:*1*  5:*1*  13:*1,
1, 1*  15:*1, 1*  16:*1*
17:*1, 1*  18:*1, 1, 1*
19:*1, 1, 1*  20:*1*
21:*1*  22:*1*  23:*1, 1*
24:*1, 1, 1*  25:*1, 1, 1,
1, 1, 1*  28:*1, 1*  29:*1,
1*  30:*1*  31:*1*  32:*1*
33:*1, 1*  34:*1, 1, 1*
36:*1, 1, 1, 1, 1, 1, 1, 1*
37:*1, 1, 1*  38:*1, 1*
39:*1, 1*  40:*1*  43:*1,
1, 1, 1*  44:*1, 1, 1*
46:*1*
**knowing**  20:*1*  29:*1*
35:*1*
**knowledge**  13:*1*
17:*1*  19:*1*  24:*1*
26:*1*  41:*1, 1*
**known**  13:*1*  15:*1*
51:*1*
**knows**  7:*1*

**< L >**
**ladies**  10:*1*
**lady**  18:*1, 1*
**large**  3:*1*
**LASALLE**  3:*1, 1*
**late**  14:*1, 1*  15:*1*
**laugh**  20:*1*  23:*1*
**laughed**  43:*1*
**laughing**  39:*1*
**LAW**  3:*1*
**lawsuit**  23:*1, 1*
**lean**  29:*1*
**leaning**  31:*1*
**learn**  8:*1*  20:*1*  30:*1*
**learned**  10:*1*  45:*1*
**learning**  32:*1*
**leeway**  34:*1*
**legs**  28:*1*  29:*1*
**lesson**  18:*1*  30:*1*

Case: 1:18-cv-04542 Document #: 55-8 Filed: 02/20/20 Page 24 of 28 PageID #:656
Nancy Lopez Russell 10/9/2019
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

**32**:*1*

**lessons** 32:*1, 1*
**letting** 33:*1*
**light** 21:*1*
**limit** 6:*1* 27:*1, 1*
**limits** 26:*1*
**line** 19:*1* 20:*1*
21:*1, 1, 1* 22:*1*
27:*1* 31:*1*
**lines** 31:*1*
**little** 13:*1* 20:*1*
25:*1* 27:*1* 33:*1*
36:*1* 44:*1*
**live** 7:*1*
**location** 5:*1*
**long** 7:*1* 29:*1, 1*
37:*1, 1* 38:*1* 42:*1*
43:*1, 1*
**longer** 49:*1*
**look** 6:*1* 20:*1, 1*
21:*1, 1* 22:*1* 27:*1*
31:*1* 32:*1* 33:*1*
36:*1, 1*
**looked** 24:*1*
**looking** 23:*1*
**LOPEZ** 1:*1* 2:*1, 1*
3:*1* 4:*1, 1, 1* 8:*1, 1,*
*1* 10:*1* 16:*1* 19:*1*
21:*1, 1* 22:*1, 1*
27:*1* 37:*1* 40:*1*
46:*1* 50:*1* 51:*1*
52:*1*
**lost** 28:*1*
**lot** 6:*1* 7:*1* 9:*1*
10:*1* 11:*1* 20:*1*
30:*1* 33:*1, 1* 34:*1,*
*1* 35:*1, 1* 36:*1*
38:*1* 42:*1* 43:*1*
44:*1* 45:*1*
**LPGA** 8:*1, 1, 1* 9:*1,*
*1* 10:*1, 1, 1* 15:*1*

**< M >**
**making** 18:*1* 23:*1*
24:*1, 1* 28:*1* 35:*1*
**male** 33:*1* 34:*1, 1*
**man** 35:*1*
**manner** 44:*1*
**mark** 16:*1*
**marked** 16:*1, 1*

