**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROWEN DZIUBLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:18-cv-4542 |
| v. | ) | |
| | ) | Judge Rebecca R. Pallmeyer |
| J.C. ANDERSON, INC. and PETER | ) | |
| ERLING JACOBSEN, | ) | Magistrate Judge M. David Weisman |
| | ) | |
| Defendants. | ) | **JURY DEMANDED** |

**DEFENDANT PETER ERLING JACOBSEN'S L.R. 56.1(b)(3)(C) RESPONSE TO PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS**

NOW COMES the Defendant, PETER ERLING JACOBSEN, by and through his attorneys, PRETZEL & STOUFFER, Chartered, and as his L.R. 56.1(b)(3)(C) Response to Plaintiff Rowena Dziubla's L.R. 56.1(b)(3)(C) Statement of Additional Material Facts states as follows:

1. Plaintiff, Rowena Dziubla ("Dziubla") has testified that during the outing on September 18, 2017, Defendant JCA's co-owner, Jim Schumacher ("Schumacher") flagged her down from the group that included Defendant, Peter Jacobsen ("Jacobsen"), as she was going from hole to hole to take pictures. At first, she told the group that she did not want to join them, but they insisted. Jacobsen offered to show Plaintiff how to take a chip shot, and she felt obligated to allow him to do so because he was the guest of honor at the event. Ex. A, Excerpts from the Deposition of Rowena Dziubla ("Dziubla Dep.") 103:14-104:21; 105:14-23; 257:6-20; Ex. B, Excerpts from the Deposition of Michael Yazbec ("Yazbec Dep.") 11:23-12:1.

**RESPONSE: Defendant objects on the grounds that the referenced fact is not material and the cited evidence does not support the asserted fact. Defendant admits that Mr. Schumacher flagged plaintiff down as she was going from hole to hole. Defendant denies**

1

**that the group insisted that Ms. Dziubla join the group. Defendant further denies the characterization that Ms. Dziubla had an obligation to allow Mr. Jacobsen to show her how to hit a chip shot because he was the guest of honor at the event. In her deposition, Ms. Dziubla testified:**

> **So, okay, so I was going around taking pictures; and then I got pulled over by that group that was there. So, I think there was, like four or five of us. And trying to remember about - - it was just basically, like, hey, do you play golf, and I was like, no, I don't know how to play golf. And then he was, like, oh, come on, take a chip shot.**

**(SMUF, Ex. 4, Dziubla Dep.103:10-21).**

**When asked why Plaintiff felt obligated to go along with the demonstration, Plaintiff responded,**

> **Well, I mean, Jacobsen is the - - you know, he's the guest of honor there. You know, he's there. He's - - it's kind of - - you know, you don't want to - - if you're hosting a party and you have your head key person there, you want to be cordial with them; and he offered it. So I was, like, well, yeah, I guess I have to.**

**(SMUF, Ex. 4, Dziubla Dep. 104:10-21).**

**Plaintiff also testified:**

> **Q: Okay. And you drive up to a hole where Peter Jacobsen is providing golf instruction?**
>
> **A: No, I drove up to a hole and got flagged down, hey, Ro, we've got these autographed things. Do you want to stop by, and I'm like, oh, I don't think I want to. And they're, like, oh come on and what am I going to do, insist on it. So I'm like, okay, fine. So he had these autographed rags. I'm like - - or whatever they're called, like, ball cleaners or something. I'm like, fine, whatever, cool, I'll stop by. So I did. And I was just, like I'm, like, don't make it weird. You know, I'm just trying to go along with the flow of things. The instructions weren't going on when I pulled up. It was just, like, hey, come here, and you know, the guest of honor is here. Ooooh, come get a signed piece of paraphernalia that I didn't really care about.**

**(SMUF, Ex. 4, Dziubla Dep. 105:12-106:7).**

   2.   Dziubla explained that she had previously received instructions from another golfer,

Clint Hickman, on how to hit a shot, but Hickman did not make the kind of comment that Jacobsen made during the instructions. Furthermore, she explained that Hickman did not position himself as proximately to her as Jacobsen did. That is why she did not feel that the experience with Jacobsen would be any different before agreeing to receive the golf instruction from Jacobsen. Dziubla Dep. 109:3-15; 276:2-19.

