UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROWENA DZIUBLA,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 18 C 4542 |
| | ) |
| J.C. ANDERSON, INC. and | ) Judge Rebecca R. Pallmeyer |
| PETER ERLING JACOBSEN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rowena Dziubla received golf instruction from Defendant Peter Erling Jacobsen at a 2017 fundraiser hosted by her former employer, Defendant J.C. Anderson, Inc. ("JCA"). Plaintiff alleges that Jacobsen committed a battery against her during the golf lesson and that JCA retaliated against her for filing a complaint about the incident with the Equal Employment Opportunity Commission. In this lawsuit, Plaintiff asserts a retaliation claim against JCA under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and a battery claim against Jacobsen under Illinois state law. (*See* Compl.) Before the court is Jacobsen's motion for summary judgment on the state-law battery claim. As explained here, the motion is denied.

## BACKGROUND

On September 18, 2017, JCA hosted a golf fundraiser at River Forest Country Club in Elmhurst, Illinois. (Pl. Resp. to Def. L.R. 56.1 Stat. of Material Facts ("Pl. L.R. 56.1 Resp.") [52] ¶ 5.) Defendant Jacobsen (hereinafter, "Defendant"), a professional golfer and television commentator, attended the event as a "celebrity guest" whose role was to "greet guests at the outing and drive from hole to hole to provide pointers on how to play golf." (*Id.* ¶ 6.) At the time,

---

[1] Plaintiff's last name was misspelled in the Complaint. (*See* Compl. [1].) The court has since been informed that the proper spelling is "Dziubla". (*See* Order Granting Mot. to Amend Case Caption [29].)

Plaintiff was an employee of JCA. (*Id.* ¶ 3). The event was company-sponsored, but attendance was voluntary for employees. (*Id.* ¶ 12.)

Plaintiff chose to attend and planned to drive around in a golf cart, socialize with guests, and take pictures. (*Id.*) She did not plan to play golf. (*Id.*) During the event, James Schumacher, Chairman and Co-Owner of JCA (*id.* ¶ 9), escorted Defendant around the course to "meet the guests and provide golf instruction." (*Id.* ¶ 14). At one point, Mr. Schumacher and Defendant joined a group of guests approaching the green on the second hole. (*Id.*) Defendant offered to show the guests how to hit a "chip shot." (*Id.*) Meanwhile, as Plaintiff approached the second hole in her golf cart, Mr. Schumacher flagged her down and invited her to meet Defendant and participate in the golf instruction. (*Id.* ¶ 15.) Plaintiff agreed to receive golf instruction from Defendant. (*Id.*) Before receiving instruction, she informed everyone that she is not skilled at golf. (*Id.*)

Defendant began his demonstration by offering verbal instructions to the group. (*Id.*) Next, he followed up with the golfers individually. (*Id.*) After receiving verbal instructions from Defendant, Plaintiff attempted to mimic the way he hit the ball but was unsuccessful. (*Id.* ¶ 16.) Defendant then told her, in front of everyone, that she was going to need some physical guidance. (*Id.*) During her deposition for this case, Plaintiff testified that she assumed the physical guidance would be similar to guidance she had previously received from a different golf instructor, Clint Hickman. (*See* Pl. Dep., Ex. 4 to Def. L.R. 56.1 Stat. of Material Facts ("Pl. Dep.") [50-4] at 293:21–294:6; Def. L.R. 56.1 Stat. of Material Facts ("Def. L.R. 56.1 Stat.") [50] ¶ 16 (citing same).)[2] Specifically, she agreed that Defendant announced that he was going to "com[e] around and grasp[ ] his arms around [her] to help [her] swing", which was "similar to what Mr. Hickman

---

[2] Defendant contends that the comparison to Hickman's instruction is inappropriate because Hickman was teaching Plaintiff a different kind of golf shot, but he does not provide a supporting citation. (*See* Def. Resp. to Pl. L.R. 56.1 Stat. of Add'l Material Facts ("Def. L.R. 56.1 Resp.") [57] ¶ 2.)

had done." (Pl. Dep. at 294:7–19; *see* Def. L.R. 56.1 Stat. ¶ 16 (citing same).) Plaintiff testified that she had no objection to such contact, and Defendant positioned himself behind her. (*See* Pl. Dep. at 274:20–22, 294:13–15; Def. L.R. 56.1 Stat. ¶ 16 (citing same).)