**marriage** 12:*1*
**married** 12:*1, 1*
**Martin** 3:*1* 51:*1*
52:*1*
**MARY** 3:*1* 6:*1*
7:*1* 17:*1* 18:*1*
29:*1* 37:*1, 1* 42:*1*
45:*1*
**Masters** 14:*1*
**matches** 13:*1*
**materials** 42:*1*
**matter** 17:*1*
**matter-of-factly** 36:*1*
**mean** 26:*1* 27:*1*
28:*1* 29:*1* 31:*1*
33:*1, 1* 34:*1, 1, 1, 1*
42:*1* 43:*1, 1* 44:*1*
**means** 25:*1, 1* 52:*1*
**medicine** 6:*1*
**meet** 10:*1*
**member** 9:*1*
**memory** 19:*1* 21:*1*
41:*1, 1*
**men** 8:*1* 15:*1* 24:*1*
25:*1* 34:*1, 1, 1, 1*
**mental** 6:*1*
**mentioned** 10:*1*
**met** 6:*1* 14:*1* 15:*1*
**Mexico** 7:*1*
**MICHELLE** 3:*1*
**middle** 12:*1*
**mind** 4:*1* 30:*1*
33:*1* 45:*1* 46:*1*
**minutes** 6:*1, 1* 46:*1,*
*1*
**mischaracterizes**
26:*1* 32:*1*
**mislead** 37:*1*
**misleading** 37:*1, 1,*
*1* 38:*1*
**moment** 8:*1* 43:*1*
**money** 11:*1* 13:*1, 1*
14:*1*
**months** 7:*1* 16:*1, 1*
**morning** 6:*1*

**< N >**
**naive** 44:*1*
**name** 4:*1, 1, 1* 12:*1*
13:*1* 16:*1*
**names** 19:*1, 1*

**NANCY** 1:*1* 2:*1, 1*
3:*1* 4:*1, 1* 8:*1, 1, 1*
10:*1* 14:*1* 51:*1*
52:*1*
**natural** 24:*1* 25:*1*
29:*1* 32:*1* 34:*1, 1*
**necessarily** 41:*1*
**necessary** 19:*1*
**need** 5:*1* 10:*1, 1*
18:*1* 31:*1* 37:*1*
**needs** 10:*1* 20:*1*
**never** 24:*1, 1* 25:*1,*
*1* 28:*1, 1, 1* 30:*1, 1,*
*1, 1* 32:*1* 34:*1*
35:*1, 1, 1, 1* 44:*1, 1,*
*1* 45:*1, 1* 48:*1*
**new** 5:*1* 7:*1*
**Nicklaus** 13:*1*
**nods** 5:*1*
**nonexpert** 31:*1*
**nongolfer** 38:*1*
41:*1, 1*
**nonspeaking** 37:*1*
**normal** 34:*1*
**normally** 12:*1*
**NORTHERN** 1:*1*
**no's** 5:*1*
**Notary** 3:*1* 51:*1, 1*
**notes** 52:*1*
**Notice** 3:*1*
**nowadays** 48:*1*
**numbered** 3:*1*
**numerous** 41:*1*

**< O >**
**oath** 4:*1* 51:*1*
**object** 21:*1* 37:*1*
**objected** 48:*1*
**objection** 21:*1* 26:*1*
27:*1* 31:*1* 32:*1, 1*
38:*1* 39:*1* 40:*1*
42:*1, 1, 1*
**objections** 37:*1, 1, 1*
42:*1*
**observe** 26:*1* 27:*1*
**observed** 23:*1*
**occurred** 26:*1*
**Ocean** 3:*1*
**OCTOBER** 1:*1* 3:*1*
51:*1, 1* 52:*1*