**RESPONSE: Defendant objects on the grounds that the referenced fact is not material and lacks foundation. Defendant admits that plaintiff received golf instruction from Clint Hickman. Defendant denies the comparison that Clint Hickman's golf instruction would be the same as Jacobsen's golf instruction based upon the difference in the type of golf shots.**

  3. Plaintiff testified that as Jacobsen showed her how to hit the shot and pressed his body against her buttocks, he said something to the effect of "I'm going to show her where I take my wood." When she was asked how certain she was that she correctly remembered what she heard Jacobsen say, she responded "100 percent. 110 percent." Dziubla Dep. 279:1-2; 14-20; 280:1-4; 454:17-21.

**RESPONSE: Defendant objects on the ground that the evidence cited does not support the asserted fact and mischaracterizes plaintiff's deposition testimony. Denied. During her deposition, Ms. Dziubla testified that the comment was, "Something along the lines of I'm going to show her where I'm going to put my wood." (SMUF, Ex. 4, Dziubla Dep. 279:14-16). However, when asked whether she was certain whether this was the exact phraseology, Ms. Dziubla testified, she documented what she said in an email to Jim Schumacher the evening of the event. (SMUF, Ex. 4, Dziubla Dep. 279:17-280:4). In the email sent to Jim Schumacher, Ms. Dziubla stated that the joke referenced, "that when you take (his) wood out." (SMUF, Ex. 4, Dziubla Dep. 280:17-280:4). When asked whether this was the entirety of what Mr. Jacobsen said, Ms. Dziubla responded, "Yes, or what I heard." (SMUF, Ex. 4,**

3

Dziubla Dep. 281:2-4). Ms. Dziubla stated that if there was more context to it, then she did not hear it. (SMUF, Ex. 4, Dziubla Dep. 281:5-7). Ms. Dziubla testified that she did not know why she put the word "his" in parentheses. (SMUF, Ex. 4, Dziubla Dep. 281:11-14). Ms. Dziubla admitted that Mr. Jacobsen could have said that's when you take the wood out without the "his" in there. (SMUF, Ex. 4, Dziubla Dep. 281:15-18). Plaintiff's statement regarding her certainty that Mr. Jacobsen said something to the effect of "I'm going to show her where I take *my* wood" is inaccurate. (Emphasis Added). So is plaintiff's statement that, "When she was asked how certain she was that she correctly remembered what she heard Jacobsen say, she responded '100 percent. 110 percent.'" Plaintiff made these statements this during a leading direct examination by plaintiff's counsel. However, during cross-examination by defense counsel, Plaintiff's testimony was rehabilitated. Plaintiff admitted to the extent that there is any difference between what Plaintiff's counsel asked her with respect to the comment and the phraseology set forth in Exhibit 16, we should rely what is stated on Exhibit 16. (See July 10, 2019 Deposition of Rowena Dziubla attached hereto as Exhibit 1, 478:17-23).

    4. Following Plaintiff's interaction with Jacobsen, her coworker, Timothy Lee ("Le") asked Plaintiff if she was okay, and she told him that she was not, and she didn't know what to do. Plaintiff did not partake in dinner due to being upset. Her coworker, Sergio, gave her a ride back to the office, where they spoke for a few hours. She fought back tears during the ride, and later drove home that evening, crying the entire way. Upon seeing her husband at home, she continued to cry, and her husband told her that she needed to let JCA know about the incident. Dziubla Dep. 110:7-13; 116:6-19; 117:22-23; 119:19-120:13.

**RESPONSE: Defendant objects on the grounds that SMAF ¶ 4 is not material and is based upon hearsay testimony. Defendant admits that the citation speaks for itself.**

5. In an e-mail to Michael Power ("Power"), Defendant JCA's CFO, the day after the Kev, Plaintiff stated that she was emotionally, mentally, and physically upset, and that she was seeing a therapist. Dziubla Dep. 150:22-151:20; Ex. C, Excerpts from the Deposition of Michael Power (Power Dep.") 9:2-9.

**RESPONSE: Defendant objects on the ground that SMAF ¶ 5 is not material. Defendant admits that the citation speaks for itself.**

6. Jacobsen testified that he met Schumacher through his caddy in or around January 2016 or 2017, during a tournament in Hawaii. He testified that he did not know who Michael Yazbec (Yazbec") or Power were prior to learning about the instant lawsuit. Ex. D, Excerpts from the Deposition of Peter Jacobsen ("Jacobsen Dep.") 19:16-20:6; 21:3-8; 21:23-22:13.