Plaintiff testified that she thought that Defendant was too close to her when he showed her how to swing the club. (Pl. L.R. 56.1 Resp. ¶ 17; *see also* Pl. Dep. at 276:9, 23–25 (testifying that Jacobsen "was right up against me" and "there was no space between us").) That made the contact offensive, Plaintiff testified. (*See* Pl. Dep. at 276:18–24; Def. L.R. 56.1 Stat. ¶ 17 (citing same).) Plaintiff agreed, however, that "other than being close", there was "nothing unusual in [Defendant's] movement." (Pl. Dep. at 278:14–17; *see* Pl. L.R. 56.1 Resp. ¶ 17.) And she testified that she did not know what part of Defendant's body was touching hers. (Pl. Dep. at 279:11–13; *see* Pl. L.R. 56.1 Resp. ¶ 17.)

As Defendant provided instruction, he told a joke that included the word "wood". (Pl. L.R. 56.1 Resp. ¶ 18.) The parties dispute the joke's content, and Plaintiff has provided slightly different accounts of what Defendant said. For example, Plaintiff testified that as Defendant showed her how to swing the club, he said, "I'm going to show her where I'm going to put my wood." (Pl. Dep. at 279:15–16.) She also testified that on the night of the incident, she sent an e-mail to a supervisor in which she wrote that Defendant's joke included the words "that's when you take his wood out" or "that's when you take my wood out". (*Id.* at 279:24–281:18.)[3] And she admitted that Defendant could have said "that's when you take *the* wood out." (*See* Pl. Dep. at 281:15–18.)

---

[3] As far as the court can tell, the parties have not provided this e-mail. Plaintiff provided an e-mail from Michael Power, the CFO of JCA, dated September 19, 2017, which recounted Plaintiff's e-mail. (*See* Power E-mail, Ex. 4 to Pl. L.R. 56.1 Stat. of Add'l Material Facts [53-4].) Power appears to have pasted Plaintiff's e-mail into his notes, but it is difficult to tell if it is a verbatim reproduction. (*See id.* at 2.) According to Power's notes, Plaintiff wrote that Defendant used the words, "when you take (his) wood out." (*Id.* (parenthesis in original).) Plaintiff testified during her deposition that she is "not sure what the parentheses mean." (Pl. Dep. at 281:14.)

3

Plaintiff testified that she interpreted the joke as "lewd" (*id.* at 275:12), and that the joke and Defendant's physical proximity to her made her "uncomfortable". (*Id.* at 275:4–21; *see also* Pl. L.R. 56.1 Resp. ¶ 18 (agreeing that she was offended by the physical contact and the joke).) In addition, she testified that she did not "partake in dinner"—presumably, a dinner related to the fundraiser—"because of how upset I was." (Pl. Dep. at 116:15–17; *see also id.* at 119:19–20 (Plaintiff's testimony that "I drove home that night and I cried the entire way home"); *id.* at 119:21–120:2 (Plaintiff's testimony that she cried while she told her husband what had happened); *see* Def. L.R. 56.1 Resp. ¶ 4 (objecting that Plaintiff's testimony is not material but admitting that the record citations speak for themselves).) Plaintiff testified that sometime after the incident, she sent an e-mail to Power in которой she stated that she was emotionally, mentally, and physically upset, and that she was seeing a therapist. (Pl. Dep. at 150:15–19.)[4]

Defendant offers affidavits from several people who saw him provide golf instruction to Plaintiff at the event. According to the witnesses, Defendant's conduct was appropriate and professional. For example, Chad Crane, a professional golfer, stated that based on his observations, Defendant "never touched any portion of Ms. Dziubla's waist or buttocks, and he acted appropriately throughout the time that he interacted with" her. (Crane Decl., Ex. 1 to Def. L.R. 56.1 Stat. [50-1] ¶¶ 8, 9.) He also stated that based on his professional experience, "the way [Defendant] instructed Ms. Dziubla on how to hit a chip shot is consistent with how a golf instructor should provide golf instruction to a student." (*Id.* ¶ 11; *see also id.* ("In my opinion, [Defendant's] instruction was professional, competent and consistent with industry standards.").) Abigail Radoha, a guest at the fundraiser, stated that based on her observations, Defendant did not "inappropriately or sexually touch Ms. Dziubla in any way." (Radoha Decl., Ex. 2 to Def. L.R. 56.1 Stat. [50-2] ¶ 6.) Similarly, Schumacher stated that he did not see Defendant "touch Ms. Dziubla's