**offend** 30:*1, 1*
**offended** 45:*1*
**offending** 48:*1*
**offensive** 31:*1* 44:*1*
49:*1, 1*
**offensively** 36:*1*
**OFFICES** 3:*1*
**Oh** 11:*1* 26:*1* 30:*1*
41:*1* 45:*1*
**Okay** 4:*1, 1* 5:*1, 1,*
*1, 1, 1, 1, 1* 6:*1, 1, 1*
7:*1, 1, 1, 1* 8:*1, 1, 1,*
*1* 9:*1, 1, 1* 11:*1*
13:*1* 15:*1* 16:*1, 1*
17:*1* 18:*1, 1, 1, 1*
19:*1* 20:*1* 21:*1, 1,*
*1* 22:*1* 23:*1, 1*
24:*1* 26:*1* 27:*1*
30:*1* 31:*1, 1* 32:*1*
35:*1* 36:*1, 1, 1*
39:*1* 40:*1* 41:*1, 1*
42:*1, 1, 1* 43:*1*
44:*1, 1* 45:*1, 1, 1*
46:*1, 1* 47:*1, 1, 1, 1*
48:*1, 1, 1, 1, 1, 1, 1*
49:*1, 1* 50:*1, 1, 1, 1*
**old** 12:*1* 37:*1* 44:*1*
**oldest** 12:*1*
**OLSON** 3:*1*
**once** 43:*1* 50:*1*
**ones** 11:*1*
**opening** 33:*1, 1*
**opinion** 29:*1* 39:*1*
**opinions** 17:*1* 46:*1*
**Opportunity** 47:*1*
**organization** 8:*1, 1*
9:*1, 1*
**organizations** 8:*1*
10:*1* 11:*1*
**outing** 46:*1*
**outings** 10:*1, 1, 1*
**overlap** 31:*1*
**overseas** 9:*1*

**< P >**
**P.M** 1:*1, 1* 50:*1*
**PAGE** 2:*1, 1*
**Pages** 52:*1*
**Palm** 7:*1*
**Palmer** 13:*1*



Case: 1:18-cv-04542 Document #: 55-9 Filed: 02/20/20 Page 25 of 28 PageID #:657
Nancy Lopez Russell 10/9/2019
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

papers 7:*1*
par-3 10:*1* 14:*1*
paragraph 31:*1*
36:*1*
part 12:*1* 15:*1, 1*
21:*1, 1, 1* 31:*1*
33:*1* 41:*1*
participants 19:*1, 1*
20:*1*
participate 10:*1, 1*
parties 52:*1, 1*
parts 21:*1, 1* 22:*1,
1, 1* 28:*1*
people 8:*1, 1, 1* 9:*1*
10:*1* 14:*1* 15:*1*
18:*1, 1* 20:*1, 1*
23:*1, 1, 1* 24:*1, 1, 1*
25:*1, 1* 27:*1* 32:*1*
33:*1, 1* 34:*1* 35:*1*
36:*1* 38:*1* 40:*1*
46:*1*
perfectly 31:*1*
person 29:*1* 30:*1, 1,
1* 31:*1* 32:*1, 1, 1*
33:*1* 35:*1* 40:*1, 1,
1, 1* 44:*1, 1*
personal 12:*1* 28:*1*
personally 13:*1*
15:*1* 26:*1, 1* 51:*1, 1*
person's 24:*1* 32:*1*
PETER 1:*1* 3:*1*
13:*1, 1* 14:*1* 20:*1,
1* 23:*1, 1* 29:*1*
30:*1* 33:*1* 34:*1*
35:*1* 36:*1* 48:*1, 1*
PGA 35:*1, 1*
phrased 37:*1*
physical 6:*1* 24:*1, 1*
48:*1*
place 17:*1* 18:*1*
PLAINTIFF 1:*1, 1*
3:*1, 1* 4:*1* 15:*1*
40:*1*
Plaintiff's 2:*1* 16:*1*
49:*1*
plan 8:*1*
play 9:*1, 1* 24:*1*
25:*1* 34:*1*
played 7:*1* 9:*1*
28:*1, 1, 1, 1* 30:*1*

32:*1*
players 35:*1, 1*
playing 10:*1* 13:*1*
15:*1* 20:*1* 44:*1*
please 4:*1* 5:*1, 1, 1,
1, 1* 7:*1* 12:*1* 16:*1*
19:*1, 1, 1* 21:*1*
26:*1* 32:*1* 37:*1*
38:*1, 1* 40:*1* 42:*1,
1* 46:*1*
point 15:*1* 22:*1*
pop 34:*1*
portion 48:*1*
pose 5:*1*
position 26:*1*
positions 19:*1*
possible 29:*1* 31:*1*
Powers 8:*1*
practice 48:*1, 1*
preparation 7:*1*
prepare 6:*1*
present 19:*1* 21:*1*
pretty 11:*1, 1* 18:*1*
29:*1*
PRETZEL 3:*1*
prevent 6:*1*
previous 26:*1* 38:*1*
40:*1*
PRICE 3:*1*
prior 6:*1* 7:*1* 26:*1*
Pro-Am 13:*1* 15:*1*
Pro-Ams 11:*1*
probably 9:*1* 14:*1*
38:*1* 39:*1* 42:*1, 1*
43:*1, 1, 1* 44:*1* 48:*1*
Produced 51:*1*
Professional 3:*1*
7:*1, 1* 9:*1* 10:*1*
20:*1, 1, 1* 23:*1, 1, 1*
30:*1, 1, 1* 31:*1, 1, 1*
34:*1, 1, 1* 35:*1*
41:*1, 1* 43:*1* 44:*1,
1* 45:*1, 1, 1, 1, 1*
51:*1* 52:*1*
professionalism 30:*1*
professionally 10:*1*
15:*1* 45:*1*
professionals 8:*1*
9:*1*
program 7:*1*