**RESPONSE: Admitted.**

7. Jacobsen testified that he did not recall meeting Plaintiff. He also stated that he did not recall giving golf instructions to anyone at the Kev. Jacobsen Dep. 22:17-23; 30:21-31:12.

**RESPONSE: Admitted.**

8. During his deposition, Jacobsen was presented with the Complaint in this case, and was asked to point to any aspect of paragraph 9 therein that he believed to be inaccurate, which alleged that "[a]s Jacobsen took his position behind Plaintiff, he assertively pressed his hip against Plaintiff's buttocks." Jacobsen testified that he could not say that this portion of the Complaint was inaccurate. Jacobsen Dep. 37:6-39:12.

**RESPONSE: Defendant objects on the grounds that the asserted fact is stated as an issue or legal conclusion and the evidence cited does not support the asserted fact. Denied. Mr. Jacobsen explains the custom and practice of how to instruct a player regarding how to hit a chip shot. (Ex. 7 SMUF, Jacobsen Dep. 38:23-12). Furthermore, directly below this cited**

5

**testimony, Mr. Jacobsen testified that he did not remember giving golf instruction to plaintiff. (Ex. 7 SMUF, Jacobsen Dep. 39:13-19).**

9. Jacobsen did not recall at his deposition what he told Plaintiff during the golf instruction. He testified that it was Schumacher who told Jacobsen later that Jacobsen had "told that stupid Rodney Dangerfield joke about beginners start with the irons and they end up in the woods." Jacobsen Dep. 39:20-40:2.

**RESPONSE: Defendant objects on the ground that SMAF ¶ 9 is not material. Defendant admits that Jacobsen did not recall what joke he told. Defendant denies any characterization that Mr. Jacobsen does not know what the joke is as he testified that he has told the joke a thousand times. (Ex. 7, SMUF, Jacobsen Dep. 40:10-14).**

10. Jacobsen testified that Schumacher called him the day after the Kev to thank him for attending the event but did not mention anything about Plaintiff's complaint to JCA about Jacobsen's conduct at that time. He testified that the first time he heard about the complaint was in November 2017 (at least over 40 days after the incident). Jacobsen Dep. 41:16-23; 42:8-10, 21-43:1.

**RESPONSE: Defendant objects on the ground that SMAF ¶ 10 is not material. Defendant admits that Mr. Jacobsen testified based upon his recollection that he learned about the complaint in November 2017. (Ex. 7, SMUF, Jacobsen Dep. 42:3-7).**

11. Jacobsen testified that no one from JCA told him there was going to be an investigation into Plaintiff's allegations. He further testified that he was not told during either one of two phone calls with Schumacher following the incident that he was being interviewed as part of any investigation into his conduct. He claims that Schumacher did not ask Jacobsen to explain himself or his conduct during the Kev or confirm or deny any part of Plaintiff's allegations. Jacobsen Dep. 47:10-18-48:2.

6

**RESPONSE: Defendant objects on the ground that SMUF ¶ 11 is not material. Defendant admits that the cited evidence speaks for itself.**

      12. Michael Yazbec, Defendant JCA's President, testified that JCA interviewed Jacobs as part of the investigation into Plaintiff's allegations and obtained a statement from him relating to those events. Yazbec testified that the investigation had concluded by the week following the week of the incident. Yazbec Dep. 10:2-5, 17-20; 52:22-53:7; 54:10-20.

**RESPONSE: Defendant objects on the grounds that SMUF ¶ 12 is not material. Defendant also objects on the grounds of foundation and hearsay. Mr. Yazbec's testified as follows:**

> Q: And was Mr. Jacobsen interviewed as part of the investigation?
> A: I believe so.
> Q: By who?
> A: I don't know.
> Q: What makes you think that Mr. Jacobsen was interviewed as part of the investigation, if you don't know who actually did the investigation?
> A: I believe Mr. Power mentioned it to me, that he has a statement from him.

**(Ex. B, SMAF, Yazbec Dep. 52:22-53:7).**

**The next line of Mr. Yazbec's deposition testimony, which plaintiff did not cite states,**

> Q: Did he tell you if he personally had spoken with him?
>
> A: He did not.

**(Ex. 2, SMAF, Yazbec Dep. 52: 22 - 53:10).**

      13. Power corroborated Yazbec's account of JCA informing Jacobsen about the incident. Power testified that Schumacher called Jacobsen on September 19, 2019, the day after the incident. During the call, Schumacher informed Jacobsen about the details of Plaintiff's allegations. Power also confirmed that Schumacher took Jacobsen's statement in response to the incident. Power Dep. 74:20-75:3, 13-15; 101:21-102:1.