---

[4] It is unclear whether this is the same e-mail in which Plaintiff allegedly described the "wood" joke. If it is a different e-mail, the parties appear not to have provided it.

buttocks, hips, or waist." (Shumacher Decl., Ex. 3 to Def. L.R. 56.1 Stat. [50-3] ¶ 5; *see also id.*, ("I did not observe [Defendant] touch Ms. Dziubla in a sexual manner, and I never saw [Defendant] act inappropriately in any way.").) Two other witnesses also stated, based on their observations, that they thought Defendant acted appropriately. (*See* Pl. L.R. 56.1 Resp. ¶¶ 27–27.) Plaintiff admits that the witnesses gave these statements but disputes their accuracy. (*See id.* ¶¶ 19–27.)

In addition, Defendant offers an expert opinion about golf instruction by Nancy Lopez, a professional golfer and acquaintance of Defendant who did not attend the fundraiser. (*See id.* ¶ 40; Def. L.R. 56.1 Resp. ¶¶ 18–19.) Lopez opined that to properly teach golf, an instructor may need to touch a student's shoulder, back, hand, and hips—or wrap his or her arms around the student—to demonstrate a correct stance or swing. (*See* Pl. L.R. 56.1 Resp. ¶ 41.) Based on her review of the evidence in this case, she opined that the way Defendant provided golf instruction to Plaintiff was consistent with that of a golf instructor. (*See id.* ¶ 42.) Plaintiff admits that Lopez offered these opinions but disputes their accuracy.

Regarding the "wood" joke, Defendant testified during his deposition that it is an old golf joke. (*See* Jacobsen Dep., Ex. 7 to Def. L.R. 56.1 Stat. [50-7] at 75:10–15.) He explained:

> The joke is beginners start with the irons and they end up in the woods, being when you start as a beginner, you usually start with a wedge which is an iron. Then as you progress up through the bag to the driver or three wood, you get to the woods. Because . . . woods require a longer, more of a fuller swing, it's harder to control. The ball can end up adjacent to the fairway, off the fairway in the rough where there are trees, a forest or woods. That's the joke.

(*Id.* at 74:23–75:9.) Plaintiff, for her part, admitted during her deposition that she did not know about the golf joke and that the joke, as told by Defendant during his deposition, could have a non-sexual meaning. (Pl. L.R. 56.1 Resp. ¶¶ 30–31.) Several witnesses stated in affidavits that they recalled hearing Defendant tell a joke to Plaintiff and, although they did not remember the joke fully, they did not remember thinking the joke was inappropriate. (*See, e.g.*, Pl. L.R. 56.1 Resp. ¶¶ 32, 35.) During Lopez's deposition, she was presented with the joke as Defendant described it in his own deposition. (*See* Lopez Dep., Ex. 6 to Pl. L.R. 56.1 Stat. of Add'l Material

5

Facts [53-6] at 48:25–49:9; Def. L.R. 56.1 Resp. ¶ 21 (citing same).) Lopez agreed that the joke in that form was appropriate. (*See* Lopez Dep. at 49:11–13; Def. L.R. 56.1 Resp. ¶ 21 (citing same).)

## **DISCUSSION**

Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine dispute exists, and summary judgment is precluded, if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party "bears the burden of demonstrating the absence of genuine issues of material fact." *LaRiviere v. Bd. of Trs. of S. Ill. Univ.*, 926 F.3d 356, 359 (7th Cir. 2019). "If that occurs, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted). When ruling on a motion for summary judgment, a court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 225; *see also, e.g.*, *Rowlands v. United Parcel Serv.-Fort Wayne*, 901 F.3d 792, 798 (7th Cir. 2018). "[A] court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts on summary judgment, and must avoid[ ] the temptation to decide which party's version of the facts is more likely true." *Rowlands*, 901 F.3d at 798 (internal quotation marks omitted).