progress 49:*1*
provide 37:*1*
Public 3:*1* 51:*1, 1*
PULLOS 3:*1*
punctuation 18:*1*
pursuant 3:*1*
put 24:*1, 1* 25:*1*
28:*1* 29:*1, 1, 1* 41:*1*
putter 36:*1*
Putt-Putt 36:*1*

< Q >
quality 35:*1*
question 5:*1, 1, 1, 1,
1* 6:*1, 1* 11:*1* 15:*1*
18:*1* 19:*1* 21:*1, 1,
1* 22:*1, 1* 24:*1*
26:*1, 1, 1, 1* 27:*1*
28:*1, 1* 36:*1* 37:*1,
1, 1, 1, 1* 38:*1, 1, 1*
39:*1, 1* 40:*1, 1, 1*
41:*1, 1*
questioning 19:*1*
27:*1* 45:*1*
questions 5:*1* 6:*1*
7:*1* 8:*1* 11:*1* 12:*1*
16:*1* 19:*1, 1* 22:*1,
1* 27:*1* 31:*1, 1*
36:*1* 44:*1, 1, 1, 1*
45:*1, 1* 46:*1, 1*
quick 45:*1* 46:*1*

< R >
raise 11:*1* 13:*1*
14:*1*
raising 13:*1*
read 18:*1, 1, 1* 20:*1*
21:*1, 1, 1* 22:*1, 1*
23:*1* 26:*1, 1, 1*
31:*1, 1, 1, 1* 36:*1, 1*
38:*1, 1, 1* 39:*1, 1*
40:*1, 1* 42:*1* 48:*1*
reading 21:*1* 23:*1*
40:*1* 49:*1*
reads 20:*1* 28:*1*
31:*1* 36:*1*
ready 6:*1*
real 46:*1*
realize 35:*1*

really 13:*1* 25:*1*
32:*1, 1* 33:*1* 38:*1*
40:*1* 43:*1* 49:*1*
Realtime 3:*1* 51:*1*
52:*1*
reason 6:*1* 11:*1, 1*
24:*1* 39:*1*
reasoning 44:*1*
recall 44:*1* 45:*1, 1*
49:*1*
received 16:*1* 31:*1*
recollection 19:*1*
41:*1* 42:*1*
record 4:*1* 22:*1*
38:*1* 46:*1, 1* 52:*1*
records 26:*1*
Redirect 27:*1*
refer 19:*1, 1* 47:*1*
referenced 13:*1*
23:*1, 1*
referred 46:*1*
referring 50:*1*
refrain 21:*1* 42:*1*
refresh 19:*1* 21:*1*
41:*1, 1* 42:*1*
regarding 17:*1*
18:*1* 48:*1*
regardless 40:*1*
Registered 3:*1*
51:*1* 52:*1*
reiterate 31:*1*
related 41:*1*
relationship 9:*1*
relationships 45:*1*
relative 52:*1, 1*
remember 14:*1*
19:*1* 20:*1* 37:*1*
39:*1, 1, 1, 1, 1* 43:*1,
1, 1* 49:*1, 1*
remembered 44:*1*
remembers 43:*1*
remind 36:*1*
reminded 41:*1*
repeat 6:*1*
rephrase 6:*1* 37:*1*
38:*1* 41:*1*
rephrased 37:*1*
Report 2:*1* 16:*1, 1,
1* 17:*1, 1, 1, 1, 1*
18:*1* 22:*1, 1* 27:*1*