**RESPONSE: Defendant objects on the grounds that SMUF ¶ 13 is not material. Defendant also objects on the grounds that the cited testimony is hearsay and lacks foundation. Mr.**

**Power testified that Mr. Schumacher did not call Mr. Jacobsen while Mr. Schumacher and Yazbec were meeting. (Ex. C, SMAF, Power Dep. 75:6-8). Mr. Power also testified that he did not know if anybody was with Mr. Schumacher when Mr. Schumacher made the call to Mr. Jacobsen. (Ex. C, SMAF, Power Dep. 75:9-12).**

14. According to Power's notes taken during the investigation, Kacper Stojowski ("Stojowski") admitted that he was "drinking a little throughout the round and was 'buzzing' a little." Power Dep. 112:7-24; Ex. C-12, Investigation Notes.

**RESPONSE: Defendant objects on the ground that SMAF ¶ 14 is not material. Defendant also objects on the ground that the cited testimony is hearsay and lacks foundation. Defendant admits that the citation speaks for itself.**

15. Power interviewed Timothy Le ("Le") as part of the investigation. During the interview, Le admitted to Power that he "could see where [Dziubla] would be bothered by the locker room banter." Ex. C-12.

**RESPONSE: Defendant objects on the grounds that SMAF ¶ 15 is not material, lacks the proper foundation and is based upon hearsay testimony. Denied based upon Exhibit 5 to SMUF.**

16. Adam Scheitel ("Scheitel") was another witness who was interviewed during the investigation. During the interview, he admitted to Power that "he can see how she might have taken the 'wood' comment the wrong way." Ex. C-12.

**RESPONSE: Defendant objects on the grounds that the cited testimony is hearsay and lacks foundation. Defendant admits that the citation speaks for itself.**

17. Jacobsen has testified that he has given golf tips or instructions at Pro Am events thousands of times. He explained that he often pushes the player up to the ball and asks them to step into his feet. He sometimes "reach[es] down and grab[s] them by the shorts and or the

8

pants…and move[s] them a foot closer to the ball to be able to get them in the right proximity." He also testified that "on just about every occasion they say, wow, this feels awful." Jacobsen Dep. 64:21-24; 66:3-13; 73:2-10.

**RESPONSE: Defendant objects on the ground that SMAF ¶ 17 is not material. Defendant also objects on the grounds that the evidence cited does not support the asserted fact. Mr. Jacobsen testified:**

> Q: Happens I think you said thousands of times?
> A: It happens probably eight to ten times in a Pro Am round, 18 holes.

(SMUF, Ex. 7, Jacobsen Dep. 64:21-24).

> Q: Okay. And how would you approach it, a teaching moment like hitting a chip shot in a – something like The Kev?
> A: What I would do is if I were coming upon a group, I would ask them to demonstrate – to hit the shot. I would then demonstrate. I would offer to help. I would then demonstrate myself, and then ask them to mimic or replicate my action. And again, depending upon the level of the ability of the player, I would have to help them. And again so many beginners assume the stance of a driver or a position away from the ball which is not how you hit a chip shot. So you've got to move in and get the palyer, physically push them up to the ball because it's so foreign to beginning golfers to stand that close to the ball. So on so many times, I will have to move the player up, have to make contact, sometimes even have them take my stance. I'll take the stance in my demonstration and ask the to step into my feet. And on just about every occasion they say, wow, this feels awful. It's because they don't play golf or because it's new to them. So this is something that I do a lot.

(SMUF, Ex. 7, Jacobsen Dep. 65:12 – 66:16).

> Q: And it says assertively pressed hip against buttocks. Would you have been directly behind her or to a side?
> A: It could be – it could one of many things. It could be where you are trying to actually push somebody closer to the – I've actually done clinics where I've had junior players where I've had to reach down and grab them by the shorts or the pants and because they are little, they are six, seven, eight, nine, lift them up and move them a foot closer to the ball to be able to get them in the right proximity.

(SMUF, Ex. 7, Jacobsen Dep. 72:22-73:10).