In its simplest terms, the common law tort of battery in Illinois is "the unauthorized touching of the person of another." *Wilson v. City of Chicago*, 758 F.3d 875, 879 (7th Cir. 2014) (quoting *Curtis v. Jaskey*, 326 Ill. App. 3d 90, 93, 759 N.E.2d 962, 964, 259 Ill. Dec. 901, 903 (2d Dist. 2001)).[5] The elements to establish liability for a battery are "(1) an intentional act on the part of

---

[5] *See generally Bakes v. St. Alexius Med. Ctr.*, 2011 IL App (1st) 101646, ¶¶ 20–26, 955 N.E.2d 78, 85–87, 352 Ill. Dec. 902, 908–11 (1st Dist. 2011) (discussing variations to the definition of battery under Illinois case law).

the defendant, (2) resulting in offensive contact with the plaintiff's person, and (3) lack of consent to the defendant's conduct." *Obermeier v. Nw. Mem'l Hosp.*, 2019 IL App (1st) 170553, ¶ 62, 134 N.E.3d 316, 333–34, 434 Ill. Dec. 15, 32–33 (1st Dist. 2019). Further, "the threshold for what constitutes an 'offensive' touching is low, and . . . it occurs when the contact 'offends a reasonable sense of personal dignity.'" *Bakes*, 2011 IL App (1st) 101646 ¶ 26, 955 N.E.2d at 87, 352 Ill. Dec. at 911 (quoting Restatement (Second) of Torts § 19 (1965)); *see also, e.g.*, *Chelios v. Heavener*, 520 F.3d 678, 692 (7th Cir. 2008) ("Under Illinois law, battery is the 'unauthorized touching' of another that 'offends a reasonable sense of personal dignity.'" (quoting *Cohen v. Smith*, 269 Ill. App. 3d 1087, 1090, 648 N.E.2d 329, 332, 207 Ill. Dec. 873, 876 (5th Dist. 1995))).

Defendant contends that he is entitled to summary judgment because, by his account, the undisputed facts show that Plaintiff consented to the contact and that the contact was not harmful or offensive. (*See, e.g.*, Def. Mem. in Supp. of Mot. for Summ J. ("Def. Br.") [49] at 5.) Plaintiff argues that a reasonable jury could conclude otherwise. (*See, e.g.*, Pl. Resp. to Def. Mot. for Summ. J. ("Pl. Resp.") [54] at 1.) For the following reasons, the court concludes that there are disputed issues of material fact about consent and the harmful or offensive nature of the contact. Accordingly, the court cannot appropriately grant summary judgment in Defendant's favor.

**A.     Consent**

According to Defendant, there is no dispute that Plaintiff consented to the contact. For example, Plaintiff admits that Defendant told her he was going to provide physical instruction, and she admits that she let him do so. (*See* Def. Br. at 8.) Defendant also highlights Plaintiff's deposition testimony that there was nothing unusual about his physical contact besides that it was too close. (*See id.*) Plaintiff responds that although she consented to receiving golf instruction from Defendant, "she did not consent to the *manner* in which he provided his instruction." (Pl. Resp. at 3.)

The distinction Plaintiff draws finds support in the law. In medical battery cases, for instance, "an injured party can recover by establishing that . . . the treatment substantially varied

7

from the consent granted." *McDonald v. Lipov*, 2014 IL App (2d) 130401, ¶ 19, 13 N.E.3d 179, 187, 382 Ill. Dec. 766, 774 (2d Dist. 2014); *see also, e.g.*, *Cohen*, 269 Ill. App. 3d at 1092, 1095, 648 N.E.2d at 333, 335, 207 Ill. Dec. at 877, 879 (where the plaintiff consented to a medical procedure on the condition that no male would see or touch her body, her allegation that the defendant violated that condition stated a claim for battery); *Mink*, 460 F. Supp. at 718 ("If the defendants went beyond the consent given, to perform substantially different acts, they may be liable [for common-law battery]. The time, place and circumstances will affect the nature of the consent given."). More generally, the Restatement (Second) of Torts provides that "[i]f the consent given is restricted to acts within a particular time or a particular area or in other respects, it is effective only within the limits of the restriction. . . . Even when no restriction is specified the reasonable interpretation of the consent may limit it to acts at a reasonable time and place, or those reasonable in other respects." Restatement (Second) of Torts § 892A, cmt. g. (1979); *see also, e.g.*, *id.* § 892B, cmt. a (if a person "is induced by the fraud, mistake or duress to consent to a harmful or offensive contact with his person, he may maintain an action for battery").[6]