Case: 1:18-cv-04542 Document #: 55-6 Filed: 02/20/20 Page 26 of 28 PageID #:658
Nancy Lopez Russell    10/9/2019
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

31:*1*  36:*1*  52:*1*
**reported**  47:*1*
**Reporter**  3:*1, 1*  5:*1*
  12:*1*  16:*1, 1*  46:*1*
  51:*1, 1*  52:*1, 1, 1, 1*
**reports**  22:*1*
**representing**  18:*1*
**reproduce**  42:*1*
**reproduction**  52:*1*
**requested**  52:*1*
**require**  49:*1*
**reside**  7:*1*
**residence**  7:*1*
**respect**  35:*1*  46:*1*
**responded**  5:*1*
**responding**  48:*1*
**response**  41:*1*
**review**  21:*1*  52:*1*
**reviewed**  47:*1*  48:*1*
**Right**  12:*1*  24:*1, 1*
  27:*1*  46:*1*
**role**  14:*1*  19:*1*
**rookie**  13:*1*
**Roswell**  7:*1*
**rough**  49:*1*
**ROWENA**  1:*1*
**RPR**  51:*1*  52:*1*
**RUFF**  3:*1*  21:*1, 1, 1*
**rules**  4:*1*
**RUSSELL**  1:*1*  3:*1*
  4:*1, 1*  12:*1*  51:*1*
  52:*1*

**< S >**
**sake**  5:*1*
**SAM**  3:*1*  4:*1*  19:*1*
  27:*1*  33:*1, 1, 1*
  37:*1, 1, 1*  41:*1*
  42:*1*  45:*1*  50:*1*
**saw**  14:*1, 1*  27:*1, 1*
**saying**  12:*1*  18:*1*
  22:*1*  35:*1*  36:*1*
**School**  7:*1, 1*
**SE**  3:*1*  32:*1*
**second**  21:*1*  27:*1*
  36:*1*
**Sedaei**  2:*1*  3:*1*  4:*1,
  1*  12:*1*  16:*1, 1, 1*
  19:*1, 1*  21:*1*  22:*1,
  1, 1*  26:*1, 1*  27:*1, 1,
  1, 1*  32:*1, 1, 1*  33:*1,*

*1, 1*  37:*1, 1, 1, 1*
  38:*1, 1*  39:*1*  40:*1,
  1*  41:*1*  42:*1, 1, 1, 1*
  43:*1*  45:*1*  46:*1, 1,
  1*  50:*1, 1*
**see**  7:*1*  13:*1*  18:*1*
  19:*1, 1*  26:*1*  27:*1,
  1*  28:*1*  33:*1, 1*
**seen**  15:*1, 1*  16:*1*
  23:*1*  24:*1*  30:*1, 1*
  35:*1, 1*
**self-employed**  7:*1*
**sent**  7:*1*
**sentence**  28:*1*  36:*1*
**September**  17:*1, 1*
  18:*1*  21:*1*
**served**  11:*1*
**seven**  9:*1*
**shakes**  5:*1*
**shame**  24:*1*
**shift**  30:*1*
**shook**  14:*1*
**short**  46:*1*
**shot**  18:*1*  20:*1, 1, 1*
  26:*1, 1, 1*  28:*1*  47:*1*
**shots**  33:*1*
**shoulder**  14:*1*
**shoulders**  31:*1*
**show**  24:*1*  28:*1, 1*
  31:*1*  33:*1, 1*
**showing**  16:*1*  18:*1*
  20:*1*  30:*1*  47:*1*
**shows**  32:*1*
**side**  24:*1*  29:*1, 1*
**signed**  32:*1, 1*  51:*1*
**similar**  10:*1*  11:*1*
**simply**  22:*1*
**sir**  4:*1, 1*  6:*1, 1*
  7:*1, 1*  8:*1*  9:*1*
  10:*1*  11:*1, 1, 1, 1, 1*
  12:*1, 1*  13:*1, 1, 1*
  15:*1*  16:*1, 1*  17:*1,
  1, 1*  18:*1*  21:*1, 1*
  23:*1, 1*  29:*1*  31:*1*
  35:*1*  45:*1*
**situations**  35:*1, 1*
**six**  9:*1*
**somebody**  13:*1*
  24:*1*  25:*1, 1*  28:*1,
  1*  29:*1*  30:*1, 1, 1*