9

18. Nancy Lopez ("Lopez") has known Defendant Peter Jacobsen ("Jacobsen") since the late 1970s. Throughout these years, she recalls seeing him at least 10 times. She has previously attended at least one of Jacobsen's charity events, and Jacobsen has come to one of her charity events and did a clinic for people who were playing in her She testified that she is friends with Jacobsen through golf. Ex. E, Excerpts from the Deposition of Nancy Lopez ("Lopez Dep.") 13:17-9; 14:10-15; 15:12-16, 19-22.

**RESPONSE: Defendant objects on the ground that SMAF ¶ 18 is not material. Admitted.**

19. Lopez was not present at "the Kev" on September 18, 2017. When asked if she believed there were limits to fully grasp what has occurred during the Kev due to her lack of presence, she responded, "absolutely. The limit is that I wasn't right there to see it." She later also stated, "I wasn't there, so I don't know what [Jacobsen] did." Lopez Dep. 21:2-4, 26:6-27; 29:13-14.

**RESPONSE: Defendant admits that Ms. Lopez was not present at "The Kev" on September 18, 2017. Defendant denies the remaining statements set forth in ¶ 19.**

20. Her opinion is based on deposition testimonies in the record, and her experience of having observed Jacobsen over the years. During her deposition, she stated:

> I know Peter Jacobsen in the professional way and have watched him and he is an entertainer. I've watched him. He makes people laugh. He's a great instruction professional. I've seen him at work on the golf course before, so from what the depositions of the people -- what they said, I feel like they would agree with me, and I would agree with them, that he was doing what he's supposed to do at these events.

Lopez further stated, "I know Peter Jacobsen is not ever going to do something to offend somebody. That's not his character." She also explained, "just knowing Peter, he does not have that character at all. I respect him as a man, and I've been around a lot of PGA players, and I have never felt uncomfortable around him." Lopez Dep. 23:4-15; 30:23-25; 35:7-10.

10

**RESPONSE: Defendant objects on the ground that plaintiff mischaracterizes the basis of Ms. Lopez's opinions. (SMUF, Ex. 8). Admitted.**

21. When asked if she knew what joke Jacobsen had told during the Kev, she could not answer. An excerpt from her deposition is as follows:

    Q: So my question is not whether, you know, what you read from the transcript to remind you of a joke you know, but because you are saying matter-of-factly that you're aware of what joke Mr. Jacobsen told, I'm trying to understand, how do you know what joke he told?
    …

    A: Yes. You know that joke has been around for a long, long time, and I don't even remember the last time I heard it, but it's -- it's an old joke. I know I've told jokes, and if you don't understand golf, you probably wouldn't understand the joke. And there's a lot of golf jokes out there.

    Q: So, going back to the joke that you believe Mr. Jacobson told, can you explain what that joke is to a nongolfer?

    A: You know, I'd have to hear it again to really tell you because it's been so long since I've heard the joke, that I would have to hear it again to let you know what I feel about it.

Lopez Dep. 36:20-38:10.

**RESPONSE: Defendant objects on the grounds that SMAF ¶ 21 is not material as Ms. Lopez was disclosed as an expert witness regarding golf instruction, not comedy. Defendant further objects on the ground that the evidence cited does not support the asserted fact and plaintiff mischaracterizes Ms. Lopez's deposition testimony. Ms. Lopez's recollection of the joke was refreshed during her deposition. Ms. Lopez testified:**

> Q: And I'm going to – you reviewed the deposition transcripts in this case, correct?
> A: Okay.
> Q: Okay. And the joke is: 'Beginner golfers start with the irons and they end up in the woods; being when you start as a beginner, you usually start with a wedge, which is an iron, then as you progress up through the bag to the driver, to the woods, you get to the woods. Because the woods require a longer, more fuller swing, it's hard to control. The ball can end up adjacent to the fairway, off the fairway in the rough where are trees or forests or woods.' Is that your understanding of the joke?

> A: Yes.
> Q: Okay. And would you agree that that joke is appropriate?
> A: Yes.
> Q: And it's not offensive, correct?
> A: No.

**(SMAF, EX. E, Lopez Dep. 48:18 - 49:13).**

22. When asked if she knew whether there were different accounts from witnesses as to what actually may have transpired at the Kev, Lopez appeared to not know the answer. An excerpt from her deposition is as follows:

> Q: Based on the statements that you read from the deposition transcripts and maybe the statements of other individuals who are on the record, is it your understanding that the people who were at the event all agreed on what Mr. Jacobsen actually said or were there different accounts of what he may have said?
> …
>
> A: You know, I can't remember what they felt about that joke. You would have to read that to me so I can make my statement on that, but I can't remember what I read about what they felt about the joke and if they agreed about the joke for whatever reason. You know, what their feelings were about it, I can't remember -- I can't remember that.
>
> Q: My question isn't how they felt about the joke, my question is were there different accounts of -- different accounts of what they believed Mr. Jacobsen actually said?
>
> A: I still can't remember what -- what they actually said about that.