      Consistent with these principles, the relevant question here is whether Plaintiff consented to the way in which Defendant provided the golf instruction. Defendant argues that no reasonable jury could conclude that she did not. As noted, Defendant points to evidence that he told Plaintiff he was going to give her physical instruction and that Plaintiff permitted him to proceed. Defendant also emphasizes that several witnesses to the incident have sworn that they did not see him touch Plaintiff in a sexual manner, and that they did not see him touch her hips, waist, or buttocks. A jury may very well side with Defendant, crediting his account and that of the witnesses. Nevertheless, there is sufficient evidence from which a jury reasonably could find that Plaintiff did not consent to the contact she alleges Defendant made. Plaintiff, for instance, testified

---

[6] Excepting *Cohen* and *Mink*, neither side cites these authorities. The court supplies them because it finds the discussion of the relevant law lacking in both sides' briefing.

that when she agreed to receive instruction, she did so with the expectation that the lesson would be like the one she previously received from a different instructor. According to Plaintiff, the lesson she received from Defendant was different and unexpected; Defendant allegedly stood too close to her and told a lewd joke. Plaintiff further testified that Defendant's actions made her so uncomfortable that she skipped the fundraiser dinner and drove home in tears. Ultimately, the question whether Plaintiff consented to the contact depends on credibility determinations that must be left to a fact-finder, not to a court's review of transcript testimony.

Defendant's citations to *Sneed v. City of Harvey*, 6 F. Supp. 3d 817 (N.D. Ill. 2013) and *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613 (7th Cir. 1989) do not alter this conclusion. In *Sneed*, where the plaintiff alleged that the defendant slammed a door into his hand, the court determined that because the plaintiff had deliberately reached his hand toward the moving door, he could not establish a lack of consent to the resulting contact. 6 F. Supp. 3d at 843. *Sneed* is unlike the instant case, where Plaintiff contends that she consented to one kind of contact and received another.

*Schroeder* is slightly better authority but still misses the mark. The plaintiff in that case was an airplane passenger on a flight to Germany with a school group. After the plane was in the air, a classmate of plaintiff's reported to air traffic controllers that someone had, without plaintiff's knowledge, placed a bomb in plaintiff's luggage. A flight attendant paged plaintiff and, when she approached the front of the plane, the flight attendant took her arm and led her into the cockpit, where she was questioned by the pilot and then remained seated while the pilot made an emergency landing. Plaintiff was questioned for hours, was physically searched, and sued the airline, for torts, including battery. Affirming summary judgment for the airline on that claim, the Seventh Circuit found no evidence to support plaintiff's claim that she was forcibly removed from her seat. *See* 875 F.2d at 622. The court added that even if the flight attendant "took [the plaintiff] by the arm and led her to the cockpit", she agreed to go with the flight attendant, "which suggests consent". *Id.* It is unclear whether the court concluded as a matter of law that the plaintiff

9

consented; rather, the decision focused more on the finding that the contact was not harmful or offensive. *See id.* Even if the court determined there was consent, the agreed action (walking with the flight attendant) was very similar to the disputed action (being led by the arm).[7] Here, by contrast, Plaintiff alleges that she agreed to professional golf instruction and instead was subjected to inappropriate sexual touching.

The court recognizes that Plaintiff did not address *Sneed* or *Schroeder*. (*See* Def. Reply in Supp. of Mot. for Summ. J. ("Def. Reply") [56] at 1.) That is disappointing, but it does not warrant summary judgment in Defendant's favor—particularly where neither side makes a strong presentation of the law or identifies a case with facts more analogous to those alleged here.