34:*1*  35:*1*  43:*1, 1*
  48:*1*
**somewhat**  10:*1*  19:*1*
**Sorry**  11:*1*  12:*1, 1,
  1*  14:*1*  18:*1*
**Sounds**  46:*1*
**SOUTH**  3:*1*
**spans**  15:*1*
**Speak**  18:*1*
**speaking**  5:*1*  33:*1*
  42:*1*
**specific**  8:*1*  19:*1*
  22:*1*  26:*1, 1, 1*
  27:*1*  35:*1*
**spoke**  17:*1*
**spoken**  23:*1*
**sponsors**  10:*1*
**sport**  15:*1*
**spur**  43:*1*
**stand**  25:*1*  32:*1*
**standard**  12:*1*  41:*1*
**standing**  14:*1*  40:*1,
  1*
**start**  8:*1*  49:*1, 1, 1*
**started**  10:*1*  44:*1*
**starting**  8:*1*
**State**  3:*1*  4:*1*  51:*1,
  1, 1*  52:*1*
**stated**  22:*1*  26:*1*
  45:*1*
**statement**  18:*1*
  19:*1*  21:*1, 1*  22:*1*
  23:*1, 1*  25:*1*  39:*1*
  40:*1*
**statements**  23:*1*
  24:*1*  35:*1*  37:*1*
  38:*1, 1*  46:*1, 1*
**STATES**  1:*1*  9:*1*
**stay**  11:*1*  33:*1*
**stenographic**  52:*1*
**stenographically**
  52:*1*
**stop**  30:*1*
**stopped**  14:*1*
**stopping**  28:*1*
**STOUFFER**  3:*1*
**STREET**  3:*1, 1, 1*
**stress**  6:*1*
**strike**  41:*1*
**Stuart**  3:*1*

**students**  30:*1*
**stuff**  10:*1*
**subject**  17:*1*
**substances**  6:*1*
**success**  26:*1*
**sudden**  33:*1*
**Sue**  8:*1*
**sued**  11:*1, 1*
**SUITE**  3:*1, 1*
**supposed**  23:*1*
**sure**  5:*1*  7:*1*  18:*1,
  1*  27:*1*  28:*1*  29:*1*
  30:*1*  34:*1*  40:*1*
**surrounding**  17:*1, 1,
  1*
**swing**  25:*1*  34:*1*
  49:*1*
**swinging**  25:*1*
**sworn**  4:*1*  51:*1*

**< T >**
**take**  5:*1*  9:*1, 1*
  12:*1*  14:*1*  24:*1*
  25:*1, 1*  28:*1, 1, 1*
  32:*1*  36:*1*  42:*1*
  45:*1*  47:*1*
**TAKEN**  1:*1*  3:*1, 1*
  46:*1*
**talk**  7:*1*  33:*1*
**talking**  12:*1*  36:*1*
**tall**  29:*1*
**tapped**  14:*1*
**target**  31:*1*
**taught**  20:*1*  28:*1, 1*
  34:*1*
**teach**  8:*1*  9:*1, 1*
  10:*1*  20:*1*  25:*1*
  26:*1*  28:*1, 1*  29:*1,
  1*  30:*1*  34:*1*
**teacher**  9:*1*  15:*1, 1*
  34:*1*  44:*1*
**teachers**  8:*1*  9:*1, 1*
  25:*1*  30:*1*  34:*1*
  45:*1*
**teaches**  34:*1*
**teaching**  8:*1, 1, 1*
  9:*1, 1, 1*  20:*1*  24:*1,
  1, 1*  28:*1*  30:*1*
  32:*1*  34:*1*  35:*1, 1, 1*
**team**  7:*1*  8:*1*
**television**  14:*1*