Lopez Dep. 38:11-39:15.

**RESPONSE: Defendant objects on the grounds that SMAF ¶ 22 is not material as Ms. Lopez was disclosed as an expert witness regarding golf instruction, not comedy. Defendant further objects on the grounds that the question is vague, misleading and lacks the proper foundation. Lopez's recollection of the joke was refreshed during her deposition. (SMAF, EX. E, Lopez Dep. 48:18 - 49:13).**

23. Lopez testified that she did not believe whatever joke Jacobsen may have told was a

"famous" joke. She admitted that she had heard it a long time ago, and even then, she probably did not get it because she was "not good at getting jokes." She further stated that "it's not a joke that you hear every day on the golf course." Lopez further testified that it's a joke that an individual who is not a professional golfer may not get. Lopez Dep. 42:23-43:3, 11-12; 44:3-8.

**RESPONSE: Defendant objects on the grounds that SMAF ¶ 23 is not material as Ms. Lopez was disclosed as an expert witness regarding golf instruction, not comedy. (SMAF, EX. E, Lopez Dep. 48:18 - 49:13).**

24. Lopez testified that she believed the person who was closest to Jacobsen would have been in the best position to hear what Jacobsen said. She admitted that Plaintiff was the person who was the closest to Jacobsen. Lopez Dep. 39:16-40:24.

**RESPONSE: Defendant objects on the ground that SMAF ¶ 17 is not material as Ms. Lopez was disclosed as an expert witness regarding golf instruction, not comedy. Defendant further objects on the grounds of lack of foundation and the question is vague and misleading.**

Dated: March 5, 2020

                                         Respectfully Submitted,

                                         PRETZEL & STOUFFER, CHARTERED

                                         By: */s/ Mary H. Cronin*
                                         Mary H. Cronin /ARDC#6285991

Edward B. Ruff, III
Matthew J. Egan
Michael P. Turiello
Mary H. Cronin
PRETZEL & STOUFFER, CHARTERED
One South Wacker Drive, Suite 2500
Chicago, Illinois 60606
(312) 578-7450

(312) 578-7432
(312) 578-7507
(312) 578-7458
(312) 346-8242 Fax
eruff@pretzel-stouffer.com
megan@pretzel-stouffer.com
mturiello@pretzel-stouffer.com
mcronin@pretzel-stouffer.com

## CERTIFICATE OF SERVICE

The undersigned certifies that Defendant Peter Erling Jacobsen's **L.R. 56.1(b)(3)(C) RESPONSE TO PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS** was filed electronically this **5th** day of **March 2020.** Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties that have not filed their appearances will receive this notice via regular e-mail. Parties may access this filing through the Court's electronic system.

| *Counsel for Plaintiff* | *Counsel for J.C. Anderson, Inc.* |
|---|---|
| Arthur R. Ehrlich | Eugene A. Boyle |
| Samm Sedaei | Caralyn Olie |
| Law Offices of Goldman & Ehrlich, Chtd. | Vedder Price, P.C. |
| 20 S. Clark Street, Suite 500 | 222 N. LaSalle Street, Suite 2600 |
| Chicago, IL 60603 | Chicago IL 60601 |
| (312)332-6733 | (312)609-7500 |
| Arthur@GoldmanEhrlich.com | eboyle@vedderprice.com |
| Sam@GoldmanEhrlich.com | colie@vedderprice.com |

*Counsel for Peter Erling Jacobsen*
James C. Pullos
Shannon M. McNulty
Clifford Law Offices
120 N. LaSalle, 31st Floor
Chicago, IL 60602
(312)977-4511
jcp@cliffordlaw.com
smm@cliffordlaw.com

 s/ Edward B. Ruff
Edward B. Ruff (IL Bar No. 6181332)
Pretzel & Stouffer, Chartered
One South Wacker Drive - Suite 2500
Chicago, Illinois 60606
Telephone: (312) 578-7450
Fax: (312) 346-8242
E-Mail: eruff@pretzel-stouffer.com
***Attorney for Peter Erling Jacobsen***