To summarize, although Defendant might ultimately prevail at trial, a jury reasonably could conclude that Plaintiff did not consent to Defendant's contact. Summary judgment on the issue of consent, therefore, is inappropriate.

**B.     Harmful or Offensive Contact**

Defendant also contends that the court should grant summary judgment in his favor because the contact was not harmful or offensive. As referenced above, "the threshold for what constitutes an 'offensive' touching is low, and . . . it occurs when the contact 'offends a reasonable sense of personal dignity.'" *Bakes*, 2011 IL App (1st) 101646 ¶ 26, 955 N.E.2d at 87, 352 Ill. Dec. at 911 (quoting Restatement (Second) of Torts § 19 (1965)). First, Defendant appears to maintain that the contact was innocuous because Plaintiff testified that she was "uncomfortable not with the contact but with [Defendant's] mere proximity." (Def. Br. at 9.) That argument misstates Plaintiff's testimony. She testified that Defendant was pressed up against her and left no space between them. (*See, e.g.*, Pl. L.R. 56.1 Resp. ¶ 17; Pl. Dep. at 276:9, 23–25; Pl. Resp. at 8

---

[7] The plaintiff in *Schroeder* also claimed she was restrained in the cockpit, but offered no evidence of a threat or the use of any physical force. The court observed that the contact necessary for a flight engineer to fasten plaintiff's seatbelt "cannot be interpreted as harmful or offensive." *See id.*

10

(noting that Defendant pressed his body against hers).)

Next, Defendant argues that the contact was not harmful or offensive because, according to Crane, a professional golfer who witnessed the incident, and Lopez, a professional golfer who did not, the contact "was consistent with how golf professionals typically instruct a player on how to hit a chip shot." (Def. Br. at 10; *see also id.* at 11 (citing Lopez's opinion that it is impossible to provide golf instruction without having physical contact).) Plaintiff, however, persuasively responds (albeit in the section of her brief addressing the issue of consent) that there is evidence supporting the opposite conclusion. (*See* Pl. Resp. at 3–4.) Specifically, Plaintiff testified during her deposition that she had previously received a lesson from a different golf instructor, who did not stand as close to her as Defendant allegedly did. (*See id.*) Plaintiff also contends that Lopez is biased because she knows Defendant personally and observes that Lopez did not witness the challenged contact. (*See id.* at 6, 7.) Contrary to Defendant's argument (*see* Def. Reply at 5), Plaintiff has rebutted Lopez's opinions; she need not offer her own expert report to do so. Thus, whether Defendant's method of instruction was consistent with that of a professional golf teacher boils down to a credibility determination that must be left to a jury.

Significantly, Plaintiff further argues that the conduct was harmful and offensive not only because Defendant stood too close to her, but also because he paired the close contact with what Plaintiff interpreted as a sexual joke. (*See, e.g.*, Pl. Resp. at 8.) Defendant, by contrast, maintains that no reasonable jury could construe the "wood" joke as lewd or offensive. (Def. Br. at 11.) In support, he cites his own deposition testimony, in which he stated that the joke referred to names of golf clubs and beginning golfers' tendency to hit the ball into the woods. (*See id.* at 11–12.) He also cites the affidavits of witnesses who stated that they did not recall the joke being offensive. (*See id.* at 12.) And he emphasizes that after the version of the joke he referenced during his deposition was explained to Plaintiff during her deposition, Plaintiff admitted that it could have non-sexual meaning. (*See id.* at 12–13.) Regarding Defendant's last point, Plaintiff responds that she does not deny that the innocuous golf joke exists, but rather maintains that

11

Defendant told her a different joke. (*See* Pl. Resp. at 9.) A jury may well credit Defendant's position that the joke, whether by itself or combined with the contact, was not offensive. A jury may also credit Plaintiff's position that the contact and the joke offended a reasonable sense of personal dignity.

The court denies Defendant's motion for summary judgment on the ground that the contact was not harmful or offensive.

## **CONCLUSION**

For the foregoing reasons, the court denies Defendant Peter Erling Jacobsen's Motion for Summary Judgment [48].

ENTER:

*[signature]*

Date: November 30, 2020

_____
REBECCA R. PALLMEYER
United States District Judge