Nancy Lopez Russell 10/9/2019
Case: 1:18-cv-04542 Document #: 55-9 Filed: 02/20/20 Page 27 of 28 PageID #:659
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

tell 7:*1*, *1* 13:*1*, *1*
15:*1* 16:*1*, *1* 18:*1*
25:*1* 28:*1* 31:*1*
38:*1* 41:*1* 43:*1*, *1*, *1*
telling 45:*1*
tells 22:*1* 43:*1*
ten 15:*1* 19:*1* 46:*1*
Teresa 8:*1*
termination 17:*1*, *1*
terminology 49:*1*
50:*1*
terms 18:*1* 19:*1*, *1*
test 19:*1*
testified 4:*1* 49:*1*
testimony 4:*1* 26:*1*
37:*1*, *1*, *1*, *1* 47:*1*, *1*
49:*1*
Thank 4:*1*, *1*, *1*
46:*1* 50:*1*, *1*
Thanks 43:*1*
thing 11:*1* 17:*1*
19:*1* 20:*1* 24:*1*
29:*1* 34:*1*
things 7:*1* 10:*1*
17:*1* 20:*1* 30:*1*
48:*1*
think 10:*1* 11:*1*
13:*1* 19:*1* 21:*1*
22:*1* 24:*1*, *1* 25:*1*
27:*1*, *1* 29:*1*, *1*
30:*1*, *1*, *1* 32:*1*, *1*
33:*1*, *1*, *1* 34:*1*, *1*,
*1* 36:*1* 39:*1* 40:*1*,
*1* 41:*1* 44:*1* 45:*1*,
*1* 48:*1*, *1*
thinking 15:*1* 39:*1*
thought 24:*1* 25:*1*,
*1* 30:*1* 34:*1* 35:*1*
39:*1*, *1* 40:*1*
thousands 42:*1*
three 12:*1* 22:*1*
TIME 1:*1* 14:*1*, *1*,
*1* 15:*1*, *1* 20:*1*, *1*, *1*
25:*1* 26:*1* 33:*1*, *1*
37:*1*, *1* 42:*1* 43:*1*
50:*1*
times 12:*1* 15:*1*
22:*1* 35:*1*, *1*
tip 18:*1*, *1*, *1* 19:*1*
20:*1* 33:*1*, *1*, *1* 34:*1*
tips 15:*1* 20:*1*

today 4:*1* 5:*1* 6:*1*,
*1*, *1* 7:*1*, *1*, *1*
today's 6:*1*, *1*
told 36:*1*, *1*, *1*, *1*
38:*1*, *1* 41:*1* 43:*1*,
*1* 44:*1*, *1*, *1*
top 8:*1* 13:*1* 35:*1*
Torri 12:*1*, *1*
totally 28:*1*
touch 24:*1*, *1* 28:*1*
29:*1*, *1*, *1* 30:*1*, *1*, *1*,
*1*, *1* 31:*1* 33:*1* 34:*1*
touched 18:*1* 25:*1*
44:*1*
touching 24:*1* 29:*1*,
*1* 34:*1*, *1*, *1* 35:*1*
tour 9:*1*, *1* 13:*1*
15:*1*, *1*, *1*
tournaments 10:*1*, *1*,
*1*
transcribe 5:*1*
transcript 42:*1*
48:*1* 52:*1*, *1*
transcripts 24:*1*
26:*1* 36:*1* 38:*1*
46:*1* 48:*1*
travel 6:*1* 8:*1* 9:*1*
trees 49:*1*
tried 47:*1*
trip 9:*1* 42:*1*
trips 8:*1* 9:*1*
true 21:*1* 23:*1*
46:*1* 47:*1* 52:*1*
truly 28:*1*
truthful 6:*1*
try 5:*1*, *1* 10:*1*
32:*1* 40:*1*
trying 6:*1* 17:*1*
18:*1* 25:*1* 26:*1*
28:*1* 29:*1*, *1* 36:*1*
41:*1*, *1* 42:*1*, *1*
Tulsa 7:*1*
turned 7:*1*
two 7:*1*, *1* 8:*1* 12:*1*
type 11:*1* 29:*1*
31:*1*

**< U >**
Uh-huh 36:*1*
uh-huhs 5:*1*
uh-uhs 5:*1*

uncomfortable 24:*1*
35:*1*, *1*
undergraduate 7:*1*
understand 4:*1* 5:*1*
12:*1* 14:*1* 17:*1*, *1*
22:*1* 24:*1* 28:*1*
31:*1* 35:*1* 36:*1*
37:*1* 38:*1*, *1*, *1*
41:*1* 42:*1* 43:*1*
48:*1*
understanding 17:*1*
18:*1* 19:*1* 38:*1*
40:*1*, *1* 46:*1*, *1*
47:*1*, *1*, *1*, *1*, *1*, *1*, *1*
48:*1* 49:*1*, *1* 50:*1*
understood 6:*1*
49:*1*
UNITED 1:*1* 9:*1*
University 7:*1*
unusual 6:*1*
use 5:*1* 41:*1*
usually 9:*1* 24:*1*
49:*1*

**< V >**
Vague 38:*1*
VEDDER 3:*1*
verbal 5:*1*
verbally 28:*1*
versus 5:*1*
visualizing 27:*1*
visually 29:*1*
vs 1:*1*

**< W >**
WACKER 3:*1*
wait 5:*1*, *1* 12:*1*
27:*1* 30:*1*
walk 30:*1*
walking 14:*1* 33:*1*
want 5:*1* 17:*1*
19:*1*, *1* 20:*1*, *1*, *1*, *1*,
*1* 22:*1* 25:*1* 27:*1*
30:*1*, *1* 34:*1*, *1*
36:*1* 37:*1* 41:*1*
42:*1*, *1* 44:*1* 50:*1*
wanted 9:*1* 24:*1*, *1*
wasting 26:*1*
watch 14:*1* 33:*1*
35:*1*, *1*

watched 20:*1* 23:*1*,
*1*
watching 14:*1* 18:*1*,
*1* 19:*1* 25:*1* 33:*1*, *1*
way 10:*1* 11:*1*, *1*
14:*1* 17:*1* 18:*1*
20:*1* 22:*1* 23:*1*
25:*1*, *1* 28:*1*, *1*, *1*, *1*,
*1*, *1* 29:*1*, *1*, *1*
30:*1*, *1* 33:*1* 34:*1*,
*1* 37:*1* 44:*1* 48:*1*
ways 41:*1* 43:*1*
wedge 49:*1*
week 43:*1*
weird 11:*1*
well 14:*1* 16:*1*
23:*1* 32:*1* 34:*1*
39:*1* 40:*1* 46:*1*
47:*1* 49:*1*
went 6:*1* 7:*1*, *1*, *1*
24:*1*
we're 13:*1* 21:*1*
22:*1* 24:*1* 46:*1*
we've 9:*1*
whatever's 30:*1*, *1*
WITNESS 1:*1* 2:*1*
6:*1* 12:*1* 21:*1*, *1*
22:*1* 26:*1* 27:*1*, *1*
37:*1*, *1*, *1*, *1* 39:*1*, *1*
40:*1* 42:*1*, *1* 46:*1*,
*1* 50:*1*, *1*
witnesses 46:*1*
witness's 41:*1*
woke 6:*1*
women 8:*1* 24:*1*
25:*1* 34:*1*
woods 36:*1* 43:*1*, *1*,
*1* 49:*1*, *1*, *1*, *1*, *1*
50:*1*
work 8:*1*, *1* 11:*1*
23:*1* 35:*1*
wrap 28:*1* 29:*1*
31:*1*
wrong 23:*1*
wrote 27:*1*

**< Y >**
Yeah 13:*1* 27:*1*
42:*1* 44:*1*
Yeah, 33:*1*

Nancy Lopez Russell / 10/9/2019
Rowena Dziubla vs. J.C. Anderson, Inc., et al.

**year**  9:*1*  14:*1*  20:*1*,
*1*
**years**  7:*1*, *1*  9:*1*
 10:*1*  13:*1*, *1*  15:*1*,
*1*, *1*, *1*  44:*1*  45:*1*
**Yes,**  33:*1*
**yes's**  5:*1*
**youngest**  12:*1*

**< Z >**
**Zamboni**  8:*1*
**ZOOM**  3:*1*, *1*, *1*, *1*